**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EMILY BRUNNER and CAITLIN** | ) | |
| **TUROWSKI, individually and on** | ) | |
| **behalf of all persons similarly situated,** | ) | |
| **as Class/Collective representatives,** | ) | **Case No.: 14-cv-05509** |
| | ) | |
| **Plaintiffs,** | ) | **Hon. Judge Kocoras** |
| | ) | |
| **v.** | ) | **Magistrate Judge Cole** |
| | ) | |
| **JIMMY JOHN LIAUTAUD,** | ) | |
| **JIMMY JOHN'S, LLC,** | ) | **Jury Trial Demanded on All Counts** |
| **JIMMY JOHN'S FRANCHISOR, LLC,** | ) | |
| **JIMMY JOHN'S ENTERPRISES, LLC,** | ) | |
| **JS FORT GROUP, INC., JJ** | ) | |
| **SEVERSON AFFILIATES FIVE, INC.** | ) | |
| **JJ SEVERSON AFFILIATES, INC.,** | ) | |
| **JIMMY JOHN'S FRANCHISE, LLC,** | ) | |
| **JEFFREY S. FORT,** | ) | |
| **TODD SEVERSON, and** | ) | |
| **BROOKE SEVERSON,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## FIRST AMENDED CLASS ACTION COMPLAINT

Plaintiffs, EMILY BRUNNER ("Plaintiff" or "Brunner"), and CAITLIN TUROWSKI ("Plaintiff" or "Turowski") (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsels of record, upon personal knowledge as to those allegations in which they so possess such and upon information and belief as to all other matters, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*("FLSA"), the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq.* ("IMWL" ), the Illinois Wage Payment and Collection Act, 820 ILCS 115/1 *et seq.*("IWPCA"), and other state wage laws, as well as pursuant to Fed. R. Civ. P. 23(b)(2) and Illinois state law

1

seeking Declaratory and Injunctive Relief that a "Confidentiality and Non-Competition Agreement," is unreasonable, against public policy, void as a matter of law and enjoining future use or enforcement of its terms, bring these causes of action against Defendants, JIMMY JOHN LIAUTAUD ("LIAUTAUD"), JIMMY JOHN'S, LLC,  JIMMY JOHN'S FRANCHISE, LLC and JIMMY JOHN'S ENNTERPRISES, LLC (hereinafter collectively referred to as "JJF"), JS FORT GROUP, INC. ("JS FORT"), JEFFREY S. FORT ("FORT"), JJ SEVERSON AFFILIATES FIVE, INC and JJ SEVERSON AFFILIATES, INC. (hereinafter referred to collectively as "JJ SEVERSON"), TODD SEVERSON and BROOKE SERVERSON (herein collectively referred to as "Defendants"), and for their First Amended Complaint ("FAC"),  state the following:

## I.     NATURE OF THE CASE

1.      Jimmy John's Gourmet Sandwiches is a fast-food sandwich company with over 2,000 nearly identical, standardized sandwich shops ("JIMMY JOHN'S® Sandwich Shops") located throughout the United States (in 44 States and the District of Colombia).  The JIMMY JOHN'S® Sandwich Shop empire is mushrooming with approximately 200 new JIMMY JOHN'S® Sandwich Shops being opened monthly. Defendant JJF reported approximately 1.3 billion dollars in revenue in 2013 and Defendant JJF is valued at over 2 billion dollars. Defendants employ over 80,000 people according to the official company website.

2.      Plaintiffs are "freaky fast" food employees of Defendants who are characterized on Defendants' website as employees who: do "*extraordinary things*," work exceptionally hard and "*want to be the best*'" demonstrate loyalty and commitment by being employees that "*don't mind doing whatever it takes to get the job done*" and dutifully  follow  Defendants JFF and LIATAUDs' rules for their employees such as, "*Do it now – make it happen – be a go-getter, no*

2

excuses," and the personal responsibility rule, "*Don't Pass the Buck*'" and even Defendants JJF and LIAUTAUDs' purported golden rule to "*Make a deal, keep a deal.*" https://www.jimmyjohns.com/company/.

3.     Sadly, Plaintiffs were forced to bring this action because, despite record profits and explosive growth, Defendants made the *extraordinary* choice to intentionally disregard the employment rights of the very people that are necessary to achieve their growth and profit—their employees.  Defendants' simply do not "*make a deal, keep a deal*" when they require employees to work hard, "*Do it now – make it happen – be a go-getter, no excuses,*" but refuse to pay them a fair and legal wage and, as a condition of their employment, require them to sign an unreasonable and overly broad "Confidentiality and Non-Competition Agreement" which operates to restrict them from working for any type of business that generates more than 10% of its revenue from sandwiches" within a 3-mile radius of any of any of the 2,000 JIMMY JOHN'S® Sandwich locations nationwide. Effectively, this agreement requires employees to accept unfair wages because if they stop working for Defendants, their options for new employment is subject to outrageously broad restrictions.

4.     Plaintiffs are sending a message to Defendants that "*don't mind doing whatever it takes to get the job done*" does not mean employees "don't mind" being denied fair pay for fair work, does not mean employees must suffer unconscionable wage theft that often drops their effective rate of pay below minimum wage and denies them overtime pay, thus ensuring they don't have a "*buck to pass*," and does not mean employees can be bound by the unreasonable and overly broad terms of a Confidentiality and Non-Competition Agreement that is against public policy and void as a matter of law.

5.     This case is brought by Plaintiffs, in both their individual and representative capacities pursuant to Fed. R. Civ. P. 23(b) and (c) and 29 U.S.C. § 216(b), to: (1) remedy widespread and systemic unfair wage practices and recover minimum wage and unpaid wages, including overtime compensation, to which they are entitled, that have been intentionally denied to them by one or more of Defendants in violation of the FLSA, the IMWL, the IWPCA, or the statutory laws of other States ("other state wage laws"); and (2) to obtain Declaratory and Injunctive Relief  against all Defendants', individually and on behalf of a Fed. R. Civ. P. 23(b)(2) Class of similarly situated employees required to execute, as a condition of employment, Defendants' "Confidentiality and Non-Competition Agreement" which Plaintiffs allege is wholly unnecessary, oppressive, overly broad, unreasonable, against public policy, void as a matter of law and unenforceable. A Copy of the Confidentiality and Non-Competition Agreement is attached hereto as Exhibit A.

6.     Plaintiffs, individually, and in their representative capacities, bring the following claims:

a.     **First Claim**: Violations of the FLSA brought by Plaintiffs, individually and on behalf of the "**Nationwide Collective**" (defined herein), against Defendant JJF and Defendant LIAUTAUD;

b.     **Second Claim:** Violations of the IMWL, the IWPCA and other state wage laws[1], brought by Plaintiffs, individually and on behalf of the

---

[1] Alabama, Arizona, California, Delaware, District of Columbia, Florida, Georgia, Iowa, Indiana, Kansas, Kentucky, Louisiana, Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Virginia, West Virginia, and Wisconsin.

"**Nationwide Rule 23(c) Class**" (defined herein), against Defendant JJF and Defendant LIAUTAUD;

c.  **Third Claim:** Violations of the FLSA brought by Plaintiff BRUNNER, individually, and on behalf of **"The FORT Illinois FLSA Collective"** (defined herein), against Defendant JS FORT and Defendant FORT;

d.  **Fourth Claim:** Violations of the IMWL and IWCPA, brought by Plaintiff BRUNNER, individually and on behalf of **"The FORT Illinois Class"** (defined herein), against Defendants JS FORT and Defendant FORT;

e.  **Fifth Claim**: Violations of the FLSA brought, by Plaintiff TUROWSKI, individually and on behalf of **"The SEVERSON Illinois FLSA Collective"** (defined herein), against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON;

f.  **Sixth Claim:** Violations of the of the IMWL and IWCPA, brought by Plaintiff TUROWSKI, individually and on behalf of **"The SEVERSON Illinois Wage Class,"** (defined herein), against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON; and

g.  **Seventh Claim**: For Declaratory and Injunctive Relief, brought by Plaintiffs, individually and on behalf of a Rule 23(b)(2) Class of similarly situated employees of Defendants, against all Defendants.

7.      Defendants' acts violate federal and state wage laws, affecting thousands of their current and former Assistant Store Manager ("ASM") employees. Accordingly, Plaintiffs, on behalf of themselves, and all others similarly situated,  bring this action seeking equitable and declaratory relief, as well as nominal, compensatory, liquidated and punitive damages at law and

other incidental monetary and non-monetary remedies necessary to make Plaintiffs and others similarly situated whole, as well as reasonable attorneys' fees and costs.

8.     Plaintiffs, individually and on behalf of the Rule 23(b)(2) Class, seek a declaratory judgment that the Confidentiality and Non-Disclosure Agreement is void as a matter of law and unenforceable, and seek injunctive relief prohibiting Defendants from enforcing the agreement or using it, whether in written or oral form, in the future. Plaintiffs further seek any additional relief the Court deems just and appropriate, as well as reasonable attorneys' fees and costs.

9.     All claims brought herein are plead in the alternative to the extent necessitated for proper construction under the law.

## II.     INTRODUCTION

10.     Defendant JJF was founded in 1983, by then 19 year-old Defendant LIATAUD, but his business systems and sandwich savvy was not spectacular enough to grow his company beyond a small number of initial stores. He needed more money to open more stores.

11.     In 1993, 10 years after founding the Defendant JFF, Defendant LIAUTUAD decided to solve his financing issues by exercising his control over Defendant JJF and using it to construct an illusory franchise business, when in fact his Jimmy Johns®  Sandwich Shop franchise system was nothing more than a creatively packaged system designed to: (1) finance the development of  Defendant LIAUTAUD's Jimmy Johns® Sandwich Shop empire by convincing Operator/Franchisees to finance JIMMY JOHN'S® Sandwich Shops and then perform all the typical duties that a general manager would have performed for Defendant LIAUTAUD and Defendant JJF; and (2) insulate Defendant LIAUTUAD and Defendant JJF

6

from legal liability by claiming "Franchisor" immunity, while still maintaining control and conducting business as if all 2,000 stores were their wholly-owned operations.

12.     By obtaining financing and managerial labor through a so-called franchise opportunity, Defendant LIAUTAUD enjoyed substantial growth and was able to open his 100th store by 2001. But, 100 stores were far from Defendant LIAUTAUD's dream sandwich empire, so he had to keep working diligently to create a product that customers really wanted, as well as get more creative, work harder to perfect his recipes and sandwiches, improve his systems and operating processes and exercise even tighter control over uniformity and system conformity at his JIMMY JOHN'S® Sandwich Shops.

13.     By micro-managing every aspect of his JIMMY JOHN'S® Sandwich Shop empire, Defendant LIAUTAUD began to experience expansive growth, adding approximately an additional 2,000 JIMMY JOHN'S® Sandwich Shops by 2014.

14.     Defendant LIAUTAUD has created, implemented, and continues to direct and "nurture" a tightly controlled, carefully monitored and audited, uniform system applicable to every aspect of the operations of each and every JIMMY JOHN'S® Sandwich Shop. Operator/Franchisees have no discretion to modify any aspect of the operations and systems, rather must obtain the explicit approval if any deviation is made.

### III.     JURISDICTION AND VENUE

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action

involves a federal statute, 29 U.S.C. § 216(b). Plaintiffs do not bring any claims pursuant to or under a collective bargaining agreement.

16.     The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

17.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs.

18.     Upon information and belief, at least one member of the Rule 23 Class and/or collective is a citizen of a state different than that of Defendants.

19.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391. Defendants do business in the Northern District of Illinois, Eastern Division, and Plaintiffs are residents of the Northern District of Illinois, Eastern Division. Defendants are subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit all Defendants are domiciled in, and residents of, the State of Illinois.

## IV.     PARTIES

a.     **Plaintiffs:**

20.     Plaintiff BRUNNER is an Illinois resident currently residing in Brookfield, Illinois. Plaintiff BRUNNER works at the JIMMY JOHN'S® Sandwich Shop located in Downers Grove, Illinois.  Plaintiff BRUNNER is an ASM employee, under the FLSA and applicable Illinois law, of Defendants JJF, LIATAUD, JS FORT and FORT. A written consent form for Plaintiff, Emily Brunner, is attached to this Complaint as Exhibit B.

21.     Plaintiff TUROWSKI is an Illinois resident currently residing in Gurnee, Illinois. Plaintiff TUROWSKI worked at the JIMMY JOHN'S® Sandwich Shop in Libertyville, Illinois, until July 28, 2014. Plaintiff TUROWSKI is a former ASM and former delivery driver. Plaintiff

8

TUROWSKI is an employee, under the FLSA and applicable Illinois law, of Defendants JJF, LIAUTAUD, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON. A written consent form for Plaintiff TUROWSKI is attached hereto as Exhibit C.

**b.  Defendants:**

22.  Defendants are/were the employer and/or joint employer and/or single employer of Plaintiffs and thousands of other current and former ASMs that Defendants have misclassified as "exempt" under the FLSA and state wage laws in order to work them long hours and deny them overtime pay. Defendants also caused Plaintiffs, and members of the Rule 23(b)(2) Class to execute the Confidentiality and Non-Disclosure Agreement, in substantially the same form attached as Exhibit A, as a condition of employment.

