**EXHIBIT 1**

```
 1                IN THE UNITED STATES DISTRICT COURT
                     NORTHERN DISTRICT OF ILLINOIS
 2                         EASTERN DIVISION

 3
      EMILY BRUNNER, individually and on   )  Docket No. 14 C 5509
 4    behalf of all persons similarly      )
      situated, as Class/Collective        )
 5    representative,                      )
                                           )
 6                         Plaintiff,      )
                                           )
 7              vs.                        )
                                           )
 8    JIMMY JOHN'S ENTERPRISES, INC., et   )
      al.,                                 )  Chicago, Illinois
 9                                         )  September 25, 2014
                           Defendants.     )  9:30 o'clock a.m.
10

11              TRANSCRIPT OF PROCEEDINGS - STATUS
             BEFORE THE HONORABLE CHARLES P. KOCORAS
12

13    APPEARANCES:

14
      For the Plaintiff:      FOOTE, MIELKE, CHAVEZ & O'NEIL LLC
15                            BY:  MR. PETER CURRIE
                              10 W. State Street, Suite 200
16                            Geneva, Illinois  60134

17
      For the Defendants:     SEYFARTH SHAW LLP
18                            BY:  MR. MATTHEW GAGNON
                                   MR. GERALD L. MAATMAN, JR.
19                            131 S. Dearborn St., Suite 2400
                              Chicago, Illinois  60603
20
                              JACKSON LEWIS P.C.
21                            BY:  MR. GREGORY ANDREWS
                                   MR. JEFFREY L. RUDD
22                            150 N. Michigan Avenue, Suite 2500
                              Chicago, Illinois  60601
23
                              JACKSON LEWIS P.C.
24                            BY:  MR. MATTHEW S. DISBROW
                              2000 Town Center, Suite 1650
25                            Southfield, Michigan 48075
```

```
 1   APPEARANCES   (Continued):

 2
     Court Reporter:            MS. JOENE HANHARDT
 3                              Official Court Reporter
                                219 S. Dearborn Street, Suite 1744-A
 4                              Chicago, Illinois   60604
                                (312) 435-6874
 5              * * * * * * * * * * * * * * * * * *
                       PROCEEDINGS RECORDED BY
 6                      MECHANICAL STENOGRAPHY
                    TRANSCRIPT PRODUCED BY COMPUTER
 7

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1             THE CLERK:  14 C 5509, Brunner vs. Jimmy John's
 2   Enterprises.  Status.
 3             MR. ANDREWS:  Good morning, your Honor, Greg Andrews
 4   on behalf of JS Fort Group, Severson Affiliates Five, Severson
 5   Affiliates, Inc., Jeffrey Fort, Todd Severson and Brooke
 6   Severson.
 7             THE COURT:  Okay.
 8             MR. MAATMAN:  Good morning, your Honor, Gerald Maatman
 9   of Seyfarth Shaw on behalf the Jimmy John's corporate
10   defendants.
11             THE COURT:  Good morning.
12             MR. GAGNON:  Good morning, your Honor, Matt Gagnon,
13   also Seyfarth Shaw, on behalf of Jimmy John's corporate
14   defendants.
15             THE COURT:  Good morning.
16             MR. DISBROW:  Good morning, your Honor, Matt Disbrow
17   on behalf of all of the other non-corporate defendants.
18             THE COURT:  Okay.
19             MR. RUDD:  Jeff Rudd, also appearing from Jackson
20   Lewis with Matt Disbrow and Jeff Andrews, on behalf of the
21   non-corporate defendants.
22             THE COURT:  Okay.
23             MR. CURRIE:  Good morning, your Honor, Peter Currie on
24   behalf of the plaintiffs.
25             THE COURT:  Very good.
```

```
 1              Where are we here?
 2              MR. CURRIE:  Judge, we amended our complaint last week
 3   as an initial matter.
 4              I did want to point out that there is a scribner's
 5   error on -- just on -- the caption.
 6              THE COURT:  A scrivener -- a scrivener's -- error?  Is
 7   that what you said?
 8              MR. CURRIE:  That probably is right, yes.  It is
 9   probably "scrivener."
10              THE COURT:  Okay.
11              I will not quibble about the pronunciation, but I want
12   to make sure we are talking about the same thing.
13              MR. CURRIE:  Absolutely, your Honor.
14              THE COURT:  When you find that scrivener, he makes
15   errors all the time.
16              (Laughter.)
17              THE COURT:  Go ahead.
18              MR. CURRIE:  Well, I always come in and say "status,"
19   and Judge Shadur always corrects me.
20              THE COURT:  So, did you correct the error?
21              MR. CURRIE:  Pardon?
22              THE COURT:  Did you correct the error?
23              MR. CURRIE:  No, you know, because it was just brought
24   to my attention one of the defendants we named was Jimmy John's
25   Franchisor, LLC.
```

