## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **EMILY BRUNNER and CAITLIN TUROWSKI, individually and on behalf of all persons similarly situated, as Class/Collective representatives,** | ) ) ) ) ) | **Case No.: 14-cv-05509** |
| **Plaintiffs,** | ) ) ) | **Hon. Judge Kocoras** |
| **v.** | ) ) ) | |
| **JAMES JOHN LIAUTAUD, JIMMY JOHN'S, LLC, JIMMY JOHN'S ENTERPRISES, LLC, JS FORT GROUP, INC., JJ SEVERSON AFFILIATES FIVE, INC., JJ SEVERSON AFFILIATES, INC., JIMMY JOHN'S FRANCHISE, LLC, JEFFREY S. FORT, TODD SEVERSON, and BROOKE SEVERSON,** | ) ) ) ) ) ) ) ) ) ) ) | |
| **Defendants.** | ) | |

**PLAINTIFFS' RESPONSE TO THE MOTION AND MEMORANDUM OF LAW IN SUPPORT OF THE JIMMY JOHN'S DEFENDANTS' MOTION TO DISMISS THE COMPLAINT AND/OR STRIKE CLASS ALLEGATIONS AND CLAIMS (Dkt. # 77)**

PLAINTIFFS, EMILY BRUNNER (hereinafter "Brunner") and CAITLIN TUROWSKI (hereinafter "Turowski"), (hereinafter collectively referred to as "Plaintiffs), by and through their undersigned counsel of record, and for their Response to THE JIMMY JOHN'S DEFENDANTS' (hereinafter, "Jimmy John's" or "Defendant") MOTION TO DISMISS THE COMPLAINT AND/OR STRIKE THE CLASS ALLEGATIONS AND CLAIMS (hereinafter "MTD"), state as follows:

## COMPLAINT ALLEGATIONS

Plaintiffs incorporate herein by reference all allegations of the SAC (Dkt. # 67, SAC). Due to the extensive factual allegations, and for the sake of brevity, Plaintiffs will not burden the Court with a full recitation of the facts. Instead, Plaintiffs incorporate and rely on all factual allegations of the SAC and will cite to certain facts contained in the SAC throughout this Response to Jimmy John's MTD.[1]

## PROCEDURAL STANDARDS

In ruling on a Rule 12(b), the court accepts as true the factual allegations of the complaint, construes the complaint in favor of the plaintiff, *Perry v. Village of Arlington Heights,* 186 F.3d 826, 829 (7th Cir.1999); *Am. Fed'n of Gov't Employees, Local 2119 v. Cohen,* 171 F.3d 460, 465 (7th Cir.1999), and considers whether relief is possible under any set of facts that could be established consistent with the complaint, *Cohen,* 171 F.3d at 465. At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice for purposes of establishing standing. *Family & Children's Ctr., Inc. v. Sch. City of Mishawaka,* 13

---

[1]Jimmy John's makes mention of Plaintiffs' SAC not being verified. Plaintiffs' verified their initial Class Action Complaint and their First Amended Class Action Complaint and attach hereto as Exhibit A, Plaintiffs' verifications of the Second Amended Class Action Complaint.

F.3d 1052, 1058 (7th Cir.1994); *Erickson v. Pardus,* 551 U.S. 89, 93, 127 S.Ct. 2197, 167 L.Ed.2d 1081 (2007); *Reger Dev., LLC v. Nat'l City Bank,* 595 F.3d 759, 763 (7th Cir. 2010).

## ARGUMENT

**A.    PLAINTIFFS' SECOND CLAIM FOR RELIEF SHOULD NOT BE DISMISSED IN ITS ENTIRETY.**

Plaintiffs' Second Claim for Relief in the SAC included a class definition as follows:

> All individuals *nationwide*, who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, pursuant to the IMWL, at any time from 3 years prior to the date of commencement of this action through the date of judgment in this action.

(SAC, Dkt. # 67, page 24).

Jimmy John's MTD raises several arguments for dismissal of the Second Claim for relief, all of which attack the *nationwide* scope of the proposed IMWL Class. Specifically, Jimmy John's argues that: (1) the IMWL cannot be applied extraterritorially, due to the silence of the statute in that regard and Illinois courts' interpretation of similar Illinois statutes, which are silent on extraterritorial application; (2) extraterritorial application would violate the *Erie* Doctrine; and (3) extraterritorial application of the IMWL would be unconstitutional pursuant to the Commerce Clause.

