UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| EMILY BRUNNER and CAITLIN TUROWSKI, individually and on behalf of all persons similarly situated, as Class/Collective representatives, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 14-C-5509 |
| JAMES JOHN LIAUTAUD, JIMMY JOHN'S, LLC, JIMMY JOHN'S ENTERPRISES, LLC, JS FORT GROUP, INC., JJ SEVERSON AFFILIATES FIVE, INC., JJ SEVERSON AFFILIATES, INC., JIMMY JOHN'S FRANCHISE, LLC, JEFFREY S. FORT, TODD SEVERSON, and BROOKE SEVERSON, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

Now before the Court is Defendant James John Liautaud ("Liautaud"), Jimmy John's, LLC, Jimmy John's Enterprises, LLC, Jimmy John's Franchise, LLC, JS Fort Group, Inc., Jeffrey Fort, JJ Severson Affiliates Five, Inc., JJ Severson Affiliates, Inc., Todd Severson and Brooke Severson's (collectively the "Defendants") motions to dismiss brought pursuant to Federal Rules of Civil Procedure ("Rule") 12 (b)(1) and 12(b)(6). Additionally, Jimmy John's, LLC, Jimmy John's Enterprises, LLC, Jimmy

John's Franchise, LLC (collectively "Jimmy John's") and Liautaud both move to strike the class allegations in Count II and Count VII pursuant to Rule 12(f) and Rule 23(b). For the following reasons, the Defendants' motions are granted in part and denied in part.

## BACKGROUND

For the purposes of the instant motion, the following well-pleaded allegations derived from Plaintiffs Emily Brunner ("Brunner") and Caitlin Turowski's ("Turowski") (collectively the "Plaintiffs") second amended complaint ("SAC") are accepted as true. The Court draws all reasonable inferences in favor of the Plaintiffs. *Purdue Research Found v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782-83 (7th Cir. 2003).

Jimmy John's is a gourmet sandwich company with over 2,000 standardized sandwich shops ("Jimmy John's Sandwich Shops") located throughout the United States (in 44 States and the District of Columbia). Jimmy John's Sandwich Shops was founded in 1983 by Liautaud. Liautaud is an Illinois resident and the current Chief Executive Officer ("CEO") of Jimmy John's. After founding Jimmy John's, Liautaud began franchising Jimmy John's Sandwich Shops to franchisees throughout the country.

Jimmy John's is currently expanding with approximately 200 new franchise locations opening each month. The franchise owners ("Operators") have a contractual relationship with Jimmy John's Franchise, LLC, a Delaware limited liability

company, which permits them to operate under the Jimmy John's LLC's brand, pursuant to the terms of a Jimmy John's Franchise Agreement (the "Franchise Agreement"). Jimmy John's Franchise, LLC is an affiliate of Jimmy John's Enterprises, LLC and shares the same principal place of business, shares the same members, and for all intents and purposes, operates as a single integrated entity. Jimmy John's LLC is the parent company of Jimmy John's Franchise, LLC and Jimmy John's Enterprises, LLC.

To grow the Jimmy John's brand, Liautaud worked diligently to create a product that customers wanted, and implemented many procedures to ensure customers receive a uniform dining experience at all Jimmy John's Sandwich Shops throughout the United States. To effectuate this customer dining experience, Liautaud put in place a tightly controlled business plan applicable to every Operator of a Jimmy John's Sandwich Shop franchise. The individual franchisee Operators are required to follow the explicit, precise, and detailed instructions provided by Jimmy John's. Jimmy John's and Liautaud created uniform policies to be applied to its company-owned and franchised locations, including, but not limited to, policies regarding management, human resources, job titles and duties, minimum weekly hour requirements for assistant store managers ("ASM") and other employees, staffing requirements, compensation, wage and hour compliance, employee practices, and terms and conditions of employment.

Each employee beginning employment with Jimmy John's is required to sign various employee authorizations as a condition of their employment. One of the most prominent authorizations is the Confidentiality and Non-Competition Agreements. The Defendants include the Confidentiality and Non-Competition Agreements in an employee orientation folder for each new employee at any Jimmy John's Sandwich Shop. The Confidentiality and Non-Competition Agreements set forth various restrictions applicable to Jimmy John's Sandwich Shop employees both during their tenure at Jimmy John's and after their employment ends. The Non-Competition Agreement lays out various restrictions concerning where former employees can work, what job functions they can perform, and when a former employee must disclose their intent to work at a competing food service establishment. Specifically, the Non-Competition Agreement prohibits former employees from working at food service venues which derive 10% or more of their revenue from the sale of sandwiches, submarines, or wraps. This prohibition is applicable to all food service venues within a prescribed radius of the employees' former Jimmy John's Sandwich Shop.

Brunner is an Illinois resident and is employed as an ASM at a franchised Jimmy John's Sandwich Shop located in Downers Grove, Illinois. The Downers Grove, Illinois franchise is owned by JS Fort Group Inc., an Illinois corporation. JS Fort Group Inc. is owned and operated by Jeffrey Fort (collectively the "JS Fort Group Defendants"), an Operator under the Jimmy John's Franchise Agreement. The

JS Fort Group Defendants own and operate 28 different Jimmy John's Sandwich Shops in Illinois.

When Brunner began her employment with the JS Fort Group Defendants, she signed the Confidentiality and Non-Competition Agreements. Although still employed at the Downers Grove Jimmy John's Sandwich Shop location, Brunner asserts that she fears that she breached the terms of her Confidentiality and Non-Competition Agreements by disclosing information and in contemplation of applying to other food service companies, in violation of both the Confidentiality and Non-Competition Agreements.