**i.  Defendant JJF and Defendant LIAUTAUD**

23.  Defendant JIMMY JOHN'S FRANCHISE, LLC, is a Delaware limited liability company with its principal place of business in Illinois, at the following address: 2212 Fox Drive, Champaign, Illinois 61820. JIMMY JOHN'S FRANCHISE, LLC is authorized to do business in the State of Illinois, and is currently doing business in the State of Illinois.

24.  Defendant JIMMY JOHN'S FRANCHISE, LLC is the successor entity to Jimmy John's Franchise, Inc. JIMMY JOHN'S FRANCHISE, LLC, by operation of law, received all rights, title and interest in and to the assets, and assumed any and all obligations and liabilities, of Jimmy John's Franchise, Inc. Jimmy John's Franchise, Inc. was the franchisor of the JIMMY JOHN'S® Sandwich Shop system from 1993 until December 2006. Other than the franchisor entity's change from an Illinois corporation to a Delaware limited liability company, the merger had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system.

25.     Defendant JIMMY JOHN'S ENTERPRISES, LLC is a Delaware limited liability company that was created with the sole purpose of merging with Jimmy John's Enterprise, Inc., an Illinois corporation formed in 1983, to change Jimmy John's, Inc. from an Illinois corporation to a Delaware limited liability company.  Defendant JIMMY JOHN'S ENTERPRISES, LLC was the surviving entity after the merger which became effective in December of 2006.  As a result of the merger, Defendant JIMMY JOHN'S ENTERPRISES, LLC received all the rights, title and interest in and to the assets, and assumed any and all obligations and liabilities of Jimmy John's Enterprises, Inc.  Other than the merger's impact on the change from an Illinois corporation to a Delaware limited liability company, the merger otherwise had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system.  Defendant JIMMY JOHN'S ENTERPRISES, LLC is an affiliate of Defendant JIMMY JOHN'S FRANCHISE, LLC, shares the same principal place of business, shares the same members, corporate governance and for all intents and purposes are one-in-the-same, act in concert or as alter-ego of each other, or as a single integrated entity and is herein collectively referred to as Defendant JJF.

26.     Defendant JIMMY JOHN'S, LLC, is the parent corporation of JIMMY JOHN'S FRANCHISE, LLC, shares the same members, business operations and principal business address (Champaign, Illinois) as JIMMY JOHN'S FRANCHISE, LLC and is one-in-the same, the alter–ego of each other, or a single integrated entity and is herein collectively referred to as Defendant JJF.

27.     Defendant JJF is an employer, under the FLSA and various state wage laws, of every employee working at any JIMMY JOHN'S® Sandwich Shop, including but not limited to Plaintiffs.

10

28.     Defendant JJF employs an Illinois Choice of Law provision in most contracts.

29.     As of the date of filing this FAC, Defendant JJF's 2013 revenue was approximately 1.3 billion dollars and Defendant JJF is estimated to be valued well over 2 billion dollars.

30.     Defendant JJF and Defendant LIATAUD are both in the fast-food sandwich industry with their principal business being the sales of gourmet deli sandwiches, fresh baked breads, and other food and beverage products and services, using the "JIMMY JOHN'S®" name, both online and at their over 2,000 nearly identical, standard and uniform JIMMY JOHN'S® Sandwich Shops located in at least 44 states and the District of Colombia (JIMMY JOHN'S® Business System").

31.     Defendant LIATAUD is an Illinois resident and the current CEO of Defendant JJF. Defendant LIATAUD is the self-proclaimed, hard-working, entrepreneur mastermind who conceived and founded the JIMMY JOHN'S® Business Systems, the JIMMY JOHN'S® secret recipes, trademarked property, products, services, systems and method of operating the JIMMY JOHN'S® Sandwich Shops. Defendant LIATAUD continues to micro-manage every aspect of the JIMMY JOHN'S® Business System, including its further development and the modification and perfection of the systems, procedures and general operations, as the number of JIMMY JOHN'S® Sandwich Shops is experiencing explosive growth.

32.     Defendant LIATAUD is indispensable to the ongoing viability of the JIMMY JOHN'S® Business System, the operations of Defendant JJF and the success of each JIMMY JOHN'S® Sandwich Shop.

33.     Defendant LIATAUD continues to consistently exercise direct control, make key decisions, and implement valuable operational changes and strategies in the JIMMY

11

JOHN'S® Business System and at the JIMMY JOHN'S® Sandwich Shops.

34.     On October 15, 2012, in an interview with Neil Cavuto, host of "Your World" on Fox News, Defendant LIAUTUAD held himself out to the public as employing over 60,000 people.     http://www.foxnews.com/on-air/your-world-cavuto/2012/10/16/jimmy-johns-founder-business-owners-unsure-future.   He further said when asked whether The Affordable Care Act would cause Jimmy John's to reduce employee hours, he said: "*We're not doing it now, but we have to bring them down to 28 hours. Yes, we have to do that. There's no other way we can survive it, because we think it will cost us 50 cents a sandwich. That's just the actual cost.*" That interview demonstrates his control over the employment of employees at all JIMMY JOHN'S® Sandwich Shops nationwide.

35.     In another public interview, Defendant LIAUTAUD once against affirmed that he was "in charge" and very involved with the operations by stating that public perception of him was negative because, "*I am the franchisor so there must be something wrong with me because I am in charge of this large organization*" and when asked about ensuring quality at 1,000 restaurants he further explained that, "*I think the reason why we have a thousand restaurants is because that's what we do. And I don't want to be the biggest I want to be the best at what I do. And I won't sacrifice anything. I won't sacrifice quality. So the reason that we do that is why we have the restaurants that we have.  So, we grow slow and steady. Well now we open a store a day. We'll grow slow and steady. We just focus on making it right.*"

 http://www.youtube.com/watch?v=pk5gLAWtIPc.

36.     Defendant JJF and Defendant LIAUTAUD actuate their proprietary JIMMY JOHN'S® Business System by directly opening JIMMY JOHN'S® Sandwich Shops or through entering into an agreement it refers to as a "Franchise Agreement" with individuals willing to

finance, operate, manage and follow explicit, precise and detailed instructions from Defendant JJF ("Operators/Franchisees"), at JIMMY JOHN'S® Sandwich Shops.

37.     Defendant JJF and Defendant LIAUTAUD each exercises control over all aspects of the design, layout, systems and managerial and operational functions at all of their JIMMY JOHN'S® Sandwich Shops, as more fully set forth herein, including creating, mandating and implementing the policies and practices that created the systematic wage theft alleged herein and caused at JIMMY JOHN'S® Sandwich Shop employees nationwide, as a condition of their employment, to execute the Confidentiality and Non-Disclosure Agreement Plaintiffs allege to be wholly unnecessary, oppressive, overly broad, unreasonable, against public policy, void and unenforceable.

38.     Defendant LIAUTAUD is the mastermind behind the mandated use of the Confidentiality and Non-Competition Agreement, as he has been using them himself for years. In fact, he even sued his own cousin, because he opened his own sandwich shop, to enforce one of his overly broad non-competition agreements in federal District Court in Wisconsin.  After losing in that case, and being educated on the importance of limited scope of such agreement by the 7th Circuit, *Liautaud v. Liautaud*, 221 F.3d 981 (7th Cir. 2000), Defendant LIAUTAUD knew or should have known that the Confidentiality and Non-Competition Agreement at issue in this case is void, against public policy and unenforceable. Although it is different in terms, it is nonetheless governed by the same legal principles.  Nevertheless, Defendant LAIUTAUD  did not proceed responsibly and take action to make sure any such agreements were compliant with applicable law, rather he proceeded with reckless disregard for the legality of the agreement, requiring its use by over 80,0000 employees nationwide.

13

39.     Defendant JJF and Defendant LIAUTAUD create and cause to be implemented all policies, including but not limited to management policies, human resources policies, job titles/positions and duties, staffing requirements, compensation policies, wage and hour policies, employee practices policies, terms and conditions of employment at a JIMMY JOHN'S® Sandwich Shop, job duties and responsibilities, and uniformly apply all policies, procedures and systems to management and operation of every JIMMY JOHN'S® Sandwich Shop.   The policies and practices promulgated, disseminated and mandated by Defendant JJF and Defendant LIAUTAUD have caused the misclassification of ASMs and the denial of minimum wages, wages, overtime wages and otherwise just and due compensation.

### ii.      Defendant FORT and Defendant JS FORT

40.     Defendant, JS FORT GROUP, INC. ("JS FORT"), is a domestic corporation, incorporated in the State of Illinois, authorized to do, and doing, business in the State of Illinois and with its corporate headquarters located at 7028 W CERMAK RD BERWYN Illinois, 60402 It is a closely-held corporation with its President, Secretary, and Registered Agent each listed as: JEFFREY S FORT JR. with the following Cook County, Illinois address:  7028 W CERMAK RD BERWYN IL 60402.  Defendant JS FORT is an Operator/Franchisee, has an ownership interest in, controls, operates or manages the day-to-day operations and is an employer, under the FLSA and Illinois State law, in at least 28 JIMMY JOHN'S® Sandwich Shops located throughout Illinois ("JS FORT JIMMY JOHN'S® Sandwich Shops"), including but not limited to the following locations identified in the 2014 Franchise Disclosure Document ("FDD"):

a.      JS Fort Group, Inc.: 1450 West Lake Street, Addison, Illinois 60101;

b.       JS Fort Group, Inc.: 7520   S. Cicero Avenue, Bedford Park, Illinois 60652;

c.    JS Fort Group, Inc.: 7028 Cermak Rd., Berwyn, IL 60402;

d.    JS Fort Group, Inc.: 718 E. Boughton Rd., Bolingbrook, IL 60440;

e.    JS Fort Subs 552, Inc.: 7924 S Harlem Avenue, Burbank, Illinois 60459;

f.    JS Fort Group, Inc.: 25520 S. Pheasant Lane, Channahon, Illinois 60410;

g.    JS Fort Group, Inc.: 2206 N. Clybourn, Chicago, Illinois 60614;

h.    JS Fort Group, Inc.: 1431 N. Kingsbury Street, Chicago, Illinois 60642;

i.    JS Fort Subs 608, Inc.: 5321 S. Lagrange Road, Countryside, Illinois 60525;

j.    JS Fort Group, Inc.: 2445 75th Street, Darien, IL 60561;

k.    JS Fort Group, Inc.: 2321 Ogden Avenue, Downers Grove, Illinois 60515;

l.    JS Fort Group, Inc.: 1035 S. York Road, Elmhurst, IL 60126;

m.    JS Fort Subs 458, Inc.: 350 Circle Avenue, Forest Park, IL 60130;

n.    JS Fort Group, Inc.: 850 Roosevelt Road, Glen Ellyn, Illinois 60137;

o.    JS Fort Group, Inc.: 7604West 95th Street, Hickory Hills, Illinois 60457;

p.    JS Fort Group, Inc.: 2223 S. Wolf Road, Hillside, Illinois 60162;

q.    JS Fort Group, Inc.: 60 North Mannheim Road, Hillside, Illinois, 60162;

r.    JS Fort Group, Inc.: 14110 Bell Road, Homer Glen, Illinois, 60491;

s.    JS Fort Group, Inc.: 2311 Essington Road, Joliet, Illinois 60435;

t.    JS Fort Group, Inc.: 2770 S. Highland Avenue, Lombard, Illinois, 60148;

u.    JS Fort Group, Inc.: 8499 Ogden Avenue, Lyons, Illinois 60534;

v.    JS Fort Group, Inc.: 2511 W. North Avenue, Melrose Park, Illinois, 60160;

w.    JS Fort Group, Inc.: 1541 Creek Road, Morris, Illinois 60450;

x.    JS Fort Subs 456, Inc.: 709 Lake Street, Oak Park, Illinois, 60301;

15

      y.        JS Fort Group, Inc.:11908 S. Harlem Avenue, Palos Heights, Illinois, 60463;

      z.        JS Fort Group, Inc.: 381 S. Weber Road, Romeoville, Illinois, 60446;

      aa.     JS Fort Group, Inc.: 7444 Kingery HWY, Willowbrook, Illinois, 60527; and

      bb.     JS Fort Group, Inc.: 6325 Main Street, Woodridge, Illinois, 60098.

41. Defendant FORT is an individual residing in the State of Illinois with the following address listed with the Illinois Secretary of State: 28 W CERMAK RD BERWYN IL 60402. Defendant FORT is an Operator/Franchisee, has an ownership interest in, controls, operates or manages the day-to-day operations and is an employer, under the FLSA and Illinois State law, in all JS FORT JIMMY JOHN'S® Sandwich Shops. Defendant FORT operates the following JIMMY JOHN'S® Sandwich Shops, but the corporate entities indicated in the 2014 FDD have been dissolved and are no longer active with the Illinois Secretary of State:

      a.        JS Fort Subs 456, Inc.: 709 Lake Street, Oak Park, Illinois, 60301;

      b.        JS Fort Subs 458, Inc.: 350 Circle Avenue, Forest Park, IL 60130;

      c.        JS Fort Subs 552, Inc.: 7924 S Harlem Avenue, Burbank, Illinois 60459; and

      d.        JS Fort Subs 608, Inc.: 5321 S. Lagrange Road, Countryside, Illinois 60525.