1          We have all of the proper defendants on there.  That
2   one is the error.  So, in terms of correcting it, I don't know
3   if you want us to just file a corrected caption?
4          THE COURT:  Yes.
5          MR. CURRIE:  Or if you want us to re-file the
6   complaint, we can do that.
7          THE COURT:  Well, just file a corrected caption if you
8   do not have to change anything else.  Okay?
9          MR. CURRIE:  Okay.
10         THE COURT:  So, we will take care of that.
11         MR. CURRIE:  Okay.
12         THE COURT:  So, now, responsive pleadings?
13         MR. MAATMAN:  Your Honor, I advised plaintiff's
14  counsel that I would accept service for all of the corporate
15  Jimmy John's defendants except for our CEO, who is in Europe
16  and doesn't know about the lawsuit.  So, the individual CEO
17  needs to be served.  But we will take care of the rest.
18         And I think the parties have been talking about how --
19  in a very complicated case, very large case, how -- to
20  efficiently order and schedule the discovery.  And --
21         THE COURT:  This has to do with certain alleged
22  overtime investments of time by managers or assistant managers
23  or something like that?
24         MR. MAATMAN:  That is correct, your Honor.
25         But, now the amended complaint has turned into an

1  80-page complaint and attacks, in essence, the business model
2  of the franchisor/franchisee relationship.  So, this joint
3  employer issue is going to be very important.
4          But, in essence, there are tens of thousands of
5  workers, both assistant store managers, hourly workers and
6  delivery drivers.  So, we do have a pretty broad field in front
7  of us.
8          MR. CURRIE:  Just one point of clarification on that,
9  Judge.
10         In terms of --
11         THE COURT:  Is all of that necessary -- is he right --
12 if you are attacking the whole business model, when it comes to
13 whether certain people did or did not get paid the right way?
14         MR. CURRIE:  Absolutely, your Honor.
15         We -- you know, in the allegations, we -- have alleged
16 that, essentially, this is not your traditional franchisor/
17 franchisee relationship; essentially, that this is sort of, you
18 know, an illusory agreement that, you know, essentially, their
19 CEO and/or their corporate defendant has used the sort of
20 franchisor/franchisee traditional arrangement to, essentially,
21 just finance all of their -- the growth of their -- operations.
22         They control and micromanage everything.
23         THE COURT:  So, what?
24         MR. CURRIE:  Because --
25         THE COURT:  How does that affect the manner in which

1   the employees are treated and paid?
2         MR. CURRIE:  Because they have created those corporate
3   policies.  And those are -- the policies at issues are --
4   corporate's policies.  That is our allegation.
5         We have talked to people all across the county.  None
6   of the assistant managers are being paid hourly.  We believe
7   they are all misclassified, and they are all misclassified
8   pursuant to corporate policies.
9         There is an additional issue or claim that was raised
10  in this case -- and, again, it kind of highlights this issue --
11  of the, you know, significant micromanagement.  They control
12  everything.
13        We have a -- Count 7 is for declaratory and injunctive
14  relief.  It is a Rule 23(b)(2) class for declaratory injunctive
15  relief pursuant to a confidential and non-competition agreement
16  that every employee has to sign.
17        And this is a direct corporate document from Jimmy
18  John's Franchise LLC, and for the benefit of Jimmy John's
19  Franchise LLC or corporate.  It restricts --
20        THE COURT:  All right.  We are getting a little ahead
21  of the game here.
22        MR. CURRIE:  Sure.
23        THE COURT:  I do not want you to try your case over
24  the lectern at this early stage.
25        Yes?