Plaintiffs amend herein, the IMWL Class definition, as follows:

> All individuals, who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop *in Illinois*, and who have not been paid all wages owed to them, including but not limited to minimum wages, wages and overtime compensation, pursuant to the IMWL, at any time from 3 years prior to the date of commencement of this action through the date of judgment in this action.

Defendant's MTD does not raise an argument, nor cite any case law, attacking the propriety of an IMWL Class for ASMs who worked in Illinois, at this pleading stage. Rather, Defendant's MTD asserts, "*Alternatively, at a minimum, the Court should strike the class claims under the Second Claim for Relief to the extent that they would require the application of Illinois law to any employee who worked outside of Illinois.*" (Dkt. # 77, Page 15). As Plaintiffs amend the IMWL Class definition, as defined above, Defendant's argument is rendered moot. One point of distinction is that Defendant's proposed IMWL limitation would exclude *any ASM who worked outside of Illinois*. Plaintiffs' amended IMWL Class definition would include *any ASM who worked in Illinois* during the relevant time period. This is meaningful to the extent that a putative class member worked as an ASM at a Jimmy John's in Illinois *and* a Jimmy John's outside of Illinois during the relevant time period. To the extent such individuals worked at a Jimmy John's in Illinois during the Class period, they should be included in the IMWL Class, with their IMWL damages limited to IMWL violations for the time they worked in Illinois. As such, Plaintiffs' amended IMWL Class definition moots Defendants' argument with regard to the Second Claim for Relief in the SAC.

**B. COUNT VII FOR DECLARATORY OR INJUNCTIVE RELIEF SHOULD NOT BE DISMISSED.**

Defendants' motions to dismiss Count VII, under Rules 12(b)(1), 12(b)(6) and 12(b)(7), should be denied as they fail to set forth any cognizable basis under those Rules for dismissal. Here, Plaintiffs' well-pleaded SAC adequately alleges facts sufficient to establish Plaintiffs' individual Article III standing, all necessary elements of the Count VII claim and to establish that all necessary party Defendants are before this Court. Defendants make a number of meritless arguments in support of their respective motions to dismiss Count VII, that can generally be collectively addressed in the following categories: (A) *Plaintiffs' SAC Plainly Contains*

4

*Sufficient Allegations to Establish Plaintiffs' Individual Article III Standing to Pursue Count VII;*

(B) Defendant Prematurely Seeks Adjudication of Class Issues on the Merits; and *(C) Plaintiffs'*

*SAC Sets Forth Allegations Sufficient to Establish that All Necessary Defendants Are Parties to*

*Count VII.*

> **A.      Plaintiffs' SAC Plainly Contains Sufficient Allegations to Establish Plaintiffs' Individual Article III Standing to Pursue Count VII**

Defendants Article III standing challenge fails for several reasons: (1) Plaintiffs SAC

contains clear and sufficient allegations establishing each Plaintiffs' individual Article III

standing, (2) Defendants improperly conflate Article III standing and the doctrine of mootness

and (3) Plaintiffs' claims are not moot and Defendants' representations and affidavits offering

partial cessation and relief under Count VII are insufficient.

> **1.      Article III Standing**

Article III standing doctrine is "focused on whether the party invoking jurisdiction had

the requisite stake in the outcome *when the suit was filed*." (emphasis added) *Davis v. Federal*

*Election Comm'n,* 554 U.S. 724, 734 (2008). Plaintiffs each plead specific factual allegations

establishing their respective Article III standing to pursue Count VII, including but not limited

to: identified the specific form contract that Defendants uniformly and routinely require all

employees, including Plaintiffs, to execute as a condition of employment and that is the subject

of Plaintiffs' Count VII, and further attached a copy of the CNCA to the SAC, as Exhibit A

(SAC ¶2); alleged each Plaintiff executed the CNCA and it is operational with regard to both

Plaintiffs (SAC ¶¶s361 and 362); alleged facts establishing each Plaintiff has a reasonable

apprehension that the CNCA will be enforced against her if she violated it (SAC ¶¶s109, 110

(alleged an actual and justiciable controversy between the Parties that is appropriate for

adjudication by this Court (SAC ¶358 and 359); alleged specific adverse positions of the Parties requiring (SAC ¶360); alleged facts establishing a need for this Court to interpret, construct, determine the validity and enforceability or and/or blue pencil the CNCA (SAC ¶¶s 359, 360,364, 369); alleged injury and damage and further alleged that Plaintiffs are currently acting, will continue to act, are under a purported duty to continue certain action/inaction and will imminently breach or have already breached the CNCA, and fear be subject to enforcement action, and will continue absent Declaratory Judgment (SAC ¶¶s 111, 112, 115, 145, 146, 147, 158,365, 366, 367 368); each Plaintiff has taken steps, or intends take steps, that may breach one or more provisions of the CNCA (SAC ¶¶s 113- 116, 148-156); alleged necessity of declaratory judgment and injunctive relief and without it Defendants' probability of continued action.(SAC ¶¶s 158, 364, 365, 366, 367, 370).