Turowski is an Illinois resident and formerly worked as a delivery driver and an ASM at a franchised Jimmy John's Sandwich Shop in Gurnee, Illinois. The Gurnee, Illinois franchise is owned by JJ Severson Affiliates, Inc., an Illinois corporation. JJ Severson Affiliates, Inc. is owned and operated by Todd Severson and Brooke Severson (collectively, the "Severson Defendants"), both Operators under the Jimmy John's Franchise Agreement. The Severson Defendants own and operate 12 different Jimmy John's Sandwich Shops throughout Illinois.

When Turowski began her employment with the Severson Defendants, she signed the Confidentiality and Non-Competition Agreements. Turowski does not work at the Gurnee Jimmy John's Sandwich Shop location anymore. After she left, Turowski began working at BBQ'd Productions, a barbeque restaurant, located within the prohibited distance to the Gurnee Jimmy John's Sandwich Shop, determined by

the Non-Competition Agreement. Turowski fears that her employment at BBQ'd Productions was in violation of the Non-Competition Agreement and subjects her to legal recourse. Turowski has since left her position at BBQ'd Productions, however still feels that her past conduct legally imperils her.

Brunner originally brought the claims raised in this action in three separate class action suits against Jimmy John's and the JS Fort Group Defendants. However, Brunner voluntarily dismissed two of her cases and on September 19, 2014 she filed her First Amended Complaint, in the matter before the Court. The First Amended Complaint combined the allegations from the other dismissed proceedings into one pleading and added Turowski as another named plaintiff, and vastly expanded the named defendants and the scope of her claims. On January 9, 2015, the Plaintiffs filed their SAC alleging individual and class violations in varying amalgamations within their seven count complaint. The Plaintiffs' SAC alleges: (1) a violation of the Fair Labor Standards Act ("FLSA") against Jimmy John's and Liautaud brought by the Plaintiffs, individually, and on behalf a putative nationwide class; (2) a violation of the Illinois Minimum Wage Law ("IMWL") on behalf of the Plaintiffs, individually, and a putative nationwide class against Jimmy John's and Liautaud; (3) Brunner, individually, brings suit under the FLSA against the JS Fort Group Defendants; (4) Brunner, individually, brings suit under the IMWL against the JS Fort Group Defendants; (5) Turowski, individually, brings suit under the FLSA against the Severson Defendants; (6) Turowski, individually, brings suit under the IMWL against

the Severson Defendants; and (7) the Plaintiffs, individually, and on behalf a putative

nationwide class seek a declaratory judgment and injunctive relief regarding the

Confidentiality and Non-Competition Agreements.  On January 29, 2015, Jimmy

John's moved to dismiss Counts II and IV of the Plaintiffs' SAC.  On the same day,

Liautaud moved to dismiss Counts I, II and VII of the Plaintiffs' SAC.  On February

13, 2015, the JS Fort Group Defendants and the Severson Defendants (collectively the

"Franchisee Defendants") moved to dismiss Counts III, V and VII of the Plaintiffs'

SAC.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss is used to test the legal sufficiency of a

complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811,

820 (7th Cir. 2009).  Pursuant to Rule 8(a)(2), a complaint must contain "a 'short and

plain statement of the claim showing that the pleader is entitled to relief,' sufficient to

provide the defendant with 'fair notice' of the claim and its basis." *Tamayo v.*

*Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2);

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Additionally, the allegations

in the complaint must "actually suggest that the plaintiff has a right to relief, by

providing allegations that raise a right to relief above a speculative level." *Tamayo*,

526 F.3d at 1084 (emphasis in original).

Rule 12(b)(1) permits the court to dismiss an action for lack of jurisdiction over

the subject matter. Fed. R. Civ. P. 12(b)(1).  When a party moves for dismissal under

Rule 12(b)(1) challenging the factual basis for jurisdiction, the nonmoving party must

support its allegations with competent proof of jurisdictional facts. *Thomson v.*

*Gaskill*, 315 U.S. 442, 446 (1942); *Kontos v. U.S. Dept. of Labor*, 826 F.2d 573, 576

(7th Cir. 1987). "If a plaintiff cannot establish standing to sue, relief from this court is

not possible, and dismissal under 12(b)(1) is the appropriate disposition." *Am.*

*Federation of Government Employees v. Cohen*, 171 F.3d 460, 465 (7th Cir. 1999).

Affidavits and other relevant evidence may be used to resolve the factual dispute

regarding the court's jurisdiction. *Kontos*, 826 F.2d at 576.

## DISCUSSION

As set forth above, the Defendants consist of three distinct groups (Jimmy

John's, Liautaud, and the Franchisee Defendants); and each group moves to dismiss

the Plaintiffs' claims on different grounds. The Court will proceed numerically with

each count of the Plaintiffs' SAC and resolve the Defendants' arguments in turn.