Other than those 4 locations, according to the 2014 FDD, all other JIMMY JOHN'S® Sandwich Shops operated by Defendant FORT are associated with the active Illinois corporation, JS FORT GROUP, INC. These 4 locations are included in the definition of JS FORT JIMMY JOHN'S® Sandwich Shops.

42.     Although multiple entities are being used by Defendants FORT and JS FORT, in the operation of JS FORT JIMMY JOHN'S® Sandwich Shops, Defendants FORT and JS FORT control, operate, manage the day-to-day operations and maintain an ownership interest in each of those entities, or acts as a joint employer with or agent of Defendants JJF and LIAUTAUD's in performing management and operational duties at the JS FORT JIMMY JOHN'S® Sandwich Shops.

43.      Defendants FORT and JS FORT are only Operator/Franchisees, only maintain an ownership interest in and only engages in management and operational duties at the JS FORT JIMMY JOHN'S® Sandwich Shops, which are all located within the State of Illinois.

44.     Defendant JS FORT is an employer under the FLSA and Illinois state law, of Plaintiff BRUNNER and all employees at every JS FORT JIMMY JOHN'S® Sandwich Shop. Defendant JS FORT has directly and proximately caused Plaintiff BRUNNER, and other similarly situated ASMs employed at those JS FORT JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to, minimum wages, wages and overtime compensation in violation of the FLSA and Illinois state law.

45.     Defendant FORT, in his individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff BRUNNER and all employees at every JS FORT JIMMY JOHN'S® Sandwich Shop. Defendant FORT has directly and proximately caused Plaintiff BRUNNER, and other similarly situated ASMs employed at those JS FORT JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to,  minimum wages, wages and overtime compensation in violation of the FLSA and Illinois state law.

### iii.    Defendants TODD SEVERSON, BROOKE SEVERSON AND JJ SEVERSON

46.    Defendants TODD SEVERSON and BROOKE SEVERSON are Illinois residents that each list their address, with Illinois Secretary of State, to be in Grayslake, Illinois. Each is an Operator/Franchisee, has an ownership interest in, controls, operates or manages the day-to-day operations of at least 12 JIMMY JOHN'S® Sandwich Shops located throughout Illinois, including but not limited to the following locations identified in the 2014 FDD ("SEVERSON IMMY JOHN'S® Sandwich Shops") :

    a.    JJ Severson Affiliates, Inc.: 1267 E. Dundee Rd., Buffalo Grove, Illinois, 60089;

    b.    JJFA7, Inc.: 908 Northwest HWY, Fox River Grove, Illinois 60021;

    c.    JJ Severson Affiliates, Inc.: 5250 Grand Avenue, Gurnee, Illinois, 60031;

    d.    JJFA7, Inc.: 20771 N Rand Road, Kildeer, Illinois, 60047;

    e.    JJ Severson Affiliates, Inc.: 1746 N. Milwaukee Avenue, Libertyville, Illinois, 60048;

    f.    JJNISK, Inc. 9641 N. Milwaukee Avenue, Niles, Illinois 60714;

    g.    JJFA7, Inc.: 2047 Milwaukee Avenue, Riverwoods, Illinois, 60015;

    h.    JJ Severson Affiliates, Inc.: 1924 N. IL Route 83, Round Lake, Illinois 60073;

    i.    JJNISK, Inc.: 9402 Skokie Blvd., Skokie, Illinois, 60077;

    j.    JJ Severson Affiliates, Inc.: 325 N. Milwaukee Avenue, Vernon Hills, Illinois 60061;

    k.    JJ Severson Affiliates, Inc.: 3951 Fountain Square Place, Waukegan, Illinois, 60085; and

    l.    JJFA Six, Inc.: 2111 Sheridan Road, Zion, Illinois, 60099.

47.     Defendant JJ SEVERSON, is a closely-held Illinois Corporation, authorized to do business and doing business within the State of Illinois, with its corporate headquarters located at 34296 N STONEBRIDGE LN GRAYSLAKE IL 60030. Defendant TODD SEVERSON is its Registered Agent and President.  Defendant BROOKE SEVERSON is its Secretary. The 2014 FDD associates JJ SEVERSON with 6 JIMMY JOHN'S® Sandwich Shops in Illinois as set forth in the preceding paragraph.

48.     Defendant JJ SEVERSON AFFILIATES FIVE, INC. ("JJ SEVERSON 5"), is a closely-held domestic corporation, incorporated in the state of Illinois, authorized to do business in the State of Illinois and shares the same corporate headquarters with Defendant JJ SEVERSON AFFILIATES, INC.: 34296 N STONEBRIDGE LN GRAYSLAKE IL 60030.  It also shares the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant BROOKE SEVERSON) with Defendant JJ SEVERSON AFFILIATES, INC.  JJ SEVERSON 5 does not appear in the 2014 FDD, however may be associated with the Libertyville JIMMY JOHN'S® Sandwich Shop where Plaintiff TUROWSKI was employed. Since the 2014 FDD lists JJ SEVERSON AFFILIATES, INC. as the Owner/Franchisee of the Libertyville JIMMY JOHN'S® Sandwich Shop, JJ SEVERSON 5 (and both corporations have the same corporate address, Registered Agent and officers) it is essentially the same entity, or alter-ego of JJ SEVERSON AFFILIATES, INC. and will therefore be collectively referred to herein as "JJ SEVERSON."

49.     In addition to Defendant JJ SEVERSON 5, the Illinois Secretary of State lists the following similarly named 3 entities: JJ Severson Affiliates Two, Inc.; JJ Severson Affiliates Three, Inc.; and JJ Severson Affiliates Four, Inc.  Each of those entities also share the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant

19

BROOKE SEVERSON) and corporate headquarters at: 34296 N STONEBRIDGE LN GRAYSLAKE IL 60030. None of these 3 entities are associated with any JIMMY JOHN'S® Sandwich Shops in the FDD.

50.     Although multiple entities are being used by Defendants TODD SEVERSON and BROOKE SEVERSON, in the operation of at least 12 JIMMY JOHN'S® Sandwich Shops throughout Illinois, Defendants TODD SEVERSON and BROOKE SEVERSON control, operate, manage the day-to-day operations and maintain an ownership interest in each of the SEVERSON IMMY JOHN'S® Sandwich Shops, or acts as a joint employer with or agent of Defendant JJF and Defendant LIAUTAUD's in performing management and operational duties ("SEVERSON JIMMY JOHN'S® Sandwich Shops").

51.     Defendant TODD SEVERSON and Defendant BROOKE SEVERSON, are only Operator/Franchisees, and only engage in management and operational duties, at the SEVERSON JIMMY JOHN'S® Sandwich Shops, which are all located within the State of Illinois.

52.     Defendant TODD SEVERSON, in his individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff TUROWSKI and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant TODD SEVERSON has directly and proximately caused Plaintiff TUROWSKI, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

53.     Defendant BROOKE SEVERSON, in her individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff TUROWSKI and all employees at every

SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant BROOKE SEVERSON has directly and proximately caused Plaintiff TUROWSKI, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

54.     Defendant JJ SEVERSON, is an employer, under the FLSA and Illinois state law, of Plaintiff TUROWSKI and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant JJ SEVERSON has directly and proximately caused Plaintiff TUROWSKI, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

55.     At all relevant times, all Defendants were engaged in commerce within the meaning of 29 U.S.C. § 203(b).

56.     At all relevant times all Defendants performed related activities for a common business purpose and therefore together constitute an enterprise as defined by the FLSA. 29 U.S.C. § 203(r)(l).

57.     At all relevant times, all Defendants JS FORT, FORT, TODD SEVERSON, BROOKE SEVERSON, and JJ SEVERSON each acted, directly or indirectly, in the interest of Defendants JJF and LIAUTAUD, in relation to Plaintiffs and similarly situated employees, and implemented the specific and explicit detailed operational and managerial instructions, systems, procedures and employment policies, including policies effecting compensation, job positions

and causing employees to execute, as a term of employment, the "Confidentiality and Non-Compete Agreement" promulgated and mandated by Defendant JJF and LIAUTAUD.

## V.    CLASS AND COLLECTIVE ACTION ALLEGATIONS

58.    Plaintiffs bring this action individually, and on behalf of similarly situated persons, and in so doing seek certification, in accordance with Fed R. Civ. P. 23 (b)(2) and (c),as well as 29 U.S.C. § 216(b). All Rule 23 requirements for class certification are satisfied. All requirements of for collective certification under 29 U.S.C. § 216(b). Therefore, Plaintiff seek certification of the following classes and collectives:

      a.    **"Nationwide FLSA Collective" and Collective period are defined as:**

> "All individuals who are currently or were formerly employed by Defendants JJF or LIAUTAUD as salaried ASMs, at any JIMMY JOHN'S® Sandwich Shop nationwide, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from 3 years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Nationwide FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the FLSA Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

      b. "**Nationwide State Wage Class" and Class Period are defined as:**

> "All individuals who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from

> 10 years prior to the date of commencement of this action
> through the date of judgment in this action."

Excluded from the Nationwide State Wage Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

     c.     **The "FORT Illinois FLSA Collective" and Collective Period are defined as:**

> "all individuals who are currently or were formerly employed by Defendants JJ SEVRSON, TODD SEVERSON or BROOKE SEVERSON, as salaried ASMs, at any SEVERSON JIMMY JOHN'S® Sandwich Shop, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from 3 years prior to the date of commencement of this action through the date of judgment in this action"

Excluded from the FORT Illinois FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

     d.     **"The FORT Illinois Wage Class" and Class Period are defined as**:

> "All individuals who are currently or were formerly employed, at a JS FORT JIMMY JOHN'S® Sandwich Shop, located within the State of Illinois, as salaried ASMs, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from 10 years prior to

23

> the date of commencement of this action through the date
> of judgment in this action."

Excluded from the FORT Illinois Wage Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

e. **"The SEVERSON Illinois FLSA Collective" and Collective Period are defined as:**

> "all individuals who are currently or were formerly employed by Defendants JJ SEVRSON, TODD SEVERSON or BROOKE SEVERSON, as salaried ASMs, at any SEVERSON JIMMY JOHN'S® Sandwich Shop, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from 3 years prior to the date of commencement of this action through the date of judgment in this action"

Excluded from the Severson Illinois FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

f. **"The SEVERSON Illinois Wage Class" and Class Period is defined as**:

> "All individuals who are currently or were formerly employed, at a SEVERSON JIMMY JOHN'S® Sandwich Shop, located within the State of Illinois, as salaried ASMs, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, at any time from 10 years prior to

24

> the date of commencement of this action through the date
> of judgment in this action."

Excluded from the Severson Illinois Wage Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

      g.     **"Rule 23(b)(2) Declaratory and Injunctive Relief Class" and Class Period is defined as:**

> "All current or former employee of Defendants, employed at any JIMMY JOHN'S® Sandwich Shop nationwide, who executed the Confidentiality and Non-Competition Agreement (Exhibit A), at any time from 10 years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

59.     **Numerosity:** The persons in each of the State Law Wage Classes identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant. Upon information and belief, there are thousands of members of in the Nationwide State Wage Class and hundreds of members in both the Fort Illinois Wage Class and Severson Illinois Wage Class.