1    MR. MAATMAN: Your Honor, just one point that might
2    clarify your question.
3    You have before you two Illinois-based franchisees.
4    The reason the case and the attack on the business model is the
5    plaintiff's theory is Jimmy John's corporate is the joint
6    employer with all 1900 franchisees in every state of the Union;
7    and, by suing my client, the corporate defendant, he says there
8    are wage and hour violations in all of these states by other
9    franchisees he has not sued, but the corporate entity is
10    responsible because it is an alleged joint employer.
11    And, so, the issue before you, then, separate and
12    apart from these two Illinois-based franchisees, who have been
13    sued by the plaintiff, is should Jimmy John's corporate be
14    liable on a nationwide basis for all of these franchisees who
15    are not before the Court?
16    So, that is why the joint employer issue, we think,
17    drives the bus in this lawsuit.
18    THE COURT: Yes.
19    Well, that will have to be resolved.
20    MR. CURRIE: And, Judge, just to -- so, I could add
21    just one more thing on the scope, it is actually the collective
22    and class allegations only relate to assistant managers.
23    The drivers' reimbursement and the hourly employees
24    working out the clock, those are pled just for the individual
25    named plaintiffs.

1       THE COURT:  Okay.
2       MR. CURRIE:  So, those are not class and
3  collective issues.
4       THE COURT:  So, you have a certain putative class.
5  You say it is narrower than the notion of all of the employees.
6       MR. CURRIE:  Correct.
7       THE COURT:  I will accept that.
8       MR. CURRIE:  Correct.
9       THE COURT:  And it is clear, if you are going to
10 allege the corporation really is the co-obligor of every
11 franchise in existence with the Jimmy John's name, that issue
12 obviously has to be resolved.
13      And if that is what Mr. Maatman means by an attack on
14 the business model, then it is a legitimate legal matter that
15 we have to look into.
16      MR. CURRIE:  Yeah.
17      THE COURT:  So, I do not quarrel with that.
18      MR. CURRIE:  I agree with that, too, your Honor.
19      MR. MAATMAN:  And on September 3, I made a proposal to
20 plaintiff's counsel on how to schedule the phases and orders.
21      He got back to me at 8:15 last night.
22      I would suggest perhaps to the Court that, in addition
23 to the correction to the amended complaint, if the parties
24 could have 10 days to try and present a stipulation to you --
25 an agreement -- on how we would order things going forward, to

```
 1  allow the case to be efficiently handled, that might be a --
 2          THE COURT:  Well, that would be helpful to me.  I
 3  mean, sooner rather than later we are going to have to decide
 4  whether or not the allegation that the main company is on the
 5  hook elsewhere -- just assuming a violation -- we have to
 6  decide that, I think, sooner rather than later.
 7          MR. MAATMAN:  Our proposal -- and we have a basic
 8  agreement, details to be worked out -- is Phase One would be:
 9  Is there or is there not a joint employer relationship?
10          THE COURT:  Yes.
11          MR. MAATMAN:  Because that is going to drive the case.
12          THE COURT:  No question.
13          Okay.  When will -- but responsive pleadings are
14  called for, anyway, in the interim, right?
15          MR. MAATMAN:  Correct.
16          THE COURT:  When will those been filed?
17          MR. MAATMAN:  Within 20 days of today.  We are
18  discussing --
19          THE COURT:  All right.
20          And, I assume --
21          MR. DISBROW:  Well, actually, your Honor, we have got
22  new defendants.  There has been a waiver of service for 60 days
23  for those defendants to answer.
24          I would suggest it would make sense that all
25  defendants get 60 days to get their responsive pleadings in.
```