Defendants' cannot credibly challenge that Plaintiffs' have adequately identified a justiciable dispute, adverse positions of the Parties or a reasonable apprehension of breach or enforcement of the CNCA, when the CNCA repeatedly references enforcement, explicitly empowers Defendant JJF with enforcement rights, and even shifts all costs and expenses, including attorneys' fees to Plaintiffs. (CNCA ¶¶s 6, 9) Since Defendants cannot effectively challenge Plaintiffs' Article III standing in light of the abundant, factually specific allegations contained in the SAC, they rely upon the legally flawed argument that their offers (affidavit and representations to this Court) not to enforce the non-competition provision in the CNCA, against Plaintiffs individually, effectively deprive Plaintiffs' of Article III standing. Defendants' argument fails because it confuses the concepts of Article III standing and mootness.

### 2. *Doctrine of Mootness*

Mootness and Article III standing are distinct concepts. Article III standing is established

*at the time* of filing of the lawsuit, however "[w]hen a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Parvati Corp. v. City of Oak Forest*, 630 F.3d 512, 516 (7th Cir.2010). Defendants self-serving, after- the -fact representations, are nothing more than a poorly contrived attempt to moot Plaintiffs claims for which they clearly have standing. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.' '[I]f it did, the courts would be compelled to leave [t]he defendant ...free to return to his old ways.'" *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 120 S. Ct. 693, 145 L. Ed. 2d 610 (U.S.S.C. 2000) (emphasis added) (citations omitted). "Along with its ability to hear the case, the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). The standard announced by the Supreme Court "for determining whether a case has been mooted by the defendant's voluntary conduct is stringent: 'A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not be reasonably expected to recur." *Id.* at 189.The party asserting mootness bears the "heavy burden" of persuading the Court "that the challenged conduct cannot reasonably be expected to start up." *Id*. See also *Laidlaw*, 528 U.S. at 190 ("As just noted, a defendant claiming that its voluntary compliance moots a case bears a formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur."). This heavy burden cannot be met by a defendant's claim that it has voluntarily abandoned the conduct and has no intention to revive it. *W.T. Grant Co.*, 345 U.S. at 633 ("Such a profession does not suffice to make a case moot") It also cannot be met where the defendant would remain free to return to its old ways. *Coral Constr. Co. v. King County*, 941 F.2d 910, 928 (9th Cir. 1991) ("even if the government [which is afforded far more

deference than a private defendant] is unlikely to reenact the provision, a case is not easily mooted where the government is otherwise unconstrained should it later desire to reenact the provision"). *Bell v. City of Boise*, 709 F.3d 890, 901 (9th Cir. 2013) ("Defendants have failed to establish . . . that the new policy is the kind of permanent change that proves voluntary cessation" because it "could easily be abandoned or altered in the future."

Moreover, Defendants submitted a cleverly crafted affidavit hoping to moot Plaintiffs' claims, while retaining the threat of enforcement, as well as the right to enforce the covenant not to compete against all other similarly situated employees throughout the country. [2] Noticeably, the affidavit does not indicate a willingness to refrain from enforcing all challenged aspects of the CNCA, rather Defendants' offer of non-enforcement is limited to the single issue of non-competition provision. Plaintiffs' specifically seek declaratory judgment and injunctive relief invalidating the entire CNCA, or in the alternative interpreting or "blue-penciling" numerous provisions (CNCA ¶¶s 354-372), such as: Confidentiality Duty (CNCA ¶2), Duty to Convey Ownership (CNCA ¶2), non-Competition provision, (CNCA¶3), Disclosure Duty (CNCA ¶4) and Cost of Enforcement Duty. (SAC¶¶s 239, 240, 243, 246, 247, 248,249, 250, 251, 356, 359, 371 and 372). Defendants proposal that Plaintiffs remain bound by all other aspects of the CNCA, with the exception of the non-competition provision, thus leaving many issues under Count VII unresolved is unacceptable. It is well established that the legal system should be protected against manipulation by a party "who might contrive to moot cases that otherwise