### Count I-FLSA (Liautaud)

Liautaud asserts that he does not qualify as an "employer" under the FLSA and,

therefore, the Plaintiffs cannot establish their FLSA claim. The Plaintiffs' allege that

they were misclassified as exempt employees under the FLSA and were not

compensated for their overtime work. The FLSA sets the standard workweek at 40

hours and requires *employers* to pay their non-exempt employees one and one-half

times their regular rate of pay for any time worked in excess of 40 hours. 29 U.S.C. §

207(a)(1). The FLSA defines "employer" to include "any person acting directly or

indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. §

203(d). Courts assess the "economic reality" of the working relationship to determine

whether an individual is an employer under the FLSA. *See Villareal v. El Chile, Inc.*,

776 F. Supp. 2d 778, 785 (N.D. Ill. 2011) (quoting *Goldberg v. Whitaker House Co-*

*op., Inc.*, 366 U.S. 28, 33 (1961)); *see also Riordan v. Kempiners*, 831 F.2d 690, 694

(7th Cir. 1987) (noting that "employer" is defined broadly in the FLSA to includes

individuals with supervisory authority who are responsible for the alleged violation in

whole or in part).

"[F]or a joint-employer relationship to exist, each alleged employer must

exercise control over the working conditions of the employee, although the ultimate

determination will vary depending on the specific facts of each case." *Moldenhauer v.*

*Tazewell-Pekin Consol. Commc'ns Ctr.*, 536 F.3d 640, 643 (7th Cir. 2008) (applying

FLSA standard for joint-employer to a claim under the Family and Medical Leave

Act). In *Moldenhauer*, the Seventh Circuit affirmed the district court's grant of

summary judgment, where the district court determined there was a lack of a joint-

employer liability when the alleged joint-employers merely contracted for services

with the primary employer and exercised no control over the work or working

conditions of the employee. *Id.* at 645. The court noted that other circuits which

"have addressed the [joint-employer] issue have looked at the employment situation

as a whole, analyzing the amount of control the alleged joint employer had over

employees," and explained that the following factors are relevant, but not exhaustive,

to the inquiry: (1) the power to hire and fire employees; (2) supervision and control of employee work schedules or conditions of payment; (3) determination of rate and method of payment; and (4) maintenance of employment records. *Id.* at 644. The *Moldenhauer* court went on to "hold generally that for a joint-employer relationship to exist, each alleged employer must exercise control over the working conditions of the employee, although the ultimate determination will vary depending on the specific facts of each case." *Id.* Liautaud contends that the Plaintiffs have failed to adequately plead the first, second, and third factors of a joint-employer relationship. The Plaintiffs are adamant that they have pled a sufficient joint-employer relationship to surmount Liautaud's motion to dismiss.

Liautaud is the CEO of Jimmy John's and is perched atop the Jimmy John's Sandwich Shops' corporate structure which consists of hundreds of franchised stores throughout the country. Despite Liautaud's isolated position, the Plaintiffs contend that he exerts the formal and functional control of an employer, evidenced in his ability to hire and fire employees. The Plaintiffs initially allude to Liautaud's involvement in the selection of employees, which is regulated by Liautaud's highly detailed and strictly enforced operational policies established for each franchise store. However, Liautaud's involvement in the hiring of employees is merely in the context of providing guidance in the type of employees Jimmy John's Sandwich Shops seek out to further their brand. The Plaintiffs do not allege that Liautaud is personally involved in the hiring decisions of individual employees seeking employment at any

Jimmy John's Sandwich Shops. Moreover, the Plaintiffs have pled that in-store general managers, employed by franchisees, are responsible for making hiring decisions, not Liautaud.

Furthermore, the Plaintiffs contend that Liautaud has the ability to terminate an employee. The Plaintiffs submit that Liautaud has the absolute right to terminate a franchisee relationship, therefore allowing him to terminate an employee that works for the franchisee. Liautaud's ability to exercise a contractual right in terminating a franchise, provided in the Jimmy John's Franchise Agreement, does not amount to Liautaud having the power to terminate a franchisee's employees. *See Burdi v. Uniglobe Cihak Travel, Inc.*, 932 F. Supp. 1044, 1049, n. 1 (N.D. Ill. 1996) ("Although a franchisor's authority to terminate the franchise for cause might seem to give it the power to bring about a cessation of sexual harassment . . . [termination] would simply be buying a breach of contract lawsuit by the franchisee.").

Second, the Plaintiffs assert that Liautaud supervised and controlled the Plaintiffs' conditions of employment because Liautaud exerted control over all aspects of the franchisee business operation. The Plaintiffs have seemingly exhausted every synonym for the term "control" when alleging Liautaud's influence over Jimmy John's Sandwich Shop franchisees. However, the Plaintiffs have not specifically pled distinct facts that firmly establish Liautaud's control over employees' work schedules. Instead, the Plaintiffs rely on Liautaud's management approach, which involves ensuring uniformity in a customer's dining experience. Thus, the Plaintiffs have not

demonstrated that Liautaud is involved in the supervision and control over employees' work schedules.

Under the third and final challenged factor, the Plaintiffs contend that Liautaud determined the rate and method of payment by mandating the implementation of payroll policies that amount to "systematic wage theft" of Jimmy John's Sandwich Shop employees. Again, the Plaintiffs have failed to identify any specific actions attributed solely to Liautaud that suggest he determined the rate and method of payment. The Plaintiffs have failed to establish that the joint-employer factors favor Liautaud being considered an employer under the FLSA.