60.    **Commonality:** There are numerous questions of law and fact common to the State Wage Classes that predominate over any questions affecting only individual members.  The questions of law and fact common to the State Wage Classes predominate over any question solely affecting individual members of any Class, including, but not limited to:

a.    Whether Defendants employed Plaintiffs and members of the Class or were joint or single employers, within the meaning of the IMWL, IWPCA and/or other state wage laws;

b.    Which Defendants create and require the job titles, job positions and job descriptions uniformly used at JIMMY JOHN'S® Sandwich Shops nationwide;

c.    Whether Defendant JJF or Defendant LIAUTAUD create, implement, or mandates the pay grades and job classifications as "exempt" or "non-exempt", whether directly or indirectly;

d.    Whether all ASMs are similarly situated;

e.    Whether Defendant JJF and Defendant LIAUTAUD exercise significant control over all JIMMY JOHN'S® Sandwich Shops with regard to the operations and management of the JIMMY JOHN'S® Sandwich Shops overall and with regard to the policy of misclassifying ASMs as "exempt;"

f.    Whether Defendant JJF and Defendant LIAUTAUD have the right to qualify and approve all ASMs at each of their JIMMY JOHN'S® Sandwich Shops;

g.    Whether Defendant JJF and Defendant LIAUTAUD provide the training and certification of ASMs at each of their JIMMY JOHN'S® Sandwich

26

Shops; Whether Defendant JJF and Defendant LIAUTAUD control the scheduling, shifts worked and duties performed by ASMs at each of their JIMMY JOHN'S® Sandwich Shops;

h.  Whether Defendants FORT, JS FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON have right to exercise their discretion an re-define ASM job duties, responsibilities and terms of employment at any JIMMY JOHN'S® Sandwich Shop;

i.  The relationship between Defendants;

j.  Whether Defendants FORT, JS FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON caused, either directly or by acting as agents of Defendant JJF and Defendant LIAUTAUD and enforcing their policies and directions, ASMs to be paid a salary or failed to pay ASMs all wages owed to the ASMs, including but not limited to, minimum wages, wages and overtime compensation;

k.  Whether any or all of Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Classes;

l.  Whether Plaintiffs and members of the Classes are non-exempt employees of any of the Defendants;

m.  Whether Plaintiffs and members of the Classes were misclassified as "exempt" from the overtime provisions of the IMWL and/or other state wage laws;

n.      Whether any or all of  Defendants engaged in a continuing policy, pattern or practice of misclassifying ASMs, including Plaintiffs and members of the Class, as "exempt" employees;

o.      Whether any or all of the Defendants engaged in such a continuing policy, pattern or practice to allow Defendants to require ASMs to perform work in excess of 40 hours per week without compensating them at 1 ½ times the regular rate of pay for all work performed in excess of 40 hours;

p.      Whether any or all of Defendants failed to pay ASMs  prevailing minimum wages;

q.      Whether any or all of Defendants knew or should have known that it erroneously classified ASMs as "exempt;"

r.      Whether any or all of Defendants intentionally, willfully and/or knowingly failed to pay Plaintiffs and members of the classes as "non-exempt" employees;

s.      Whether any or all of Defendants violated the IMWL, IWPCA and other state wage laws by refusing and/or failing to pay Plaintiffs and members of the Classes wages and overtime compensation;

t.      Whether Defendants' policy, pattern or practice of misclassifying ASMs as exempt from receiving hourly pay and overtime compensation was done willfully and/or with reckless disregard;

u.      Whether any or all of the Defendants failed to pay ASMs minimum wages, overtime wages, for all hours worked and in a timely manner, in compliance with the IMWL and IWPCA;

v.      Whether Defendant JFF and Defendant LIAUTAUD contrived, drafted and mandated use of the Confidentiality and Non-Competition Agreement;

w.     Whether employees at all JIMMY JOHN'S® Sandwich Shops were required to execute, as a condition of their employment the Confidentiality and Non-Competition Agreement;

x.      Whether the Confidentiality and Non-Competition Agreement is uniform and standardized;

y.      Whether Defendant JJF and Defendant LIAUTAUD are parties to or third party beneficiaries of the Confidentiality and Non-Competition Agreement;

z.      Whether Defendant JJF and Defendant LIAUTAUD have rights to enforce the Confidentiality and Non-Competition Agreement;

aa.    Whether the Confidentiality and Non-Competition Agreement is unreasonable, overly broad, unduly burdensome, oppressive or in violation of public policy;

bb.    Whether the Confidentiality and Non-Competition Agreement void and unenforceable as a matter of law;

cc.    Whether all of the Rule 23(b)(2) Class Members are similarly situated;

dd.    Whether all of the Rule 23(b)(2) Class Members executed the same or a substantially similar Confidentiality and Non-Competition Agreement;

ee.    Whether any or all of the Defendants have acted or refused to act on grounds generally applicable to the Rule 23(b)(2) Class, thereby making relief appropriate with respect to the Rule 23(b) (2) Class as a whole;

ff.     Whether any or all of the Defendants knew or should have known that the Confidentiality and Non-Competition Agreement was void and unenforceable; and

gg.     Whether any or all of the Defendants knew or should be enjoined from enforcing or continuing to use the Confidentiality and Non-Competition Agreement.

61.     **Typicality:** The claims of Plaintiffs are typical of the members of each of the Classes.

62.     **Adequacy:** Plaintiffs will fairly and adequately represent the interests of each of the Classes.  Plaintiffs can and will adequately represent and protect the interests of the Classes and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained attorneys competent and experienced in class actions, including employment and wage and hour class actions. No conflict exists between Plaintiffs and Class members.

63.     **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual employees/plaintiffs either lack the financial resources or cannot justify the commitment of the large financial resources necessary to vigorously prosecute separate lawsuits in federal court and/or state court against large corporate defendants.

64.     Defendants have acted or have refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

65.     Certification pursuant to Fed. R. Civ. P. 23(b)(2) is proper for the Declaratory and Injunctive Relief Class defined above because the maintenance of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to interpretations of a uniform Confidentiality and Non-Compete Agreement and associated terms and obligations that would establish incompatible standards of conduct for the Defendants. Furthermore, certification under Fed. R. Civ. P. 23(b)(2) is proper because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other class members not a party to the adjudication or would substantially impair or impede their abilities to protect their interests.

66.     Certification pursuant to Fed. R. Civ. P. 23(b)(2) of the Declaratory and Injunctive Relief Class because any monetary damages would be merely incidental to the declaratory and injunctive relief sought.

67.     A class action is superior to other available methods for the fair and efficient adjudication of the class claims alleged in this controversy and adjudication of those claims as a class is properly manageable. The interests of judicial economy favor adjudication of the class claims alleged herein on a class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually

68.     Plaintiffs bring their FLSA claims, pursuant to Section 216(b) of the FLSA. 29 U.S.C. § 216(b).  Under Section 216(b) FLSA violation claims are brought and maintained as an "opt-in" Collective Action. *Id.*

69.     Defendants have deliberately, willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as described above, by

misclassifying ASM employees as "exempt", thereby failing and/or refusing to properly pay Plaintiffs, and other similarly situated ASMs minimum wageswages and overtime compensation in accordance with §§ 206 and 207 of the FLSA.

70.     Defendants knew or should have known that said ASMs were not exempt employees under the FLSA. Defendants willfully violated the FLSA by misclassifying Plaintiffs, and all other similarly situated ASMs, as exempt employees, therefore a 3-year statute of limitations applies to such violations, pursuant to 29 U.S.C. § 255.

71.     Plaintiffs and all other ASMs are similarly situated in that they all are or were subject to Defendants' common policy, plan or practice of designating them as exempt from the overtime requirements of the FLSA, when in fact their work and job duties as required and defined by Defendants do not qualify them to be exempt.

72.     Defendants are liable for improperly compensating Plaintiffs and members of the FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are thousands of similarly situated current and former ASMs in the Nationwide FLSA Collective and hundreds of ASMs in each the FORT FLSA Collective and SEVERSON FLSA Collective. Defendants, individually or in concert, caused ASMs to be misclassified as exempt and denied minimum wages, wages and the overtime premium in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## VI.    FACTUAL BACKGROUND

**a.    Plaintiffs BRUNNER and TUROWSKI**

**i.    Plaintiff BRUNNER**

73.    Plaintiff BRUNNER, has worked for Defendants JJF, LIAUTAUD, JS FORT and FORT at its Downers Grove, Illinois JIMMY JOHN'S® Sandwich Shop since November 2013. Plaintiff has held the positions of delivery driver, in-shopper, person in charge, and ASM.

74.    As an ASM, Plaintiff BRUNNER routinely works about 55 hours per week and is not paid minimum wages and never paid wages or overtime compensation for any hours she works in excess of 40 hours per week or 8 hours per day. She is paid a salary.

75.    Defendants also employed Plaintiff Brunner as a delivery driver with the primary job duty to deliver sandwiches and other food items to customers' homes and workplaces.

76.    Defendants required Plaintiff Brunner to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

77.    Plaintiff Brunner incurred costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants.

78.    Defendants required Plaintiff Brunner to sign documents attesting of her full automobile insurance coverage as a requisite to driving for Defendants.

79.    Defendants did not reimburse Plaintiff Brunner for her automobile insurance while driving for the sole benefit of Defendants.

80. Defendants did not provide Plaintiff Brunner with GPS or a mobile phone to enable accurate and efficient deliveries. Therefore, Plaintiff Brunner used her personal mobile phone to access GPS systems or to make phone calls to Defendants' store or customers.

81. Defendants paid Plaintiff Brunner $7.25 per hour as a delivery driver.

82. Defendants have a computer system that allows them to keep track of the number of deliveries and the location of each delivery made.

83. During the applicable limitation period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

84. The average cost of owning and operating a vehicle, as described above, is determined using the average "driver" and not the average "delivery driver." The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. "Delivery drivers," such as Plaintiff BRUNNER, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average "driver."

85. Defendants failed to reimburse Plaintiff BRUNNER's automobile expenses to such an extent that her net wages are diminished beneath federal minimum wage requirements.

34

86.     While Defendant JS FORT employed Plaintiff BRUNNER as a delivery driver, in-shop and person in charge, she was required to work off-the-clock, while performing closing duties.

87.     Defendant's managerial employees would clock Plaintiff BRUNNER out prior to her finishing her closing duties.

88.     Plaintiff BRUNNER would be required to continue to work after the managerial employee would clock her out.

89.     Plaintiff BRUNNER was not compensated for her work performed off the clock while performing closing duties.

90.     As such, Plaintiff BRUNNER was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

### ii.     Plaintiff TUROWSKI

91.     Plaintiff TUROWSKI worked for Defendants JJF, LIAUTAUD, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON at their JIMMY JOHN'S® Sandwich Shop located at 1746 N. Milwaukee Avenue, Libertyville, Illinois, between January 23, 2013 and July 28, 2014. Plaintiff TUROWSKI worked as a delivery driver from January 23, 2013, through September 2013. Thereafter, Plaintiff Turowski worked as an ASM at the same location, for the remainder of her employment, until July 28, 2014.

92.     As an ASM, Plaintiff TUROWSKI would routinely work in excess of 65-70 hours per week without being paid minimum wages or overtime wages for any hours worked in excess of 40 hours per week or 8 hours per day.

93.     Defendants employed Plaintiff TUROWSKI as a delivery driver with the primary job duty to deliver sandwiches and other food items to customers' homes and workplaces.

94.     Defendants required Plaintiff Turowski to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

95.     Plaintiff TUROWSKI incurred cost for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants.

96.     Defendants required Plaintiff TUROWSKI to sign documents attesting of her full automobile insurance coverage as a requisite to driving for Defendants.

97.     Defendants did not reimburse Plaintiff TUROWSKI for her automobile insurance while driving for the sole benefit of Defendants.

98.     Defendants did not provide Plaintiff TUROWSKI with GPS or a mobile phone to enable accurate and efficient deliveries. Therefore, Plaintiff TUROWSKI used her personal mobile phone to access GPS systems or to make phone calls to Defendants' store or customers.

99.     Defendants paid Plaintiff TUROWSKI $8.25 per hour as a delivery driver.

100.    Defendants have a computer system that allows it to keep track of the number of deliveries and the location of each delivery made.

101.    During the applicable limitation period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable

reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

102.    The average cost of owning and operating a vehicle, as described above, is determined using the average "driver" and not the average "delivery driver." The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. "Delivery drivers," such as Plaintiff TUROWSKI, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average "driver."

103.    Defendants failed to reimburse Plaintiff TUROWSKI's automobile expenses to such an extent that her net wages are diminished beneath federal minimum wage requirements.

104.    While Defendants employed Plaintiff as a driver, she was required to work off-the-clock, while performing closing duties.

105.    Defendant's managerial employees would clock Plaintiff out prior to her finishing her closing duties.

106.    Plaintiff would be required to continue working after the managerial employee would clock her out.

107.    Plaintiff was not compensated for her work performed off-the-clock while performing closing duties.

108.    As such, Plaintiff was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

109.    Defendants failed and refused to pay Plaintiff TUROWSKI her last paycheck of approximately $750.00.

      **b.**       **Relationship between Defendants JJF and LIAUTAUD and Operators/Franchisees**

110.    Defendant LIAUTAUD and Defendant JJF, exercise substantial and nearly complete control over all JIMMY JOHN'S® Sandwich Shops.

111.    Defendant JJF owns and operates many of the JIMMY JOHN'S® Sandwich Shops.

112.    Defendant JJF franchises the majority of JIMMY JOHN'S® Sandwich Shops, but has made public representations confirming it controls all (including Franchisee) of its JIMMY JOHN'S® Sandwich Shops and Defendant JJF utilizes explicit contractual language, in a number of documents with its Operator/Franchisees, that unambiguously establishes its control.

113.    Defendant JJF enters into a standard Franchise Agreement and associated documents with each of its Operator/Franchisees ("JJF Franchise Agreement").

114.    Defendant JJF is required by law to provide Operator/Franchisees with a FDD.

115.    Defendant JJF requires all of its Operator/Franchisees to follow the terms and conditions set forth in a document known as the "Confidential Operations Manual."