1       I am sure the Judge isn't going to -- the Court is not
2  going to -- consider those piecemeal.
3       THE COURT: No.
4       Well, that is what I am trying to get at. I want the
5  case to be at issue, as opposed to a motion pleading practice.
6       So, if that is what is coming, then, I do not -- I
7  mean, time clearly is not of the essence. And if some
8  defendants have 60 days to answer or otherwise plead, then I
9  think everything should be on the same track.
10      But on the assumption that this case is going to go
11 forward with somebody -- with at least the plaintiff and at
12 least one defendant -- then I think the idea of trying to get
13 together and create some protocol to proceed with, at least,
14 the central question of the relationship of the entity, would
15 be helpful. And the more you can agree and stipulate, the more
16 efficient the case will progress.
17      So, I think for present purposes -- when was the
18 service on any defendant who has got 60 days to file?
19      MR. DISBROW: As to the Severson Group and --
20 defendants, your Honor -- I believe 60 days would be
21 November 22nd.
22      We calculated that before we came to court today.
23      MR. GAGNON: Yes.
24      MR. DISBROW: I don't know about the status of the
25 corporate -- new corporate -- defendants.

```
 1              THE COURT:  Well, let me just order all responsive
 2   pleadings to take place November 22nd.  And I hope that gives
 3   everybody enough time even if, under the rules, maybe some will
 4   have a few more days beyond that.  Because I would like to put
 5   you all on the same track.
 6              And, also, what I would like you to do is to get
 7   together in the way you have suggested and, I think, makes
 8   sense.
 9              So, then, I want to see you shortly after that, to
10   tell me where you are and where we are with all of the entities
11   and the filings.  Okay?
12              So, I think that is the best way to do it.
13              So --
14              MR. CURRIE:  Shortly after which date, your Honor?
15              THE COURT:  Pardon me?
16              MR. CURRIE:  Shortly after everybody's responsive
17   pleading date?
18              THE COURT:  Yes, right.  We need those on file, so we
19   know exactly what we are dealing with.
20              Somebody may file a motion to dismiss which, at least,
21   may stay discovery.  I do not really know.  But --
22              MR. DISBROW:  And as a matter of candor, your Honor, I
23   will say that the franchisees are considering a number of
24   motions to dismiss; and, indeed, potentially a motion to sever,
25   based upon the pleadings alone.  So --
```

```
 1            THE COURT:  All right.
 2            I will not prejudge that, but we will see what is
 3  filed and what the bases are for the filings.
 4            So, Yolanda -- you are not Yolanda.
 5            She is sitting out in the -- I am getting a
 6  substitution here and I am still a day late.
 7            (Laughter.)
 8            THE COURT:  Vettina, give me a date.
 9            THE CLERK:  November 25th at 9:30.
10            THE COURT:  All right?
11            Are you all Illinois lawyers here?
12            MR. DISBROW:  I am not, your Honor.
13            THE COURT:  Where are you from?
14            MR. DISBROW:  Michigan.
15            I am --
16            THE COURT:  I want to know how inconvenient it is
17  for --
18            MR. DISBROW:  It is fine, your Honor.  I come to
19  Chicago quite often.  I do a lot of trips.
20            THE COURT:  Do you like it here?
21            MR. DISBROW:  Yes.  Great city, your Honor.
22            THE COURT:  Good.
23            You are welcome.
24            (Laughter.)
25            MR. DISBROW:  It is not Detroit, but --
```

1       (Laughter.)

2       THE COURT:  No, it is not Detroit.

3       (Laughter.)

4       THE COURT:  We will not take that any further than
5  that.

6       (Laughter.)

7       THE COURT:  I am not the Chicago Chambers of Commerce.

8       (Laughter.)

9       MR. DISBROW:  All right.

10      THE COURT:  All right.  I will see you back then.

11      MR. GAGNON:  Thank you, your Honor.

12      MR. DISBROW:  Thank you, your Honor.

13      MR. MAATMAN:  Thank you, Judge.

14                    *   *   *   *   *

15  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.
16

17  /s/ Joene Hanhardt                November 12, 2014
    Official Court Reporter
18

19

20

21

22

23

24

25