---

[2] Important public interests are at stake in this lawsuit, thousands of similarly situated employees (who reasonably believe in the validity of the CNCA) provide further supports for why this case is not moot. *W.T. Grant Co.,* 345 U.S. at 632-33 (holding that the case was not moot since there was a public interest in having the legality of the practices settled and since the defendant was free to return to his old ways). Absent the declaratory and injunctive relief requested by Plaintiffs' Defendants will continue. In fact, a glaringly absent from Defendants affidavit and representations to this Court, is any representation that Defendants have or will stop using or enforcing the challenged CNCA against other similarly situated employees.

would be likely to produce unfavorable precedents." *Dow Jones & Co. v. Ablaise, Ltd.*, 583 F. Supp. 2d 41, 44 (D.D.C. 2008). Here, Defendant's transparent (and inadequate) attempt should not be condoned.

### B.      *Defendant Prematurely Seeks Adjudication of Class Issues on the Merits*

A substantial portion of Defendants' arguments invite this Court to prematurely adjudicate the propriety of class certification. It is generally inappropriate to deny class status, by striking the class allegations, at the pleading stage and before the parties have had a sufficient opportunity to conduct class discovery and motion and brief class certification arguments. *See Wright v. Family Dollar, Inc.,* No. 10 C 4410, 2010 WL 4962838, at *1 (N.D. Ill. Nov. 30, 2010), at *1; *Santiago v. RadioShack Corp.,* No. 11 C 3508, 2012 WL 934524, at *4 (N.D.Ill. Feb. 10, 2012) (similar); *see also Boatwright v. Walgreen Co.,* No. 10 C 3902, 2011 WL 843898, at *2 (N.D.Ill. Mar. 4, 2011) ("Because a class determination decision generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action, ... a decision denying class status by striking class allegations at the pleading stage is inappropriate."). The issues raised by Defendants related to class treatment are best determined after full briefing of motions for class certification. *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 677 (7th Cir.2001)(highlighting the differing standard and factors considered for a Rule 23 motion as opposed to a Rule 12 motion); *Worix v. MedAssets, Inc.*, 869 F.Supp.2d 893, 901 (N.D.Ill.2012) (denying motion to strike class allegations at the pleadings stage as the motion was premature). Indeed, the Seventh Circuit has warned that "a court may abuse its discretion by not allowing for appropriate discovery before deciding whether to certify a class." *Damasco v. Clearwire Corp.,* 662 F.3d 891 (7th Cir. 2011).

Defendants challenge class certification of the Count VII class on the following basis:

(1) the Court should engage a Choice of Law analysis and find that Illinois law does not apply to all Count VII class member claims; (2) if the laws of multiple states must be applied to Count VII, than there are too many individual issues, and as a matter of law a class action involving cannot be certified, and (3) putative class actions involving contract claims are generally not certifiable. Each of those arguments fail.

> *(1)*      *Defendant is incorrect that the Court must engage a Choice of Law analysis and find, as a matter of law, that Illinois law does not apply to all Count VII class member claims;*

Defendants argue, without reference to any legal authority, that this Court must, as a matter of law, rule on the pleadings that Illinois law cannot be applied to the Count VII class claims. In so arguing, Defendants ignore Plaintiffs' very specific allegations supporting class-wide application of Illinois law and further establishing a "juridical link"[i] between Defendants sufficient to warrant application of Illinois law to the entire Count VII class, even if this Court were to determine that Illinois law was not otherwise independently applicable. Moreover, Defendants' contention that this Court must make a choice-of-law inquiry, on the pleadings alone and at this preliminary stage in the litigation, is contrary to well-established class jurisprudence.

The Supreme Court established that here can be no injury in applying a particular state law, if it is not in conflict with that of any other jurisdiction that could be connected to the suit. *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 814–16, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985); *Barron v. Ford Motor Co. of Canada, Ltd.*, 965 F.2d 195, 197 (7th Cir.1992) (applying Florida law) (cautioning that "before entangling itself in messy issues of conflict of laws a court ought to satisfy itself that there actually is a difference between the relevant laws of the different states") If they succeed in determining that the an "outcome determinative" conflict exists that warrants a

choice-of-law analysis, then a factual inquiry is required to determine whether, based on the allegations set forth in Plaintiffs SAC, Illinois law applies to all count VII class member claims under applicable choice of law analysis or because a sufficient juridical link exists between Defendants to make class-wide adjudication appropriate in this particular case. Both require an extensive factual and legal analysis. It is simply not an issue that can be decided on the pleadings alone.