Although the aforementioned joint-employer "factors are certainly relevant in deciding whether an employer-employee relationship exists, it would be foolhardy to suggest that these are the only relevant factors, or even the most important." *Moldenhauer*, 536 F.3d at 644. Perhaps, the most significant factor is Liautaud's position as CEO. The Plaintiffs almost exclusively rely on Liautaud's comprehensive business acumen to establish a joint-employer relationship. However, tethering Liautaud's actions done in the context of quality control and brand uniformity does not manifest an employer-employee relationship. *Braucher ex rel. Braucher v. Swagat Grp., LLC*, 702 F. Supp. 2d 1032, 1043 (C.D. Ill. 2010) (control which is necessary "to maintain the required level of quality associated with the franchised brand," does not subject a franchisor to additional duties). The company standards established by Liautaud equate to no more than mandating a strict adherence to his

business plan. Unequivocal compliance to his uniform standards means brand recognition and further growth. A franchisor, which may have thousands of stores located throughout the country, often imposes comprehensive and meticulous standards to protect its brand and operate the franchises in a uniform way in order to maintain a consistent customer experience. *See Patterson v. Domino's Pizza, LLC*, 60 Cal. 4th 474, 478 (Cal. 2014). Liautaud's hands on approach emphasizing uniformity and compliance does not support a determination that Liautaud is a joint-employer under the FLSA. Accordingly, the Court grants Liautaud's motion to dismiss Count I of the Plaintiffs' SAC.

### Count II –IMWL (Jimmy John's and Liautaud)

The Plaintiffs, individually and on behalf of a putative nationwide class, allege that Jimmy John's and Liautaud violated the IMWL by improperly classifying the Plaintiffs as "exempt" employees to avoid paying them for the time worked in excess of 40 hours a week. Jimmy John's and Liautaud both move to dismiss Count II on separate grounds. The Court will resolve each of the Jimmy John's and Liautaud's arguments in turn.

### A. Jimmy John's Corp.

Jimmy John's argues that the IMWL does not apply to the proposed nationwide class of ASMs employed outside of Illinois. Before proceeding to the Jimmy John's main contention involving the nationwide class of putative Plaintiffs, we must first determine the viability of Plaintiffs' individual IMWL claims.

Jimmy John's asserts that the Plaintiffs' individual claims are unconstitutional because the claims are presented in conjunction with their proposed nationwide IMWL putative class claim. However, the SAC clearly delineates that the "Plaintiffs each bring [an] individual claim for violations of the IMWL." The Plaintiffs have sufficiently alleged an individual claim under the IMWL and they do not tie the viability of their individual claims to their putative class claims brought pursuant to the IMWL. The Court denies Jimmy John's motion to dismiss the individual Plaintiffs' IMWL claims contained in Count II. However, this does not end our inquiry. Jimmy John's main contention involves the Plaintiffs' class claims that seek to impose the IMWL on a nationwide class of putative plaintiffs. Jimmy John's moves to strike the Plaintiffs' class claims.

Courts in the Northern District of Illinois rely on Rule 23 to evaluate motions to strike class allegations. *See, e.g., Buonomo v. Optimum Outcomes, Inc.*, 301 F.R.D. 292, 295 (N.D. Ill. 2014); *Hill v. Wells Fargo Bank, N.A.*, 946 F. Supp. 2d 817, 829–33 (N.D. Ill. 2013); *Bohn v. Boiron, Inc.*, 11 C 8704, 2013 WL 3975126, at *5 (N.D. Ill. Aug. 1, 2013); *Valentine v. WideOpen West Fin., LLC*, 288 F.R.D. 407, 414 (N.D. Ill. 2012);

Rule 23(c)(1)(A) directs that "[a]t an early practicable time after a person sues or is sued as a class representative, the court must determine by order whether to certify the action as a class action." Fed. R. Civ. P. 23(c)(1)(A). Although "[m]ost often it will not be 'practicable' for the court to do that at the pleading stage, . . .

sometimes the complaint will make it clear that class certification is inappropriate."
*Hill*, 946 F. Supp. 2d at 829 (citing *General Tel. Co. of Sw. v. Falcon*, 457 U.S. 147,
160 (1982)); *see also Kasalo v. Harris & Harris, Ltd.*, 656 F.3d 557, 563 (7th Cir.
2011). In those situations, a court may determine that class certification is
inappropriate before the parties conduct class discovery. *See Bohn*, 2013 WL
3975126, at \*5. If the plaintiff's class allegations are facially and inherently deficient
"a motion to strike class allegations . . . can be an appropriate device to determine
whether [the] case will proceed as a class action." *See Bohn*, 2013 WL 3975126, at
\*5; *Wright v. Family Dollar, Inc.*, 10 C 4410, 2010 WL 4962838, at \*1 (N.D. Ill. Nov.
30, 2010).

If, however, the dispute concerning class certification is factual in nature and
"discovery is needed to determine whether a class should be certified," a motion to
strike the class allegations at the pleading stage is premature. *See Wright*, 2010 WL
4962838, at \*1; *Santiago v. RadioShack Corp.*, 11 C 3508, 2012 WL 934524, at \*4
(N.D. Ill. Feb. 10, 2012). "In this district, judges have generally addressed class
certification at the pleading stage only when the class allegations are facially and
inherently deficient." *Machowicz v. Kaspersky Lab, Inc.,* 14 C 1394, 2014 WL
4683258, at \*5 (N.D. Ill. Sept. 19, 2014)

The Plaintiffs' SAC seeks to include "[a]ll individuals nationwide, who are
currently or were formerly employed as salaried ASMs at any Jimmy John's
Sandwich Shop, and who have not been paid all wages owed to them . . . pursuant to

the IMWL . . . ." Jimmy John's maintains that the IMWL cannot be applied to a nationwide class and therefore the class allegations must be stricken.