116.    Operator/Franchisees are basically just "buying" themselves a managerial position at a JIMMY JOHN'S® Sandwich Shop, as Defendant JJF requires all Operator/Franchisees to operate and manage their shops, prohibits Operator/Franchisees from operating any other business, requires that all Operator/Franchisees satisfactorily complete Defendant JJF management training and certifications, requires all Operator/Franchisees to strictly adhere to all operational practices and systems, requires Operator/Franchisees to submit to performance audits, receive reprimands and implement remediation or changes (with threat of franchise termination for non-compliance) and provides for Defendant JJF control of every aspect of their

operations.

117.    Defendant JJF and Defendant LIAUTAUD demonstrate that Operator/Franchisees are just glorified employees who "pay" for their positions, when answering their own question on their website, https://www.jimmyjohns.com/company/franchise/who-we-let-do-this-deal/, "Who do we Let Do this Deal" Defendants answered as follows:

**Think you have what it takes?**

1. You have to have the cash.

2. Real passion for ***my*** brand. If you don't dig it as much as we all dig it, this brand is not for you!

3. You've got to be a good, hard-working, well-intended individual, who respects yourself and others.

4. You've got to take specific, detailed, & disciplined direction extremely well.

5. You can't be a criminal.

6. You've got to love life, kids, music, dancing, your grandparents & sandwiches.

7. Last, be excited to work harder than you ever have in your life.  (Emphasis added).

118.    Defendant JJF's control over Operator/Franchisees, and the JIMMY JOHN'S® Sandwich Shops they operate, is further evidenced in a document titled "*Make or Break Statement of Commitments and Lifestyle*." Defendant JJF requires that potential Operator/Franchisees commit to and initial 13 "commitments" such as:

3. I understand that my store must be in compliance & have 2 certified managers in each store, otherwise, my application for any future stores will be denied.

4. I understand that arriving early in the morning (5 am) is crucial to the success of the business. The store must be ready by 10 am or earlier in order to handle the unexpected.

5. I understand that delivering and catering only to those within my delivery area is critical to my success. My delivery area will be set by JJF and only JJF can change it. I will adhere to the boundaries that are set.

6. I understand that vacations or personal time with friends and family could be interrupted so that I can correct any deficiencies in my restaurants. This includes covering for a teammate when they are truly sick. Running a restaurant is a chosen lifestyle. It is extremely difficult; I accept and embrace that.

7. I understand that training will be 6-day weeks for a minimum of 10 hours a day and that it is intense, focused, physical, and disciplined. Without 100% buy-in, I will ultimately fail.

8. I understand that perfect product is critical to the survival of my store and that I must;
   a. Never use bread older than 4 hours
   b. Have a mayo master on the make line 100% of the time
   c. Use the mayo scoop on every sandwich
   d. Leave the mayo on the bread
   e. Make perfect sandwiches, no tomato means no tomato
   f. Have a slicing master on every shift

9. I am committed to following Jimmy Systems 100% of the time including;
   a. Auditing every line in the system
   b. Auditing the quality of execution on the line
   c. Using business coaches report as a tool
   d. Using only a fixed schedule
   e. Executing 100% of the requirements in the coaches report
   f. Staffing my stores for the sales I want to do
   g. Not discounting or giving out coupons
   h. Comitting to a systematic guerilla sampling program

119. **Operator/Franchisee Controlled By Defendant JJF:** Defendant JJF requires that every Operator/Franchisee actually operate their JIMMY JOHN'S® Sandwich Shops, prohibits Operator/Franchisee's from operating any other businesses, describes in detail all of the Operator/Franchisee job duties, requires Operator/Franchisee to go through Defendant JJF's management training, monitors and audits each Operator/Franchisees ongoing performance, has authority to require Operator/Franchisee to engage changes or remedial efforts, and has the right to terminate Operator/Franchisee's Agreement and rights for not fully and satisfactorily performing management or general operational duties.

120. Operator/Franchisee acts as an agent of Defendant JJF and Defendant LIAUTAUD, or simply follows and carries out precise and explicit operational directions, in connection with the performance of its duties in connection with a JIMMY JOHN'S® Sandwich Shop.

121.    Defendant JJF explicitly establishes its control over Operator/Franchisee and each JIMMY JOHN'S® Sandwich Shop, by providing in its Franchise Agreement, in pertinent part:

a.      We have the right to develop, operate, and change the Franchise System in any manner that is not specifically prohibited by this Agreement. Whenever we have reserved in this Agreement a right to take or to withhold an action, or to grant or decline to grant you the right to take or omit an action, we may, except as otherwise specifically provided in this Agreement, make our decision or exercise our rights based on information readily available to us and our judgment of what is in the best interests of us, JIMMY JOHN'S® Restaurant franchisees generally, or the Franchise System at the time our decision is made, without regard to whether we could have made other reasonable or even arguably preferable alternative decisions or whether our decision promotes our financial or other individual interest;

b.      You acknowledge that the Franchise is nonexclusive, that you have no territorial protection whatsoever (even if you provide delivery services), and that we (and our affiliates) retain the right at all times during this Agreement's term to engage in any and all activities that we (and they) deem appropriate, wherever and whenever we (and they) desire, and whether or not such activities compete with your RESTAURANT…; and

c.      As a JIMMY JOHN'S® Restaurant franchisee, you must comply with this Agreement and all mandatory specifications, standards, operating procedures, and rules (collectively, "System Standards") that we

41

periodically prescribe for JIMMY JOHN'S® Restaurants in order to maintain the high and consistent quality that is critical to attracting and keeping customers for JIMMY JOHN'S® Restaurants.

122. **Monitoring of Day-to-Day Operations**: Defendant JJF closely monitors the day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shop, openly and secretly, through frequent and regular inspections, audits, and programs such as the guest satisfaction and "mystery shop" programs. Defendant JJF also hires third party service providers that Operators/Franchisees are required to agree to and pay for, to assist in the auditing and monitoring of day-to-day operations.

123. **Business Coach**: Defendant JJF controls day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shops through its own (Defendant JFF) employees, including "Business Coaches" that are charged with closely monitoring, assessing, auditing and remediating all aspects of the operation of the JIMMY JOHN'S® Sandwich Shop's they are assigned.

124. In addition to numerous detailed provisions setting forth its specific control over every aspect of the operation of a JIMMY JOHN'S® Sandwich Shop, Defendant JJF ensured its ultimate and complete control by including a "catch-all" provision in the Franchise Agreement which, provides in part that it retains control of all: "*aspects of operating and maintaining the RESTAURANT that we determine to be useful to preserve or enhance the efficient operation, image, or goodwill of the Marks and JIMMY JOHN'S® Restaurants*."

125. In order to ensure that Defendant LIAUTAUDs' vision and control is actuated in every JIMMY JOHN'S® Sandwich Shop, regardless of whether it is technically owned by Defendant JJF or LIAUTAUD, or financed by an Operator/Franchisee, Defendant JJF has

42

carefully drafted its FDD, Franchise Agreement, and Operational Manual to solidify its control of every aspect of every JIMMY JOHN'S® Sandwich Shops.

126.    **Control of All Management Level Employees:** Defendant JJF maintains complete and exclusive control over approval of all management level employees at every JIMMY JOHN'S® Sandwich Shop. Specifically, Defendant JJF:

      a.    Requires every JIMMY JOHN'S® Sandwich Shop to employ at least 1 General Manager that Defendant JJF has trained, certified and otherwise approved by Defendant JJF;

      b.    Requires every JIMMY JOHN'S® Sandwich Shop to employ at least 2 other management employees that have been trained, certified and otherwise approved by Defendant JJF;

      c.    In order to be trained by Defendant JJF, the employee must pass a pre-training enrollment test and otherwise be approved by Defendant JJF;

      d.    Defendant JJF requires employees at each of its JIMMY JOHN'S® Sandwich Shops, to become certified (and approved as an employee by Defendant JJF)  in various tasks such as "Certified Mayo Master" or "Certified Slicing Master";

      e.    Defendant JJF dictates the job responsibilities and working hours required by all management level employees;

      f.    Requires all management level employees to agree to submit to drug tests given by Defendant JSS during the training sessions; and

      g.    Otherwise controls all job training, job duties, job responsibilities and work performed, approval for position, oversight, auditing and termination

rights.

127.    **Employee Control:** Defendant JJF is the employer of every employee at every JIMMY JOHN'S® Sandwich Shop and maintains substantial control  over all aspects of employment for every employee working at a JIMMY JOHN'S® Sandwich Shop, including but not limited to:

    a.      Defining all job titles and positions;

    b.      Authoring and revising all job descriptions for positions;

    c.      Directing  and defining every job duty, including such things as how quickly employees must be able to make a sandwich (30 seconds), get a sandwich order out the door for delivery (4 minutes) or make a delivery;

    d.      Determining whether each job position is hourly or exempt;

    e.      Setting labor budgets and staffing levels;

    f.      Mandating employee qualifications, training, schedules, dress, and appearance;

    g.      Ability to terminate management and other employees it does not deem qualified or appropriate for the position;

    h.      Prohibiting employees' use internet and social media use in connection with their employment;

    i.      Prohibiting employees' from video or audio recordings of any type while at work; and

    j.      Requiring that Defendant JJF approve and certify every JIMMY JOHN'S® Sandwich Shop management employee.

128.    **Employee "In Store Personal Grooming and Uniform Dress Code:"**
Defendant JJF micromanages employees at every JIMMY JOHN'S® Sandwich Shop by
mandating every employee sign it, and providing to each in their Orientation Folder, compliance
with Defendant JJF's standard "In Store Personal Grooming and Uniform Dress Code" which
requires, among a list of other things, that all employees arrive at work "freshly showered/clean
shaven," and "only one plain earring per ear" and "one plain ring per hand." The list of detailed
requirements, many of which are arguably intrusive and unnecessary, is extensive and the plain
language of the document, "All stores must comply with the current and any future
specifications." The document is copyrighted to Defendant JJF.

129.    All employment related contracts and documents executed by Plaintiffs, and
members of the class, are created by, copyrighted by, uniform and mandated to be used by all
employees, at all JIMMY JOHN'S® Sandwich Shops, by Defendant JJF.

130.    **Control of Employees Evidenced In Confidential Operations Manual:**
Defendant JJF's "Confidential Operations Manual" sets forth requirements covering every aspect
of employment, including but not limited to sections setting forth: Rules for Employment,
Additional Rules for Management, Controlling Labor Costs, Importance of Maintaining
Minimum Staffing Levels, Recruiting the Ideal Jimmy John's Employee, Job Descriptions,
Examples of Fair and Legal Interviewing, Group Interview, Individual Interview, Staffing,  How
to Determine Staffing Levels, Using the Schedule Writer, Scheduling and Using a Block
Schedule, Orientation Folder, Training Employees, Training Your Staff using the 5 Step Hourly
Training Process, Evaluating, Disciplining, and Terminating Employees, Employee Reviews,
Disciplining Employees Using the Three-Tier Approach, The Big 3, Core Components, and
Company Culture. It further provides a copy of the uniform "Orientation Folder" and the

45

following documents that must be given to employees: (a) Rules for Employment, (b) Additional Rules for Management, (c) In-store Personal Grooming and Uniform Dress Code, (d) Employee Confidentiality and Non-Competition Agreement, (e) Jimmy John's Driver Agreement and Eligibility Form, (f) W-4, (g) I-9 and menu cheat sheet. Then, there are other uniform forms that are to be used as appropriate, such as: Jimmy John's Application for Employment, Sub Screen 1, Sub Screen 2, Disciplinary Action Report, Employee Separation Form, Inshopper Training Chart, Driver Training Chart, and Manager Training Chart.

131.    Defendant JJF maintains a website for JIMMY JOHN'S® Sandwich Shops at https://www.jimmyjohns.com/.  Defendant JJF does not permit franchisees to maintain a website for their individual JIMMY JOHN'S® Sandwich Shops, use the Jimmy John's name or trademarks in connection with any domain names, homepage, electronic address or any social media, such as use of social media, such as YouTube, personal blogs, Facebook and MySpace, professional networks like LinkedIn, liveblogging tools like Twitter, virtual worlds, file, audio and video-sharing sites, or any other similar social networking or media sites or tools. Rather, any website presence must be limited that which is controlled and operated by Defendant JJF.

132.    Defendant JJF processes online orders for all of its approximately 2,000 JIMMY JOHN'S® Sandwich Shops nationwide.  Defendant JJF has a webpage dedicated to online customer order placement for online ordering and payment at any of its approximately 2,000 stores nationwide. https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20j ohn's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+- +Enhanced#/.  Franchisees are not permitted to set up their own online order processing system.

133.    Defendant JJF offers customers the ability to sign up for a customer account online and place orders for food and other merchandise. https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20j ohn's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+-+Enhanced#/register/accountinfo.   Once a customer establishes an account, the customer can order from any JIMMY JOHN'S® Sandwich Shop nationwide.  Franchisees are not permitted to offer online customer accounts or keep an online database of loyal customers.

134.   Defendant JJF maintains a blog at http://www.freakyfast.com/.   However, franchisees are not permitted to maintain blogs related to their stores.