Defendant has utterly failed to meet its burden of demonstrating that a choice-of-law analysis is warranted, and can be made on the pleadings. In fact, it is quite telling that Defendants have not, and cannot, identify a single one of the forty-four (44) relevant states that would permit utilization of its form CNCA. Under all relevant state laws, the "outcome" would be the same- the CNCA is invalid and unenforceable. There are no states where peculiarities in the state laws would save the validity of the CNCA.

> *(2)* *Nationwide Class Actions, involving the laws of multiple states, are not foreclosed as a matter of law, rather are often certified and the propriety of certification involves a careful factual and legal inquiry beyond just the Pleadings*

Variations in applicable state laws do not foreclose class certification. Defendants simply ignore long-standing class action jurisprudence in making their unfounded argument that because this Court may determine the laws of multiple states apply Rule 23(B)(2) certification is inappropriate. Nationwide class actions involving contract law, are routinely certified, even when the laws of multiple states are implicated. In re U.S. Foodservice Inc. Pricing Litigation, 729 F.3d 108, 124 (2d Cir. 2013) As the U.S. Supreme Court explained, "[C]ontract law is not at its core diverse, nonuniform, and confusing" (internal quotation marks omitted) *Am. Airlines, Inc. v. Wolens,* 513 U.S. 219, 233 n. 8, 115 S.Ct. 817, 130 L.Ed.2d 715 (1995)."[I]f the applicable state

laws can be sorted into a small number of groups, each containing materially identical legal standards, then certification of subclasses embracing each of the dominant legal standards can be appropriate." *Klay v. Humana, Inc.,* 382 F.3d 1241, 1258 (11th Cir.2004), *abrogated on other grounds by Bridge v. Phx. Bond & Indem. Co.,* 553 U.S. 639, 128 S.Ct. 2131, 170 L.Ed.2d 1012 (2008).The crucial inquiry is not whether the laws of multiple jurisdictions are implicated, but whether those laws differ in a material manner that precludes the predominance of common issues. *Walsh v. Ford Motor Co.,* 807 F.2d 1000, 1017 (D.C.Cir.1986) [3]

### *(3)*   *Nationwide Class Action Claims Involving Form Contracts are Routinely Certified*

*Nationwide class certification of claims involving form contracts is common and class treatment of claims involving form contracts has been repeatedly found particularly appropriate. Keele v. Wexler,* 149 F.3d 589, 594–95 (7th Cir.1998) (citing, with approval, *Kleiner v. First Nat'l Bank of Atlanta,* 97 F.R.D. 683, 691 (N.D.Ga.1983) ("[w]hen viewed in light of Rule 23, claims arising from interpretations of a form contract appear to present the classic case for treatment as a class action"), *Flanagan v. Allstate Ins. Co*., 242 F.R.D. 421, 428 (N.D. Ill. 2007) ( "Claims arising out of form contracts are particularly appropriate for class action treatment…. Additionally, our courts have often found a common nucleus of operative facts when the defendants are, as here, alleged to have directed standardized conduct toward the putative class

---

[3]If the Court accepted Jimmy John's argument that the determination of the enforceability of the Non-Compete Agreement would require the application of the laws of 44 states, it would still not require dismissal of the Declaratory Class. As an alternative, the class definition could be amended or modified at the class certification stage, to include only those hourly employees and ASMs who executed agreements in Illinois. For instance, the Declaratory-Class definition could be amended or modified, as follows: All current ASM and hourly employees of Defendants who executed the Confidentiality and Non-Competition Agreement *in Illinois*, at any time, and former ASM and hourly employees of Defendants that executed it and were separated from their employment on or before the date that 2 years preceding the date of commencement of this action through the date of judgment in this action.

members." (internal citations omitted)).

Consideration of the appropriate choice of law, determination of commonality, individual issues and other class issues are premature, and involve many factual and legal issues that should be addressed by this Court after the parties have had an opportunity to conduct adequate discovery and fully brief the issues. R*ios v. State Farm Fire & Cas. Co*., 469 F.Supp.2d 727, 742 (S.D.Iowa 2007) ("[I]t would be more appropriate for the Court to address the commonality, i.e., conflicts of law analysis, during the class certification stage, after class discovery").