"When a statute . . . is silent as to extraterritorial effect, there is a presumption that it has none." *Graham v. General U.S. Grant Post No. 2665*, *V.F.W.*, 248 N.E.2d 657, 660 (Ill. 1969). Illinois state courts and the Seventh Circuit have determined that Illinois worker protection statutes do not have any extraterritorial effect, even in instances when the contract was made in Illinois or the employers were based in Illinois. *See Mahoney v. Indus. Comm'n*, 843 N.E.2d 317, 321 (Ill. 2006) (until the legislature amended the Workers' Compensation Act to "expressly provid[e] for the Act's application to injuries occurring outside the state when the contract for hire is made in Illinois," it did not apply to workers hired in Illinois who were injured working in another state); *Glass v. Kemper Co.*, 133 F.3d 999, 1000 (7th Cir. 1998) (holding that an Illinois worker protection statute did not apply to claims of workers outside Illinois even though his employer's principal place of business was Illinois because the "evident purpose" of the "Act is to protect employees *in Illinois* from being stiffed by their employers") (emphasis in original).

The Plaintiffs take a novel approach to circumvent Jimmy John's contention that the IMWL cannot be applied to employees outside of Illinois. In the Plaintiffs' response brief, they attempt to amend their SAC by changing the scope of their putative class claim. The Plaintiffs' class claims morph from a nationwide class alleged in the SAC to a class of ASMs exclusively located in Illinois. The Plaintiffs

assert that this "on the fly" amendment cures their IMWL pleading deficiency. However, the Plaintiffs ad hoc amendment cannot stand in light of the clear rule that a plaintiff may not amend their complaint in their response brief. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.*, 631 F.3d 436, 448 (7th Cir. 2011).

We now focus on the language of the IMWL to gauge it applicable limits. The IMWL states that it applies to, "places of employment in the State of Illinois" and that it is intended to relieve "burdens of the State" and "an unnecessary burden on taxpayers in the State." 820 ILCS 105/2. More importantly, the IMWL is absolutely devoid of any indication that the law can or should be applied to workers outside of Illinois. In the absence of explicit legislative intent indicating the permissibility of the IMWL to apply to out of state employees, the Plaintiffs' SAC alleging a putative nationwide class is facially and inherently deficient and cannot stand. Jimmy John's motion to strike the Plaintiffs' putative nationwide class claim is granted. In summary, the Plaintiffs may proceed with their individual claims against Jimmy John's under the IMWL, but cannot maintain their IMWL nationwide class claim against Jimmy John's.

### B. Liautaud

Liautaud mirrors his previous contention raised in Count I concerning his standing as a joint-employer under the FLSA and continues that the Plaintiffs have failed to establish a joint-employer relationship under the IMWL. The IMWL parallels the FLSA and the same analysis generally applies to both statutes. *Haynes v.*

*Tru-Green Corp.*, 507 N.E.2d 945, 951 (Ill. App. Ct. 1987). In spite of the overlap

between statutes, in Illinois "[t]he test for the existence of joint employers is whether

two or more employers exert significant control over the same employee's-where

from the evidence it can be shown that they share or co-determine those matters

governing essential terms and conditions of employment. *Vill. of Winfield v. Ill. State*

*Labor Relations Bd.*, 678 N.E.2d 1041, 1044 (Ill. 1997). Some of the factors relevant

to determining a joint-employer relationship include "the putative joint employer's

role in hiring and firing: promotions and demotions; setting wages, work hours, and

other terms and conditions of employment; discipline; and actual day-to-day

supervision and direction of employees on the job." *Id*. The Court previously

considered the relevant factors for a joint-employer relationship under the FLSA in

Count I, which the IMWL emulates. As explained above, the Plaintiffs failed to

establish that Liautaud is a joint-employer under the FLSA and, therefore, their claim

is similarly insufficient under the IMWL. Liautaud does not exert significant control

over the Plaintiffs to qualify as a joint-employer under the IMWL. Liautaud's motion

to dismiss Count II of the Plaintiffs' SAC is granted.

### Count III and Count V- FLSA (Franchisee Defendants)

Brunner asserts a FLSA claim against the JJ Fort Group Defendants in Count

III. Turowski also asserts a FLSA claim against the Severson Defendants in Count V.

The Franchisee Defendants move to dismiss both the Plaintiffs' claims in Count III

and Count V due to their failure to plead specifics. Because the Franchisee

Defendants move to dismiss both of the Plaintiffs' claims against them for the same reasons, the Court will resolve the Franchisee Defendants' objections together. At the outset, the Court notes that the Franchisee Defendants initially filed their motion to dismiss the Plaintiffs' First Amended Complaint, which was mooted by the Plaintiffs' SAC. The Franchisee Defendants filed another motion to dismiss the Plaintiffs' SAC and oddly adopted some of the legal arguments contained in their first dismissal motions and discarded other arguments to adapt to the changed complexity of the SAC. Although the Franchisee Defendants specifically enunciated their intent to contest Count III and Count V, the SAC remedied the Franchisee Defendants' objections voiced in their first motions to dismiss. In the interest of thoroughness, the Court will resolve the Franchisee Defendants' objections which were adopted in their motion to dismiss the Plaintiffs' SAC. The Franchisee Defendants argue that the Plaintiffs have failed to establish their FLSA claims due to: (1) their failure to identify the particular week which they worked over 40 hours and did not receive overtime; (2) their failure to sufficiently plead the compensation they received; and (3) the SAC establishing the validity of their exempt classification under the FLSA.