135.   **Maintains Access and Control Over Operator/Franchisee Bank Accounts.** Defendant JJF maintains control and full access to its franchisees' business checking accounts, as set forth in pertinent part in the JJF Franchise Agreement, "Before the RESTAURANT opens, you agree to sign and deliver to us the documents we require to authorize us to debit your business checking account automatically for the Royalty, Fund contributions (defined below), and other amounts due under this Agreement and for your purchases of Trade Secret Food Products, Branded Products, Permitted Brands, and other items from us and/or our affiliates (the "Electronic Depository Transfer Account" or "EDTA"). *We may auto-debit all fees and payments you owe us and our affiliates. We will debit the EDTA for these amounts on their due dates. Funds must be available in the EDTA to cover our withdrawals, and you must report your Gross Sales as we require.* (Emphasis added).

136.   **Intellectual Property and Creative Rights:**  Defendant JJF retains all rights to any and all ideas, concepts, techniques, or materials (created by Operator/Franchisee or any employee of a JIMMY JOHN'S® Sandwich Shop) concerning a JIMMY JOHN'S® Sandwich

Shop, regardless of whether or not it is protectable intellectual property. Defendant JJF further requires prompt disclosure, assignment of all rights and acknowledgement that it is their sole and exclusive property. Defendant JJF does not share any benefit or ownership interest with the Operator/Franchisee.

137. **Mandating English Verbal and Written Fluency:** Defendant JJF mandates that every employee that could come in contact with a customer (essentially every employee), at any of its JIMMY JOHN'S® Sandwich Shops, be able to read, write and speak fluent English and retains the exclusive right to determine fluency through administration of Defendant JFFs own designated English fluency test, which can be administered by Defendant JJF or a third party. Defendant JFF retains the exclusive right to decide what constitutes passing fluency and, therefore, whether each employee can be employed at a JIMMY JOHN'S® Sandwich Shop. Defendant JFF mandates Operator/Franchisee compliance with this requirement (in writing), despite the fact that the requirement is overly broad by requiring English fluency in job positions where the duties and responsibilities do not require the employee to read, write and speak fluent English. It leaves no discretion to Operator/Franchisee and again retains ultimate control over employment decisions at all JIMMY JOHN'S® Sandwich Shops.

138. **Mandating Point-of-Sale System:** Defendant JJF requires that every JIMMY JOHN'S® Sandwich Shop utilize only the currently-approved point-of-sale system, which is currently provided by and proprietary to Signature Systems, Inc. Owner/Franchisee has no discretion in the point-of-sale system that is utilized.

139. **Mandating On-Line Ordering System**: Defendant JJF controls all aspects of the online ordering system that is utilized by every JIMMY JOHN'S® Sandwich Shop and only

permits use of its approved online ordering system, which is currently provided by OrderTalk. Operator/Franchisee has no discretion in the on-line ordering system that is utilized.

140.    **Mandating Back-of-Office Computers and Software:** Defendant JJF controls exactly what back-of-office computer systems must be used at each of its JIMMY JOHN'S® Sandwich Shop's requiring a Windows compatible desktop computer, use of Windows 7 or 8 and use of Microsoft Excel 2010. Defendant JJF also provides in its Franchise Agreement, that the Operator/Franchisee "(m)ust upgrade any computer-based system and/or obtain service and support as we require or as is necessary because of technological developments. There are no contractual limitations on the frequency and cost of this obligation." Operator/Franchisee has no discretion to use a different type of computer, operating system, or software.

141.    **Mandating Ordering and Delivery Process**: Defendant JJF controls all aspects of the ordering and delivery process, including geographical delivery zone, delivery processes, timing of deliveries and accounting of deliveries, as set forth in part in  part, as follows in its Franchise Agreement with Operators/Franchisees:

a.    "You must provide delivery services in compliance with our System Standards but only in the delivery area we specify for you (in an email or other communication) after you find the RESTAURANT's site. You acknowledge and understand that we may, at any time and from time to time, and for any or no reason, change the definition of the delivery area and, in particular, reduce its size. If we ever decide to do so, you agree, without any argument or disagreement, immediately to change the delivery services that you provide and to deliver the;" and

b.     "Delivery and catering services (as provided in Subsection 1.D.), including your obligation to deliver Menu Items to customers in your delivery area only with your own employed delivery drivers in compliance *with our procedures and not through third party food ordering, drop-off/catering, or delivery services or systems (such as TAKEOUT TAXI); delivery driver qualifications*; your obligation *not to use third-party food ordering systems (such as campusfood.com or diningin.com);* and your obligation to *ring up and account for (in the manner we specify)* delivery and catering charges not included in the price of Menu Items." (Emphasis added).

142.   **Control of Products and Services:**  Defendant JJF maintains exclusive control over all products and services that are offered at a JIMMY JOHN'S® Sandwich Shop. The Franchise Agreement explicitly prohibits Operator/Franchisee from offering to sell, or selling any products or performing any services, not authorized by Defendant JJF. Operators/Franchisees have absolutely no discretion or control over the products and services offered for sale at the JIMMY JOHN'S® Sandwich Shop.

143.   **Control of Pricing:** Defendant JJF establishes the pricing of all in store items, as well as pricing methods and procedures for in-store, delivery, and on-line/electronic orders.

144.   **Mandating Hours and Days of Operation:** Defendant JJF sets the specific days and specific hours that each  JIMMY JOHN'S® Sandwich Shop  must be open for business and Defendant JJF approval is required for any deviation.

145.   **Mandating Handling Procedures for Customer Complaints**:  Defendant JJF requires all of its franchisees to comply with the JFF customer complaint resolution procedures.

Franchisee/Operators are not free to promulgate or utilize their own processes, techniques or discretion to deal with customers or resolve customer complaints.

146.  **Mandated Payment Methods:** Defendant JJF dictates the terms and type of customer payment that every franchisee must accept at a JIMMY JOHN'S® Sandwich Shop from customers, such as requiring that credit and debit cards, other payment systems, and check verification services be accepted and prohibiting franchisees from imposing any minimum amount for the acceptance of any payment method.

147.  **Mandated Bookkeeping, Accounting and Recordkeeping:** Defendant JFF controls and dictates the manner and methods for all recordkeeping, bookkeeping, data processing and accounting, including the systems, forms, formats, content and frequency of sales reports, financial performance reports, revenue reports, and other required reports.

148.  **Mandated use of proprietary software and electronic media**: Defendant JFF controls, determines and requires use of, specific software and electronic media used in connection with a JIMMY JOHN'S® Sandwich Shop, all aspects of its franchisee system and its Intranet.

149.  **Mandated Insurance Coverage and Terms/Conditions of Coverage:** Defendant JFF controls all aspects of insurance including not only the type of insurance and amounts of coverages required, but also the inclusion of additional covered entities, approval of the insurance contract language and specific provisions and conditions that are permissible/impermissible in the insurance contracts, the right to defend and the right to obtain insurance for the franchisee (and charge the franchisee for the insurance).

150.  Defendants' JJF and LIAUTAUD each mandates that all JIMMY JOHN'S® Sandwich Shops, utilize the same job titles, job positions, job descriptions, job classification,

51

form employment documents, employment policies and practices. Defendant JJF and Defendant LIAUTAUD each sets uniform job duties, job descriptions, job postings, etc., for all 2,000+ JIMMY JOHN'S® Sandwich Shops.

151.     At the direction of and pursuant to the policies of Defendant JJF and Defendant LIAUTAUD, Defendants' General Managers ("GMs") are classified as "exempt" employees under the FLSA/state wage laws and are paid a salary. GMs are expected to work long hours, typically 55 or more hours per week, in-restaurant. GMs have the primary managerial and supervisory responsibilities, such as hiring, firing, disciplining, setting the schedules, overseeing budgets, ordering, managing and directing employees, reporting, accounting, budgeting and other managerial/supervisory duties.

152.     At the direction of and pursuant to the policies of Defendant JJF and Defendant LIAUTAUD, Defendants' ASMs are classified as "exempt" employees under the FLSA/state wage laws and are paid a salary. ASMs have de minimis, limited administrative, managerial or supervisory duties. ASMs are also salaried and expected to work long hours, typically 55 or more per week, in-restaurant. More than 90% of ASMs time worked is spent doing the same routine, manual labor as Defendants' hourly employees, including, but not limited to, making sandwiches, baking bread, taking orders, and checking out customers at the register, stocking and cleaning, amongst other non-exempt labor tasks.

153.     The overwhelming majority of the time, ASMs are working simultaneously with a GM in-shop, whom have the primary managerial/supervisory duties and direct the work of all other employees. In the rare event that an ASM is in the restaurant without a GM, the ASM still performs the same work as the hourly employees and the hourly employees have already been

told, directed and trained on what to do by the GMs. There is little to no variation in the routine duties of the hourly employees and they are directed by the GMs.

154.    Plaintiffs, and ASMs at all JIMMY JOHN'S® Sandwich Shops, , are and were expected to work at least 55 hours per week without being paid minimum wages or overtime for any hours worked in excess of 40 hours.

155.    Plaintiff BRUNNER routinely works about 55 hours per week and is not paid minimum wages and never paid wages or overtime compensation for any hours she works in excess of 40 hours per week or 8 hours per day.

156.    As an ASM, Plaintiff TUROWSKI would routinely work in excess of 65-70 hours per week without being paid minimum wages or overtime wages for any hours worked in excess of 40 hours per week or 8 hours per day.

157.    During the relevant period of time, Defendants employed thousands of salaried ASM employees around the country with job duties and descriptions that are, for all intents and purposes, identical to Plaintiffs'. Plaintiffs and other similarly situated ASMs and report directly to GMs, in who resides the real management/administrative authority of the uniformly and systemically operated JIMMY JOHN'S® Sandwich Shops.

158.    Defendant JJ exercises significant managerial control over all Jimmy John's restaurants, both wholly-owned and franchise restaurants. Defendants have operating and management policies and procedures that apply uniformly to all restaurants nationwide. No matter the size of the restaurant or the location, every detail of how the restaurant is managed and run is uniformly fixed, mandated and controlled by Defendants through JJF's policies, directives and mandated  procedures. Defendant JJF manages all JIMMY JOHN'S® Sandwich Shops and makes routine, monthly on-site visits to all JIMMY JOHN'S® Sandwich Shops, both wholly-

owned and franchises, to make sure that all policies and procedures as set forth by, established by and mandated by Defendant JJF, are being implemented and followed.

159.    Defendant JJF and Defendant LIAUTAUD created and mandates all of the job positions and exemption classifications for all of the Jimmy John's restaurants in an effort to maintain management control and continuity amongst its brand and company.

160.    Defendant JJF exercises significant control over the management of all JIMMY JOHN'S® Sandwich Shops by training on, monitoring closely and mandating policies, procedures and practices related to payroll, employee hours and labor budgets.

161.    Defendant JJF and Defendant LIAUTAUD are both fully aware that ASMs are paid on a salary, when they should be paid on an hourly basis.

162.    In fact, Defendant JJF, through its extensive training, regular oversight and of each JIMMY JOHN'S® Sandwich Shop, and directions provided each JIMMY JOHN'S® Sandwich Shop from its "Business Coach," provide formulas and metrics for determining labor budgets. These formulas and metrics provide for ASMs to work long hours and to be paid on a salaried basis.

163.    All ASMs nationwide are classified as "exempt" pursuant to Defendant JJF's management policies, practices and mandates.

164.    All ASMs nationwide have the same job description and perform the same duties pursuant to Defendant JJF's management policies, practices and mandates.

**c.       ASMs Are Not Exempt under the FLSA, IMWL or Other State Wage Laws**

165.    At all times herein set forth, Plaintiffs and members of the Class and FLSA Collective are "employees" of Defendants within the definition of the FLSA, the IMWL, the IWPCA, and other state wage laws.

166.    At all times herein set forth, each Defendant, is an "employer" within the definition of the FLSA, the IMWL, the IWPCA, and other state wage laws.

167.    The FLSA, IMWL and other state wage laws have certain exemptions from their overtime requirement including exemptions for bona fide executive or administrative employees. 29 U.S.C. §213(a)(1); 820 ILCS 105/4a(2)(E).  Defendants' ASMs do not qualify as bona fide executives or administrative employees under the FLSA, IMWL and/or other state wage laws. *Id.*

168.    To establish an employee is a bona fide executive employee and exempt from being paid overtime compensation under the FLSA, IMWL and other state wage laws, an employer must show: (1) the employee is compensated on a salary basis at a rate of not less than $455 per week; (2) the employee's *primary* duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision; (3) the employee *customarily and regularly* directs the work of 2 or more other employees; and (4) the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(1)(2006).

169.    To establish an employee is a bona fide administrative employee and exempt from being paid overtime compensation under the FLSA, IMWL and other state wage laws, an employer must show: (1) that the employee's primary duty is the performance of work directly related to the management or general business operations of the employer or the employer's customers; and (2) that the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. Section 541.201(a); 29 C.F.R. Section 541.202(a).

170.    Neither Plaintiffs, nor any other ASM qualifies as either an executive or administrator under the exemptions set forth in the Code of Federal Regulations, FLSA, IMWL, IWPCA, and other state wage laws.