### C. Plaintiffs' SAC Sets Forth Allegations Sufficient to Establish that All Necessary Defendants Are Parties to Count VII

Defendant JJF moves this Court to dismiss Plaintiffs' Count VII pursuant to Rule12(b)(7) on the basis that Plaintiffs have failed to join all necessary parties per Rule 19. In so doing, Defendant simply ignores Plaintiffs' SAC that sets forth numerous facts sufficient establishing Defendants are not only the employers of Plaintiffs and the Class, but also facts establishing a juridical link between Defendant JJF, LIAUTAUD, the other Defendants and Operators/Franchisees. (SAC ¶¶s 10-26, 40, 42, 49- 51) Defendants use an Illinois Choice of Law provision in their standard and uniform franchising agreement, and most other Agreements. (SAC ¶ 40), and said Franchise Agreement, and related documents, create an intricate web of relationships that essentially render all Operators/Franchisees merely wholly-controlled tentacles/entities of Defendants JJF and LIAUTAUD. (SAC ¶¶s 10-19,22-25, 37-39, 43-49 ). The relationship, and extent of centralized control and authority, as more fully set forth in the SAC (SAC ¶¶s 1159-200) and clearly establishes a juridical link that renders Defendants the only necessary defendant parties to Count VII. Further, Defendant JJF admits ownership of and

responsibility for mandating the execution and utilization of the CNCA, and further advised

Plaintiffs and putative class that the Franchise Agreement is the document establishing the

required use of the CNCA by every employee at Johns ® Sandwich Shops nationwide.

Even more, Defendant JJF, as unilateral drafter of the CNCA, included a very clear

provision that exposes the fallacy of its argument that its Operator/Franchisees are indispensable

parties to this lawsuit. JJF not only peppered the CNCA with references to its interests, rights and

3rd Party Beneficiary standing, it explicitly acknowledges the non-necessity of

Operator/Franchisees, providing in relevant part in Paragraph 9 that it "…(a)t its election may

enforce this Agreement with or without the authorization of cooperation…" of the

Owner/Operator Franchisees. Disturbingly, Defendant JJF wants this Court to interpret its

unilaterally drafted and imposed CNCA in a way that makes the Operators/Franshisees

"indispensable" when the action is brought against Defendant JJF, but making them easily

dispensed of in actions brought by Defendant JJF.

Plaintiffs are masters of their own complaint, and can choose among defendants as long

as the absence of a particular defendant would not prevent the court from according complete

relief among existing parties; the non-party defendant claims an interest relating to the subject of

the action and is so situated that disposing of the action in its absence may (i) as a practical

matter impair or impede the non-party defendant's ability to protect the interest; or (ii) leave

Defendant JJF subject to a substantial risk of incurring double, multiple, or otherwise

inconsistent obligations because of the interest. *Rule 19* None of those factors are present here.

No non-Party Defendant has stepped forward and alleged an interest in the litigation, the Court

can afford complete relief and Defendant JJF has the requisite contractual control to avoid any

risk of double, multiple or other obligations resulting from non-inclusion of its

14

Operator/Franchisees by directing them (pursuant to its authority under the Franchise Agreement to invalidate, cease using, modify or continue use in any manner directed by Defendant JJF) in any fashion so ordered by this Court.

In the alternative, even if this Court determines that the Owner/Franchisees are indispensable parties under Rule 19, dismissal of Plaintiffs' Count VII is not appropriate, rather this Court is required to join the required parties by Court order, pursuant to Rule 19 (a) (2), which provides in pertinent part, "If a person has not been joined as required, the court must order that the person be made a party." Here, Defendant JJF has an accurate and easily-identifiable list of every Operator/Franchisee and can rather seamlessly facilitate this Court's joinder of each as a party-defendant. The claim against each Operator/Franchisee arises from use of the identical form CNCA and their relationship to Defendant JJF, as well as the putative class, is established through identical provisions of the form Franchise Agreements (subject to uniform Illinois Choice of Law provisions). In fact, the commonality is so great that this Court may decide to adjudicate the claims through utilization of a defendant class. However, for the same reasons previously set forth herein, determination of the propriety of class certification (plaintiff or defendant class) is premature.

## CONCLUSION

For each of the aforementioned reasons, Jimmy John's MTD should be denied in its entirety.

Dated: February 13, 2015                    Respectfully submitted,

                                            FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

                                            By:/s/Robert M. Foote

15

Robert M. Foote, Esq. (#03124325)
Kathleen C. Chavez, Esq. (#06255735)
Kevin P. Noll, Esq. (#6313611)
Peter L. Currie, Esq. (#06281711)
FOOTE, MEILKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite #200
Geneva, IL 60134

***Attorneys for the Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on February 13, 2015, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.


/s/Robert M. Foote