Initially, we take up the Franchisee Defendants' first contention that the Plaintiffs have failed to specify the week they worked over 40 hours without overtime compensation. Brunner alleges in the SAC that she has, and continues, to work at least 50 hours every week. Turowski also alleges that she worked at least 50 hours every week. In contesting the Plaintiffs lack of specificity in pleading their work

week, the Franchisee Defendants rely on a variety of circuit court cases which all affirmed the district court's dismissal of an FLSA claim based on inadequate pleadings. *Davis v. Abington Mem. Hosp.*, 765 F.3d 236 (2d Cir. 2014); *DeJesus v. HF Mgmt. Servs., LLC*, 726 F.3d 85 (2d Cir. 2013); *Nakahata v. New York-Presbyterian Healthcare Sys., Inc.*, 723 F.3d 192 (2d Cir. 2013); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106 (2d Cir. 2013); *Pruell v. Caritas Christi*, 678 F.3d 19 (1st Cir. 2012).

The cases relied on by the Franchisee Defendants are discernible. In *Landers*, the plaintiff pled that he worked over forty hours a week without being paid overtime. The plaintiff's general allegations concerning his propensity to work over 40 hours a week was not specific enough under the FLSA. *See Landers*, 771 F.3d at 640. The remaining cases involved general, non-specific allegations stating that the plaintiffs regularly worked more than forty hours per week without overtime compensation. None of the cases supplied provides any allegation specifically identifying *any* particular work week when the plaintiff worked more than forty hours a week. Here, both the Plaintiffs have alleged that they worked over forty hours *every* week. Presumably, the Plaintiffs have always worked over 40 hours a week, every week they worked at their respective Jimmy John's Sandwich Shop. Thus, the Plaintiffs have sufficiently pled the week that serves as the basis for their FLSA claims.

The Franchisee Defendants also contest the Plaintiffs failure to state the compensation they received. Brunner has alleged that she is paid a salary of $500 per

week.  Turowski, when working at the Gurnee, Illinois Jimmy John's Sandwich Shop, was paid a salary of $500 per week.  The Plaintiffs have sufficiently pled the compensation they received per week.

Finally, the Franchisee Defendants assert that the Plaintiffs' SAC establishes the validity of their exempt classification under the FLSA, which warrants dismissal of their claims.  The FLSA includes an exemption for any employee "employed in a bona fide executive, administrative or professional capacity." 29 U.S.C. § 213(a)(1). The burden falls on the employer to prove that an employee is exempt under FLSA, *see Schaefer–LaRose v. Eli Lilly & Co.*, 679 F.3d 560, 574 (7th Cir. 2012) and such exemptions are to be narrowly construed against the employer seeking the exemption. *Yi v. Sterling Collision Centers, Inc.*, 480 F.3d 505 (7th Cir. 2007).

The Franchisee Defendants assert that the Plaintiffs have pled in their SAC that they perform work which falls under the executive and administrative exceptions to the FLSA.  To establish that an employee falls within the executive work exemption, the employer must establish that the employee earns at least $455 per week, that her primary duty is management, that she directs the work of two or more other employees, and that she has the authority to hire or fire employees or make recommendations on their hiring, firing, or discipline. 29 C.F.R. § 541.100(a).  The Plaintiffs have pled that they make over $500 per week, which satisfies the first inquiry of the executive exemption.  In gauging the amount of time employees spend performing executive tasks a fact intensive inquiry must be undertaken in order to

evaluate "relative importance of the exempt duties as compared with other types of duties," "the amount of time spent performing exempt work," and "the employee's relative freedom from direct supervision." 29 C.F.R. § 541.700(a). Supervising other employees, setting their schedules, and being involved in the hiring and disciplining of employees are all duties relevant to whether an employee engages in management duties and, in turn, whether the employee falls under the executive exemption. *See* 29 C.F.R. § 541.102. The Plaintiffs have stated that they spend more than 90% of their time as ASMs performing non-exempt duties. The Plaintiffs enumerate various manual duties that they spend the majority of their time performing including: (1) making sandwiches; (2) stocking supplies and shelves; and (3) cleaning (vacuuming, dusting and sweeping). The duties pled by the Plaintiffs are vastly different from the executive responsibilities covered under the FLSA executive exemption. *See* 29 C.F.R. § 541.102 ("management" includes activities such as interviewing and selecting new employees, training employees, setting and adjusting their work schedules and pay, directing their work, and disciplining employees). At this juncture, the Court cannot make the necessary factual inquiry into the job responsibilities of the Plaintiffs because we are merely in the pleading stage of the proceedings. In the absence of discovery necessary to flesh out relevant facts, the Franchisee Defendants have not carried their burden. The Franchisee Defendants have failed to currently establish that the Plaintiffs fall under the executive employee exemption of the FLSA.

Furthermore, "employee[s] employed in a bona fide administrative capacity" under § 213(a)(1) of the FLSA shall mean any employee: (1) compensated on a salary or fee basis at a rate of not less than $455 per week (2) whose primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers; and (3) whose primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.200(a). Administrative employees work in an office communicating with customers and doing paperwork. *Shaw v. Prentice Hall Computer Pub., Inc.,* 151 F.3d 640, 644 (7th Cir. 1998). *Id.* Administrative tasks constitute an employee's primary duty if the tasks represent "the major part, or over 50 percent of the employee's time." 29 C.F.R. § 541.103.