171.    The frequency and time spent on "exempt" duties and the primary duties done by Plaintiffs and all other ASMs do not qualify them as exempt from receiving overtime compensation as management, an executive or under any other exemption.    Therefore, Defendants are not entitled to classify Plaintiffs or any other ASMs as "exempt", and is required to pay them minimum wages and overtime compensation.

### d.    Time Spent On Exempt v. Non-Exempt Tasks

172.    ASMs spend the majority of their time on tasks that qualify them as "non-exempt" employees, rather than "exempt" employees.    Plaintiffs and other ASMs and primary duties are not managerial or administrative in nature.    Plaintiffs and other ASMs customarily and regularly spend more than 90% of their time performing non-exempt duties, including but not limited to the following enumerated duties:

a.      Taking orders;

b.      Checking out customers at the register;

c.      Making sandwiches;

d.      Slicing meat;

e.      Baking bread;

f.      Bagging orders;

g.      Open/close restaurant;

h.      Answer telephone calls;

i.      Identify and react to in-restaurant repairs;

56

       j.      Stocking;

       k.      Cleaning; and

       l.      Maintenance of restaurant: facing/adjusting merchandise to face front of shelf, dusting, vacuuming, window cleaning, cleaning restrooms, fixtures, restaurant exterior, sweeping lot of trash, etc.

173.    While Plaintiffs and other ASMs duties may slightly vary, insignificantly, based on the location they work, the duties are substantially similar. Moreover, regardless of the location Plaintiffs and other ASMs, they all spend more than 90% of their time performing non-exempt duties, as alleged herein.

174.    Plaintiffs and other ASMs primary duties are composed of "non-exempt" duties which are more important to Defendants' business model than the few de minimis, purportedly "exempt" duties that they occasionally do.

175.    Few, if any, of the duties of ASMs qualify as management or administrative duties under federal and state law because they do not relate to the management of general business operations. More than 90% of the time, ASMs perform duties consisting of carrying out the day-to-day affairs of the restaurant and do not require the exercise of discretion and/or independent judgment on matters of significance.

176.    The few de minimis and purportedly "exempt" tasks ASMs may occasionally do are strictly controlled, outlined and pre-arranged as to how they are to be executed by Defendants and are closely scrutinized and supervised by GMs, Area Managers and corporate level employees of Defendants, such as the "Business Coach," to ensure compliance. ASMs are not allowed to perform any "administrative" or "executive" tasks outside of the strict limitations and confines set forth by Defendants and/or GM supervision.

177.    The overwhelming majority of the job duties assigned to ASMs are also assigned to hourly employees.

178.    Defendants intentionally and knowingly use ASMs to perform significant amounts of manual labor and other non-exempt functions, in order to work them long hours each week and limit the payroll budget of restaurants and to make more profit, by increasing the profitability of the restaurants and franchises. It is key to Defendants' business model that ASMs perform non-exempt tasks and duties, without receiving minimum wages or overtime compensation for hours worked in excess of 40 hours per week.

179.    Defendants' violations are and continue to be willful and intentional in that they have known all along what federal and state wage laws require and that the primary duties and tasks of its salaried ASMs are such that they are not exempt from being paid overtime.

180.    As a result of Defendants' willful violations of the FLSA, IMWL, IWPCA and other state wage laws, Plaintiffs and all other similarly situated ASMs have suffered damages in that they have not received proper minimum wages, wages and overtime compensation in accordance the FLSA, IMWL, IWPCA and other state wage laws.

**e.      Confidentiality and Non-Competition Agreement**

181.    Defendant JJF and Defendant LIAUTAUD contrived, authored and mandated use at each its JIMMY JOHN'S® Sandwich Shops of a uniform Confidentiality and Non-Competition Agreement, in the form attached as Exhibit A.

182.    Defendants all use and cause employees to execute, as a condition of being employed, the Confidentiality and Non-Competition Agreement, which provides in pertinent part:

a.     "JJF franchises JIMMY JOHN'S® Sandwich Shops operating at various locations throughout the country and in connection with those activities, has invested (and continues to invest) substantial time, effort, and money in developing the products sold to customers of JIMMY JOHN'S® Sandwich Shops, all of which JJF considers to be "Confidential Information," as further defined in this Agreement;"

b.     "Employee understands that Employer is hiring Employee in reliance on Employer's willingness to comply with this Agreement and that Employer would not hire Employee if she or he were not willing to do so. Employee understands that complying with this Agreement is essential to protect Employer's and JJF's legitimate business interests;" and

c.     "Employee acknowledges that JJF will own any developments in the operation of a JIMMY JOHN'S® Sandwich Shop or concerning its products that Employee might create during his or her employment."

183.    Defendants include the Confidentiality and Non-Competition Agreement in the "Orientation Folder" for each new employee at any JIMMY JOHN'S® Sandwich Shop, along with other important forms that must be executed by the employee such as the W-4.

184.    Defendant JJF's form Employee Confidentiality and Non-Competition Agreement contains an excessively broad "Non-Competition Covenant" that is written to primarily benefit Defendant JJF, providing as follows: "Employee covenants and agrees that, during his or her employment with Employer and for a period of two (2) years after either the effective date of termination of his or her employment for any reason, whether voluntary or involuntary and whether by Employer or Employee, or the date on which Employee begins to comply with this

paragraph, whichever is later, he or she will not have any direct or indirect interest in or perform services for (whether as owner, partner, investor, director, officer, representative, manager, employee, principal agent, advisor or consultant) any business which derives more than ten percent (10%) of its revenue from selling submarine, hero-type, deli-style, pita and/or wrapped or rolled sandwiches and which is located within three miles of either (1)_____[insert address of employment] or (2) any such other JIMMY JOHN'S® Sandwich Shop operated by JJF, one of its franchisees or any of JJF affiliates."

185.    The practical effect of the geographic restriction is that an employee is restricted from working in an area that is over 6,000 miles large, at innumerable types of businesses (i.e., convenience stores, local coffee shops, sandwich shops, snack bars, cafeterias, family restaurants, etc.), in any capacity, for a period of 2 years in 44 different states and the District of Columbia.

186.    The Confidentiality and Non-Competition Agreement contains overly broad geographic restrictions and an overly broad restriction on the scope of prohibited activities and employment.

187.    The activity restriction contained in The Non-Competition Covenant is overly broad. The scope of limitation on employment is too broad in so much as it prohibits any and all employment, association, ownership or consultation with any business that derives more than 10% of its revenue from selling a range of sandwiches, pitas, wraps or rolls.

188.    The Confidentiality and Non-Competition Agreement is overly broad, is oppressive and burdensome to Plaintiffs and the Rule 23(b)(2) Class, unduly interferes with

commerce, is an impermissible restraint on trade, is contrary to public policy and is unnecessary and does not serve any legitimate protectable interest of any of the Defendants.

189.    The Confidentiality and Non-Competition Agreement is unenforceable.

190.    Absent declaratory and injunctive relief, Defendants will continue to mandate employees execute the Confidentiality and Non-Competition Agreement and will continue to enforce it.

191.    Absent declaration that the Confidentiality and Non-Competition Agreement is void and unenforceable as a matter of law, Rule 23(b)(2) class members will continue to forgo business and employment opportunities in compliance with the terms of the agreement.

## VII.    LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF

### VIOLATION OF THE FLSA

### **Plaintiffs v. Defendants JJF and LIAUTAUD**

192.    Plaintiffs, individually and on behalf of the National FLSA Collective, re-allege and incorporate by reference all the preceding paragraphs, to the extent applicable herein and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

193.    Plaintiffs bring their First Claim individually, and on behalf of the National FLSA Collective against Defendants JJF and LIAUTAUD.

194.    For purposes of this Claim, any references to Plaintiffs and Defendants refer to both Plaintiffs and only the Defendants that are parties to this Claim.

195.    Plaintiffs bring their individual claims for violations of the FLSA, as set forth herein, related to their respective positions as ASM, as well as for any such violations causing

damages in any other positions held, such as in-shopper or driver.

196.    Plaintiff brings the Collective claims solely for violations of the FLSA, and damages sustained, by similarly situated ASMs, as set forth in the National Collective definition.

197.    At all relevant times, Plaintiffs and members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 20 U.S.C § § 206(a) and 207(a).

198.    At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

199.    At all relevant times, Plaintiffs and members of the FLSA Collective are employees within the meaning of the FLSA in 29 U.S.C. §203(e) and 207(a).

200.    At all times relevant, Defendants employed Plaintiffs and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

201.    Defendants engaged in a widespread pattern, policy and practice of violating the FLSA, as detailed in this First Amended Complaint.

202.    Defendants failed to keep accurate records of time worked by Plaintiffs and members of the National FLSA Collective.

203.    Defendants did not make a good faith effort to comply with the FLSA in respect to compensating Plaintiffs and members of the FLSA Collective.

204.    Defendants' violations of the FLSA, as described in this First Amended Complaint, have and continue to be willful and intentional, thus applying a 3-year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

205.     As a result of Defendants willful and knowing violations of the FLSA, Plaintiffs and members of the FLSA Collective, who opt into this litigation, are entitled to recover wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq.*

## SECOND CLAIM FOR RELIEF

### Violations of the IMWL, the IWPCA and the statutory laws of other States[2]

### <u>Plaintiffs v. Defendant JJF and Defendant LIAUTAUD</u>

206.     Plaintiffs, individually and on behalf of the Nationwide Class, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically do not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

207.     Plaintiffs bring their Second Claim individually, and on behalf of the Nationwide Rule 23(c) class against Defendant JJF and Defendant LIAUTAUD.

208.     For purposes of this Claim, any references to Plaintiffs and Defendants refer to both Plaintiffs and only the Defendants that are parties to this Claim.

209.     Plaintiffs each bring her individual claim for violations of the IMWL and IWPCA, as set forth herein, related to her position as ASM as well as for any such violations causing her damages in any other positions she was employed by Defendants, such as an inshopper or driver.

---

[2] Alabama, Arizona, California, Delaware, District of Columbia, Florida, Georgia, , Iowa, Indiana, Kansas, Kentucky, Louisiana, , Maryland, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, , New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Oklahoma, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, , Virginia, West Virginia, and Wisconsin.

210. Plaintiffs brings the Class claims solely for violations and damages sustained under the IMWL, IWCPA and other similar state wage laws, by similarly situated ASMs, as set forth in the National Class definition.

211. Illinois and other states have similar wage laws that require the payment of wages and overtime compensation.

212. At all times herein set forth, Plaintiffs are/were an "employee" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/2.

213. At all times herein set forth, Defendants are/were an "employer" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/13.

214. Illinois and other state wage laws require an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

215. Illinois and other state wage laws require an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

216. During the Class Period, Plaintiffs and members of the Class did not fall under any of the exemptions provided by Illinois and/or other state wage laws. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq.*

217. Defendants willfully, intentionally and/or knowingly improperly classified Plaintiffs and members of the Class as "exempt" employees.

218. Plaintiffs and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

64

219.     Defendants' failure to comply with the IMWL was reckless and/or willful

220.     The IWPCA requires an employer, such as Defendants, to compensate employees for all hours worked. 820 ILCS 115/1 *et seq*.

221.     Defendants failed to keep accurate records of time worked by Plaintiffs and members of the Class.

222.     Defendants did not make a good faith effort to comply with the IWPCA in respect to compensating Plaintiffs and members of the Class for the hours worked and/or overtime compensation.

223.     Defendants intentionally and willfully failed and/or refused to pay Plaintiffs and members of the Class minimum wages and overtime compensation by violating the FLSA, IMWL and IWPCA, including but not limited to improperly misclassifying Plaintiffs and 1st and 2nd ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employee's regular rate of pay, for all work performed in excess of 40 hours per week and by not paying ASMs and 2nd ASMs all money due and owing in a timely manner.

224.     Defendants' failure to comply with Illinois law was reckless and/or willful.

225.     Based on the foregoing, Plaintiffs individually, and members of the class, are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant §12(a) of the IMWL. 820 ILCS 105/12, the IWPCA. 820 ILCS 115/1 *et seq*. and the similar state statutory laws of other states.

### THIRD CLAIM FOR RELIEF

### Violations of the FLSA

### <u>Plaintiff BRUNNER v. Defendant JS FORT and Defendant FORT</u>

226.    Plaintiff BRUNNER, individually and on behalf of The FORT Illinois FLSA Collective, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim,  as if fully set forth herein.

227.    Plaintiff BRUNNER brings this Third Claim individually, and on behalf of the The FORT Illinois FLSA Collective, against Defendant JS FORT and Defendant FORT.

228.    For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are parties to this Claim.

229.    Plaintiff brings her individual claim for violations of the FLSA, as set forth herein, related to her position as ASM as well as for any such violations causing her damages in any other positions she held, such as driver.

230.    Plaintiff brings the Collective claims solely for violations of the FLSA and damages sustained by similarly situated ASMs, as set forth in the Collective definition.

231.    At all relevant times, Plaintiffs, and members of the FLSA Collective, were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

232.    At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

66

233.    At all relevant times, Plaintiff and members of the FLSA Collective were employees within the meaning of the FLSA in 29 U.S.C. § 203(e) and 207(a).