As above, the Plaintiffs have satisfied the initial administrative exemption inquiry involving their weekly compensation exceeding $455 per week. However, the manual tasks set forth above, which the Plaintiffs spend over 90% of their work day performing, do not amount to the job duties typically performed by an administrative employee under the FLSA. The Franchisee Defendants have not established that the Plaintiffs fall under the executive or administrative employee exemptions to the FLSA.

Accordingly, the Plaintiffs have sufficiently alleged their FLSA claims in Count III and Count V. The Franchisee Defendants' motion to dismiss Count III and Count V is denied.

**Count VII- Declaratory and Injunctive Relief (Defendants)**

The Defendants levy numerous arguments advocating for the dismissal of Count VII of the Plaintiffs' SAC. The Defendants contend that the Plaintiffs lack standing to pursue declaratory or injunctive relief based on the Confidentiality and Non-Competition Agreements. The Defendants also assert that the Plaintiffs' claims cannot support a nationwide class. In the alternative, Jimmy John's and Liautaud move for the Court to strike Count VII's putative class claims.

In Count VII, the Plaintiffs move for declaratory and injunctive relief to determine the "legal interests," "validity," and "enforceability" of the Confidentiality and Non-Competition Agreements signed by the Plaintiffs. Under the Declaratory Judgment Act, a federal court "may declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy." 28 U.S.C. § 2201(a). This requirement originates from the "cases or controversy" requirement in Article III of the U.S. Constitution. U.S. Const., Art. III, § 2. To satisfy this requirement, the party seeking relief must show that he has standing and that the alleged controversy is ripe for judicial determination. *National Park Hospitality Ass'n v. Department of Interior*, 538 U.S. 803, 808 (2003). The Article III standing requirement "applies with the same force to actions for declaratory judgments as that with which it applies to actions seeking traditional coercive relief." *Vickers v. Henry Cnty. Sav. & Loan Ass'n.*, 827 F.2d 228, 230 (7th Cir. 1987). The judicable controversy must have existed at the time the complaint was filed. *See Super*

*Prods. Corp. v. DP Way Corp.*, 546 F.2d 748, 752 (7th Cir. 1976). A party seeking a declaratory judgment has the burden of establishing the existence of an actual case or controversy. *Cardinal Chemical Company v. Morton Intern., Inc.*, 508 U.S. 83, 95 (1993).

The Seventh Circuit has not addressed whether a claim for declaratory relief is judiciable in the context of non-compete provisions. However, a Seventh Circuit case addressing whether an actual controversy existed in a patent infringement case offers informative guidance. In *International Harvester Company v. Deere & Company*, 623 F.2d 1207 (7th Cir.1980), the plaintiff initiated suit seeking a declaratory judgment that its product did not infringe the defendant's patent. *Id.* at 1210. The plaintiff's complaint in *International Harvester* did not allege that the defendant threatened a patent infringement suit, or that the defendant even accused the plaintiff of patent infringement. Nor did the plaintiff allege, in any detail, the preparations it was making to produce its product. As a result, the Seventh Circuit held that the plaintiff's claim for declaratory relief was not a judicable controversy. *Id.* at 1217. The court reasoned that the defendant's conduct did not create a "reasonable apprehension" on the plaintiff's part that it would face a patent infringement suit, nor had the plaintiff "engaged in preparations" for production of the product at issue. *Id.* at 1210.

While *International Harvester* involved declaratory relief stemming from a patent infringement issue, two principles can be taken from the court's holding that

are applicable here.  First, the Plaintiffs must have a "reasonable apprehension" that the Defendants are going to file a lawsuit against them for violating the Non-Competition Agreement.  Second, the Plaintiffs must allege that they were preparing to engage or had engaged in conduct that would compete with the Defendants.

The Plaintiffs maintain that they have sufficiently pled the necessary facts to establish their Article III standing.  Brunner currently works at a franchised Jimmy John's Sandwich Shop owned by the JJ Fort Group Defendants in Downers Grove, Illinois.  Brunner signed the Confidentiality and Non-Competition Agreements in conjunction with the start of her employment.  Brunner alleges that she "does not understand the scope of her obligations under the confidentiality provisions of the Confidentiality and Non-Competition Agreement . . . and is reasonably apprehensive that her prior and ongoing/current disclosures of certain information could constitute breach . . . ."  Brunner's fear stems from her knowledge of a past lawsuit in which Liautaud sued his cousin to enforce the Confidentiality and Non-Competition Agreements.  In gauging Brunner's reasonable apprehension of litigation, it is striking that her apprehension is based on her confusion about the parameters of the Confidentiality and Non-Competition Agreements.  She does not disclose whether a clarification of the Confidentiality and Non-Competition Agreements would continue to subject her to a fear of litigation, or if a better understanding would end her bewildered fear of litigation.  Additionally, Brunner vaguely asserts that some amorphous disclosure of "certain information" could also make her subject to

26

litigation for a violation of the Confidentiality Agreement. Brunner fails to specify

what information she has and continues to disclose, which would subject her to legal

peril. The Court finds that Brunner's allegations concerning the information she

discloses, which has the possibility to infringe on the Confidentiality Agreement, is

far too tenuous and broad to constitute a reasonable apprehension of litigation

stemming from Brunner's alleged violation.

Furthermore, Brunner's confusion about the terms of the Non-Competition

Agreement are manifested in her apprehension about applying to other businesses,

which may be prohibited under the terms of the Non-Competition Agreement. Again,

we are faced with Brunner's misunderstanding of what she is bound by. Brunner's

apprehension has kept her from applying to other food service positions, which may

fall under the Non-Competition restrictions. Not only does Brunner fail to specify if

she applied, was interviewed, or was offered a position, she is also unsure if any of the

sought after food service establishments are covered under the terms of the Non-

Competition Agreement. Brunner's litany of possibilities does not amount to a

violation of the terms of the Confidentiality or Non-Competition Agreement.