234.    At all times relevant, Defendants employed Plaintiff and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

235.    Defendants engaged in a widespread pattern, policy and practice of violating the FLSA, as detailed in this First Amended Complaint.

236.    Defendants failed to keep accurate records of time worked by Plaintiffs and members of the National FLSA Collective.

237.    Defendants did not make a good faith effort to comply with the FLSA in respect to compensating Plaintiff and members of the FLSA Collective.

238.    Defendants' violations of the FLSA, as described in this First Amended Complaint, have and continue to be willful and intentional, thus applying a three (3) year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

239.    As a result of Defendants' willful and knowing violations of the FLSA, Plaintiff, and members of the FLSA Collective, who opt into this litigation, are entitled to recover unpaid wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq.*

## FOURTH CLAIM FOR RELIEF

### Violations of the IMWL and IWCPA,

### Plaintiff BRUNNER v. Defendant JS FORT and Defendant FORT

240.    Plaintiff BRUNNER, individually and on behalf of The FORT Illinois Class re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein

and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

241.    Plaintiff BRUNNER brings this Fourth Claim individually, and on behalf of The FORT Illinois Wage Class, against Defendant JS FORT and Defendant FORT.  For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are parties to this Claim.

242.    Plaintiff brings her individual claim for violations of Illinois state wage laws, as set forth herein, related to her position as ASM as well as for any such violations causing her damages in any other positions she held, such as inshopper, driver, etc.

243.    Plaintiff brings the class claims soley for violations and damages sustained by similarly situated ASMs, as set forth in the class definition.

244.    At all times herein set forth, Plaintiff  and members of the Class are/were an "employee" within the definition of Illinois  820 ILCS 105/3(c); 820 ILCS 115/2.

245.    At all times herein set forth, Defendants are/were an "employer" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/13.

246.    Illinois and other state wage laws require an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

247.    Illinois and other state wage laws require an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half times the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

248.    During the Class Period, Plaintiff and members of the Class did not fall under any of the exemptions provided by Illinois and/or other state wage laws. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq.*

249.    Defendants willfully, intentionally and/or knowingly improperly classified Plaintiff and members of the Class as "exempt" employees.

250.    Plaintiff and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

251.    Defendants' failure to comply with the IMWL was reckless and/or willful

252.    The IWPCA requires an employer, such as Defendants, to compensate employees for all hours worked. 820 ILCS 115/1 *et seq.*

253.    Defendants failed to keep accurate records of time worked by Plaintiff and members of the Class.

254.    Defendants did not make a good faith effort to comply with the IWPCA in respect to compensating Plaintiff and members of the Class for the hours worked and/or overtime compensation.

255.    Defendants intentionally and willfully failed and/or refused to pay Plaintiff and members of the Class minimum wages, wages and overtime compensation by violating the FLSA, IMWL and IWPCA, including but not limited to improperly misclassifying Plaintiffs and the Class of ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one and a half times the employee's regular rate of pay, for all work performed in excess of forty (40) hours per week and by not paying ASMs and all money due and owing in a timely manner.

69

256.     Defendants' failure to comply with Illinois law was reckless and/or willful.

257.     Based on the foregoing, Plaintiff individually, and members of the class, are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant §12(a) of the IMWL. 820 ILCS 105/12, the IWPCA. 820 ILCS 115/1 *et seq*. and the similar state statutory laws of other states.

## FIFTH CLAIM FOR RELIEF

### Violations of the FLSA

### Plaintiff TUROWSKI v. Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON

258.     Plaintiff TUROWSKI, individually and on behalf of The Severson Illinois FLSA Collective, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

259.     Plaintiff TUROWSKI brings this Fifth Claim individually, and on behalf of The Severson Illinois FLSA Collective, against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON.

260.     For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are parties to this Claim.

261.     Plaintiff brings her individual claim for violations of the FLSA, as set forth herein, related to her position as ASM as well as for any such violations causing her damages in any other positions she held, such as driver.

262.    Plaintiff brings the Collective claims solely for violations of the FLSA and damages sustained by similarly situated ASMs, as set forth in the Collective definition.

263.    At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

264.    At all relevant times, Plaintiff and members of the FLSA Collective were employees within the meaning of the FLSA in 29 U.S.C. § 203(e) and 207(a).

265.    At all times relevant, Defendants employed Plaintiff and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

266.    Defendants engaged in a widespread pattern, policy and practice of violating the FLSA, as detailed in this First Amended Complaint.

267.    Defendants failed to keep accurate records of time worked by Plaintiffs and members of the National FLSA Collective.

268.    Defendants did not make a good faith effort to comply with the FLSA in respect to compensating Plaintiff and members of the FLSA Collective.

269.    Defendants' violations of the FLSA, as described in this First Amended Complaint, have and continue to be willful and intentional, thus applying a 3-year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

270.    As a result of Defendants' willful and knowing violations of the FLSA, Plaintiff, and members of the FLSA Collective, who opt into this litigation, are entitled to recover unpaid wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq*.

## SIXTH CLAIM FOR RELIEF

### Violations of the of the IMWL and IWCPA

### Plaintiff TUROWSKI v. Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON

271.     Plaintiff TUROWSKI, individually and on behalf of The Severson Illinois Wage Class, re-alleges and incorporates by reference all the preceding paragraphs, to the extent applicable herein and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim,  as if fully set forth herein.

272.     Plaintiff TUROWSKI brings this Sixth Claim individually, and on behalf of The Severson Illinois Wage Class, against Defendants JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON.

273.     For purposes of this Claim, any references to Plaintiff and Defendants refer to the Plaintiff and Defendants that are parties to this Claim.

274.     At all times herein set forth, Plaintiff and all members of the class are/were an "employee" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/2.

275.     Plaintiff brings her individual claim for violations of Illinois state wage laws, as set forth herein, related to her position as ASM as well as for any such violations causing her damages in any other positions she held, such as driver.

276.     Plaintiff brings the class claims solely for violations and damages sustained by similarly situated ASMs, as set forth in the class definition.

277.     At all times herein set forth, Defendants are/were an "employer" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c); 820 ILCS 115/13.

72

278. Illinois and other state wage laws require an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

279. Illinois and other state wage laws require an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half times the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

280. During the Class Period, Plaintiff and members of the Class did not fall under any of the exemptions provided by Illinois and/or other state wage laws. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq.*

281. Defendants willfully, intentionally and/or knowingly improperly classified Plaintiff and members of the Class as "exempt" employees.

282. Plaintiff and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

283. Defendants' failure to comply with the IMWL was reckless and/or willful.

284. The IWPCA requires an employer, such as Defendants, to compensate employees for all hours worked. 820 ILCS 115/1 *et seq.*

285. Defendants failed to keep accurate records of time worked by Plaintiff and members of the Class.

286. Defendants did not make a good faith effort to comply with the IWPCA in respect to compensating Plaintiff and members of the Class for the hours worked and/or overtime compensation.

287.     Defendants intentionally and willfully failed and/or refused to pay Plaintiff and members of the Class minimum wages and overtime compensation by violating the FLSA, IMWL and IWPCA, including but not limited to improperly misclassifying Plaintiffs and the Class of ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employee's regular rate of pay, for all work performed in excess of 40 hours per week and by not paying ASMs and all money due and owing in a timely manner.

288.     Defendants' failure to comply with Illinois law was reckless and/or willful.

289.     Based on the foregoing, Plaintiff individually, and members of the class, are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant §12(a) of the IMWL. 820 ILCS 105/12, the IWPCA. 820 ILCS 115/1 *et seq*. and the similar state statutory laws of other states.

## SEVENTH CLAIM FOR RELIEF

### Declaratory Judgment and Injunctive Relief

### Plaintiffs v. All Defendants

290.     Plaintiffs re-allege and incorporates each of the foregoing paragraphs of this Complaint, to the extent applicable herein and specifically do not reallege any allegations that are not relevant to or inconsistent with this Claim,  as if fully set forth herein

291.     Plaintiffs bring this Seventh Claim against all Defendants.

292.     There is an actual case or controversy between Defendants and Plaintiff regarding the validity of and enforceability of the Confidentiality and Non-Compete Agreement Defendants caused Plaintiffs and other members of the Rule 23(b)(2) Class to execute as a

condition of employment.

293.    The Confidentiality and Non-Compete Agreement is unreasonable, overly broad, oppressive, injurious to Plaintiffs and the Rule 23(b)(2) Class, in restraint of trade, against public policy and does not serve any legitimate protectable interest of any of the Defendants.

294.    Defendants will not discontinue enforcement and use of the Confidentiality and Non-Compete Agreement absent a declaratory judgment and injunctive relief.  There is no adequate remedy at law for Defendants conduct alleged in this Claim.  Absent injunctive relief, Plaintiffs and the Class will suffer irreparable harm.

295.    Plaintiffs, on behalf of the Rule 23 (b)(2) Class demonstrates that the Class is entitled to a declaratory judgment that the Confidentiality and Non-Compete Agreement is void as a matter of law and unenforceable.

296.    Plaintiff further shows that he and members of the Rule 23(b)(2) Class are entitled to injunctive relief prohibiting Defendants from enforcing the Confidentiality and Non-Compete Agreement and further prohibiting them from continuing to use, whether in writing or through oral agreements with their employees, the Confidentiality and Non-Compete Agreement.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons respectfully requests the following relief:

a.      That this Court find that all the requirements for certification of a collective action under 29 U.S.C. §216(b) have been satisfied and certify the collective action  FLSA claims set forth in Plaintiffs First Claim, Third Claim and Fifth Claim;

b. That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify Plaintiffs Second Claim, Fourth Claim and Sixth Claim as class action under Rule 23(b)(3) of the Federal Rules of Civil Procedure;

c. That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify Plaintiffs Seventh Claim as a class under 23(b)(2) of the Federal Rules of Civil Procedure;

d. That Plaintiffs be appointed as representatives of the Classes and Collectives, as set forth herein;

e. That Plaintiffs' counsel be appointed as Class Counsel;

f. That Plaintiffs', and members of the Classes and Collectives, be awarded damages including Unpaid wages and overtime compensation under the FLSA, IMWL, IWPCA and other state wage laws;

g. That Plaintiffs', and members of the Classes and Collectives, be awarded an additional and equal amount as liquidated and/or punitive damages under the FLSA, IMWL, IWPCA and other state wage laws;

h. Entry of an order directing Defendants to supply the names, all known addresses and phone numbers of the similarly situated ASMs to Plaintiffs' counsel so that Plaintiff may be allowed to send out notice of the Class Action and FLSA Collective Action, or that the Court issue such notice, to all persons who are presently, or have at any time during the past 10 years immediately preceding the filing of this suit, been employed by Defendants as ASMs. Such notice shall inform them of that this civil

action has been filed, the nature of the action, and their right to join this lawsuit if they believe they were denied wages;

i.      Permanent Injunctive relief directing Defendants to discontinue its practice of denying ASMs overtime pay;

j.      Entry of Declaratory judgment that the Confidentiality and Non-Competition Agreement if void as a matter of law and unenforceable;

k.      Permanent injunctive relief prohibiting Defendants from enforcing the Confidentiality and Non-Competition Agreement or continuing to use it, in written or oral form;

l.      Award of Pre-judgment and post-judgment interest, as provided by law;

m.      Award reasonable Attorneys' fees and costs under the FLSA, IMWL, IWPCA and other applicable state laws; and

n.      Award any and all other appropriate relief as in law or equity may pertain.

## **JURY DEMAND**

Plaintiffs demand a trial by jury by all issues so triable.

Dated: <u>September 19, 2014</u>         Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

<u>/s/Robert M. Foote</u>
Robert M. Foote, Esq. (#03124325)
Kathleen C. Chavez, Esq. (#06255735)
Kevin P. Noll, Esq. (#6313611)
Peter L. Currie, Esq. (#06281711)
FOOTE, MEILKE, CHAVEZ & O'NEIL, LLC
10 West State Street
Suite #200
Geneva, IL 60134
Telephone: (630) 232-7450

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2014, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to all attorneys of record.


<u>/s/Robert M. Foote   </u>

## VERIFICATION

I, EMILY BRUNNER, being first duly sworn on oath hereby state that I am the Plaintiff in this action, that I have read the forgoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted.

EMILY BRUNNER

Subscribed and sworn to before me
this __19__ day of __September__, 2014.

NOTARY PUBLIC

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 04/26/15

## VERIFICATION

I, **CAITLIN TUROWSKI**, being first duly sworn on oath hereby state that I am the Plaintiff in this action, that I have read the forgoing Complaint, and that the allegations contained herein are true and accurate to the best of my knowledge and belief.

Respectfully submitted.

**CAITLIN TUROWSKI**

Subscribed and sworn to before me
this 19 day of September , 2014.

NOTARY PUBLIC

"OFFICIAL SEAL"
LIZETH ESQUIVEL
Notary Public, State of Illinois
My Commission Expires 04/28/15