Therefore, Brunner has not alleged a sufficient injury and does not have standing to

pursue Count VII.

Turowski formerly worked at a franchised Jimmy John's Sandwich Shop

owned by the Severson Defendants in Libertyville, Illinois. Turowski signed the

Confidentiality and Non-Competition Agreements when beginning her employment.

While at work at the Libertyville Jimmy John's Sandwich Shop, she overheard a telephone conversation between her area manager and another manager discussing a former employee at the Libertyville location who had applied for employment and/or was working at a different Jimmy John's Sandwich Shop. Turowski heard her manager disclose that the former employee was "contract[ed] with us" and was not allowed to work at the new Jimmy John's Sandwich Shop under the terms of the Confidentiality and Non-Competition Agreement. Turowski believes that the employee was terminated from his/her new position.

After Turowski left Jimmy John's Sandwich Shops, she obtained employment with BBQ'd Productions in Third Lake, Illinois. BBQ'd Productions is a restaurant located within the prohibited three-mile radius of the Libertyville Jimmy John's Sandwich Shop. Turowski is uncertain whether BBQ'd Productions is a "competitor" under the terms of the Non-Competition Agreement. If so, it would have required her to disclose her position to the Defendants within a prescribed time period. Turowski failed to report her employment at BBQ'd Productions. Although BBQ'd Productions is a restaurant, Turowski is not aware if it derives 10% or more of its revenue from sandwiches. Turowski is apprehensive that she violated the Non-Competition Agreement and could be subject to suit for her violation of the contractual agreement.

Turowski's claim suffers from the same deficiencies enumerated above in our discussion of Brunner's claim. Turowski's claim is based on numerous factors which

must align succinctly to rise to the level of a violation under the Non-Competition

Agreement. Turowski does not know if BBQ'd Productions is a restaurant prohibited

under the terms of the Non-Competition Agreement. Therefore, the unworkable

premise for her claim in Count VII is based on her lack of knowledge concerning the

propriety of her former employment. Compounding the problem, Turowski sought

employment and proceeded to work at BBQ'd Productions without any evident

apprehension of the Defendants seeking to enforce the Non-Competition Agreement.

Turowski worked at BBQ'd Productions for an undefined time period without the

slightest indication that the Defendants opposed her new position. Now that Turowski

has left her employment at BBQ'd Productions, her assertion that she is struck with

the fear of an impending lawsuit is not reasonable. The chain of occurrences which

must come to fruition for Turowski to be imperiled by the Non-Competition

Agreement does not amount to her possessing a reasonable fear of litigation.

Therefore, Turowski has not alleged a sufficient injury and does not have standing to

pursue Count VII.

Assuming arguendo that the Plaintiffs had alleged a sufficient injury to confer

standing, they still cannot overcome the Franchisee Defendants and Jimmy John's

intention not to enforce any breach of the Confidentiality and Non-Competition

Agreements. Jimmy John's and the Franchisee Defendants have submitted two

affidavits attesting to their intention not to enforce the Confidentiality and Non-

Competition Agreements against the Plaintiffs "in the future." The general rule is that

voluntary cessation of a challenged practice rarely moots a federal case, *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U.S. 167, 189 (2000), because "a party should not be able to evade judicial review, or to defeat a judgment, by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n. 1 (2001) (citations omitted). With this principle in mind, the Supreme Court has announced a stringent standard for determining whether an issue has been rendered moot by the defendant's voluntary conduct: "A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. 199, 203 (1968).

The Plaintiffs seek declaratory and injunctive relief prohibiting the enforcement of the Confidentiality and Non-Competition Agreements, based on their invalidity. However, the SAC does not allege that the Confidentiality or Non-Competition Agreements were enforced against the Plaintiffs at any juncture in the past. The lack of any prior enforcement diminishes the Plaintiffs' argument that the wrongful conduct will occur again because no injury occurred to begin with. In submitting the affidavits attesting to their intention not to enforce any breach of the Confidentiality and Non-Competition Agreements, Jimmy John's and the Franchisee Defendants have satisfied their burden of establishing that the challenged conduct will not "reappear in the future." *United States v. Concentrated Phosphate Export Assn.*, 393 U.S. at 203; *Khan v. K2 Pure Solutions, LP*, 12 C 5525, 2013 WL 4734006, *4 (N.D. Cal. Sept. 3,

2013) (relying on executive's declaration that defendant "will not pursue any claims to enforce the non-compete provisions" to find that "the likelihood that [the defendant] would reverse course . . . is far too speculative and remote to sustain standing under Article III").

The Plaintiffs have failed to sufficiently plead a cognizable injury to maintain standing under Count VII. The Defendants' motion to dismiss Count VII of the Plaintiffs' SAC is granted.

## CONCLUSION

In summary, Jimmy John's motion to dismiss Count II is denied. Jimmy John's motion to dismiss Count VII is granted. Liautaud's motion to dismiss Count I, Count II and Count VII is granted. The Franchisee Defendants' motion to dismiss Count III and V is denied. The Franchisee Defendants' motion to dismiss Count VII is granted. Jimmy John's motion to strike the class allegations in Count II is granted.

Date: 4/8/2015

_____
Charles P. Kocoras
United States District Court Judge