## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| EMILY BRUNNER and CAITLIN TUROWSKI, individually and on behalf of all persons similarly situated, as Class/Collective representatives, | ) ) ) ) | Case No.: 14-cv-05509 |
| | ) | |
| Plaintiffs, | ) | Hon. Judge Kocoras |
| | ) | |
| v. | ) | Magistrate Judge Cole |
| | ) | |
| JIMMY JOHN'S, LLC, | ) | Jury Trial Demanded on All Counts |
| JIMMY JOHN'S ENTERPRISES, LLC, | ) | |
| JS FORT GROUP, INC., | ) | |
| JJ SEVERSON AFFILIATES FIVE, INC., | ) | |
| JJ SEVERSON AFFILIATES, INC., | ) | |
| JIMMY JOHN'S FRANCHISE, LLC, | ) | |
| JEFFREY S. FORT, | ) | |
| TODD SEVERSON, and | ) | |
| BROOKE SEVERSON, | ) | |
| | ) | |
| Defendants. | ) | |

_____

| | | |
|---|---|---|
| ALEXANDER WHITON, individually and on behalf of all persons similarly situated, as Class/Collective representative, | ) ) ) ) | Case No.: 15-cv-01681 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JIMMY JOHN'S, LLC, | ) | Jury Trial Demanded on All Counts |
| JIMMY JOHN'S ENTERPRISES, LLC, | ) | |
| JJ SEVERSON AFFILIATES FIVE, INC., | ) | |
| JJ SEVERSON AFFILIATES, INC., | ) | |
| JIMMY JOHN'S FRANCHISE, LLC, | ) | |
| TODD SEVERSON, and | ) | |
| BROOKE SEVERSON, | ) | |
| | ) | |
| Defendants. | ) | |

## AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

EMILY BRUNNER ("Plaintiff BRUNNER"), CAITLIN TUROWSKI ("Plaintiff TUROWSKI") and ALEXANDER WHITON ("Plaintiff WHITON") (hereinafter collectively referred to as "Plaintiffs"), individually and on behalf of all others similarly situated, by and through their undersigned counsels of record, upon personal knowledge as to those allegations in which they so possess and upon information and belief as to all other matters, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") and the Illinois Minimum Wage Law, 820 ILCS 105/1 *et seq*. ("IMWL"), bring these causes of action against Defendants, JIMMY JOHN'S, LLC, JIMMY JOHN'S FRANCHISE, LLC and JIMMY JOHN'S ENNTERPRISES, LLC (hereinafter collectively referred to as "JJF"), JS FORT GROUP, INC. ("JS FORT"), JEFFREY S. FORT ("FORT"), JJ SEVERSON AFFILIATES FIVE, INC. and JJ SEVERSON AFFILIATES, INC. (hereinafter referred to collectively as "JJ SEVERSON"), TODD SEVERSON and BROOKE SEVERSON (herein collectively referred to as "Defendants"), and for their Amended Consolidated Complaint ("ACC"), state the following:

## I.    NATURE OF THE CASE

1.    Plaintiffs, individually and on behalf of classes of similarly situated current and former employees of Defendants, bring this action to redress improper payment of wages and other compensation arising out of their respective employment with one or more of the Defendants.

2.    Jimmy John's Gourmet Sandwiches is a fast-food sandwich company with over 2,000 nearly identical, standardized sandwich shops ("JIMMY JOHN'S® Sandwich Shops") located throughout the United States (in 44 States and the District of Columbia).  The JIMMY JOHN'S® Sandwich Shop empire is mushrooming with approximately 200 new JIMMY

2

JOHN'S® Sandwich Shops being opened each month. Defendant JJF reported approximately 1.3 billion dollars in revenue in 2013 and Defendant JJF is valued at over two billion dollars. Defendants currently employ over 80,000 people according to the official company website, and have employed hundreds of thousands of people during the relevant time period.

3.      Plaintiffs are "freaky fast" food employees of Defendants who are characterized on Defendants' website as employees who: do "*extraordinary things*," work exceptionally hard and "*want to be the best*," demonstrate loyalty and commitment by being employees that "*don't mind doing whatever it takes to get the job done*" and dutifully  follow  Defendant JJF's rules for its employees such as, "*Do it now – make it happen – be a go-getter, no excuses*," and the personal responsibility rule, "*Don't Pass the Buck*" and even Defendant JJF's purported golden rule to "*Make a deal, keep a deal*." https://www.jimmyjohns.com/company/.

4.      Plaintiffs were forced to bring this action because, despite record profits and explosive growth, Defendants chose to intentionally disregard the employment rights of the very people that are necessary to achieve their growth and profit—their employees.  Defendants simply do not "*make a deal, keep a deal*" when they require employees to work hard, "*Do it now – make it happen – be a go-getter, no excuses*," but refuse to pay them a fair and legal wage.

5.      Plaintiffs are sending a message to Defendants that "*don't mind doing whatever it takes to get the job done*" does <u>not</u> mean employees "don't mind" being denied fair pay for fair work, and does not mean employees must suffer unconscionable wage theft that drops their effective rate of pay below minimum wage and denies them overtime pay (thus, ensuring they don't have a "*buck to pass*"). Plaintiffs, individually and in their representative capacities, pursuant to Fed. R. Civ. P. 23(c) and 29 U.S.C. § 216(b), bring the following claims:

a.      **<u>First Claim:</u>** Violations of the FLSA brought by Plaintiffs, individually

3

and on behalf of "**The Nationwide FLSA Collective**" (defined herein), against Defendant JJF;

    b.    <u>**Second Claim:**</u> Violations of the IMWL, brought by Plaintiffs, individually and on behalf of "**The Illinois IMWL Class**" (defined herein), against Defendant JJF;

    c.    <u>**Third Claim:**</u> Violations of the FLSA, brought by Plaintiffs BRUNNER, TUROWSKI and WHITON, individually and on behalf of "**The Franchisee Collective**" (defined herein), against Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of "**The FLSA Franchisee Defendant Class**" (defined herein); and

    d.    <u>**Fourth Claim:**</u> Violations of the IMWL, brought by Plaintiffs BRUNNER, TUROWSKI and WHITON, individually and on behalf of "**The Illinois Franchisee IMWL Class**" (defined herein), against Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of "**The IMWL Franchisee Defendant Class**" (defined herein);

6.    All claims brought herein are pled in the alternative to the extent necessitated for proper construction under the law.

## II.    <u>INTRODUCTION</u>

7.    Defendant JJF was founded in 1983, by then-19-year-old James John Liautaud ("Liautaud"), but his business systems and sandwich savvy were not spectacular enough to grow his company beyond a small number of initial stores. He needed more money to open more

4

stores.

8.      In 1993, 10 years after founding Defendant JJF, Liautaud decided to solve his financing issues by exercising his control over Defendant JJF and using it to construct an illusory franchise business, when in fact his JIMMY JOHN'S® Sandwich Shop franchise system was nothing more than a creatively packaged system designed to: (1) finance the development of Liautaud's JIMMY JOHN'S® Sandwich Shop empire by convincing Operator/Franchisees to finance JIMMY JOHN'S® Sandwich Shops and then perform all the typical duties that a general manager would have performed for Defendant JJF; and (2) insulate Defendant JJF from legal liability by claiming "Franchisor" immunity, while still maintaining substantial and nearly complete control and conducting business as if all 2,000 stores were their wholly-owned operations.

9.      By micro-managing every aspect of his JIMMY JOHN'S® Sandwich Shop empire, Liautaud began to experience expansive growth, adding approximately an additional 2,000 JIMMY JOHN'S® Sandwich Shops by 2014.

10.      Liautaud has created, implemented, and continues to direct and "nurture" a tightly controlled, carefully monitored and audited, uniform system applicable to every aspect of the operations of each and every JIMMY JOHN'S® Sandwich Shop. Operator/Franchisees have no discretion to modify any aspect of the operations and systems but rather must obtain explicit approval before any deviation is made.

11.      In Liautaud's own words he affirms, "***I am the franchisor.***"

12.      Individual franchisees follow the explicit, precise, and detailed instructions and mandates JJF and Liautaud give them, including with respect to the duties and compensation of Assistant Store Managers ("ASMs").

5

13.    JJF-owned shops and franchise shops follow the same policies and practices with respect to ASMs' duties and compensation.

14.    JJF uniformly exercises control over all aspects of the design, layout, systems, compensation, and managerial and operational functions at all company-owned and franchised shops, including creating, mandating, and causing to be implemented the policies and practices that caused the violations alleged herein.

15.    JJF creates, mandates, and causes to be implemented uniform policies at its company-owned and franchised shops, including, but not limited to, policies regarding management, human resources, job titles and duties, minimum weekly hour requirements for ASMs and other employees, staffing requirements, compensation, wage and hour compliance, employee practices, and terms and conditions of employment. These policies do not vary from shop to shop, whether company-owned or franchise shops.

16.    JJF has the absolute right to terminate relationships with their franchisees and therefore to terminate the employees that work for that franchise.

17.    JJF's franchisees cannot shift their JJF operations to another fast food chain.

18.    Employees at franchise shops are integral to the services and products that JJF provides to the public.

19.    JJF contractually controls all JIMMY JOHN'S® Sandwich Shops, including franchise shops.

20.    JJF sets the criteria for whom they will consider to operate franchises.

21.    JJF sets and controls the job duties and training, and otherwise controls the operations of the franchise shops, through the franchise agreement, the mandatory Confidential Operations Manual and by participation in the daily management and operations of all shops,

6

including franchise shops.

22.     JJF's standard and uniform Franchise Agreement affirmatively states:

"*During your operation of the Restaurant, **we will***:

> 6.      *Inspect the Restaurant, observe and **participate in its normal operation**, and interview and interact with your employees and customers to help you comply with the Franchise Agreement and all System Standards.* (Franchise Agreement – Section 11.A)."

23.     JJF's website includes the franchise shops.

### III.     <u>JURISDICTION AND VENUE</u>

24.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1337 and supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §§ 1332 and 1367.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because the action involves a federal statute, 29 U.S.C. § 216(b). Plaintiffs do not bring any claims pursuant to or under a collective bargaining agreement.

25.     Upon information and belief, the amount in controversy in this matter exceeds the sum or value of five million dollars ($5,000,000.00), exclusive of interest and costs.

26.     Upon information and belief, at least one member of the Rule 23 Class and/or collective is a citizen of a state different than that of Defendants.

27.     Venue is proper in the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391. Defendants do business in the Northern District of Illinois, Eastern Division, and Plaintiffs are residents of the Northern District of Illinois, Eastern Division. Defendants are subject to personal jurisdiction in the State of Illinois for the purpose of this lawsuit because all Defendants are domiciled in, and residents of, the State of Illinois.

### IV.    PARTIES

**A.    Plaintiffs:**

28.    Plaintiff BRUNNER is an Illinois resident currently residing in Brookfield, Illinois. Plaintiff BRUNNER works at the JIMMY JOHN'S® Sandwich Shop located in Downers Grove, Illinois. Plaintiff BRUNNER is an ASM employee, under the FLSA and applicable Illinois law, of Defendants JJF, JS FORT and FORT. A written consent form for Plaintiff BRUNNER is attached hereto as Exhibit A.

29.    Plaintiff TUROWSKI is an Illinois resident currently residing in Grayslake, Illinois. Plaintiff TUROWSKI worked at the JIMMY JOHN'S® Sandwich Shop in Libertyville, Illinois, until July 28, 2014. Plaintiff TUROWSKI is a former ASM and former delivery driver. Plaintiff TUROWSKI is an employee, under the FLSA and applicable Illinois law, of Defendants JJF, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON. A written consent form for Plaintiff TUROWSKI is attached hereto as Exhibit B.

30.    Plaintiff WHITON is an Illinois resident currently residing in Park City, Illinois. Plaintiff WHITON worked at five JIMMY JOHN'S® Sandwich Shops, located in Waukegan, Illinois; Vernon Hills, Illinois; Gurnee, Illinois; Zion, Illinois; and Libertyville, Illinois. Plaintiff WHITON was an ASM employee, under the FLSA and applicable Illinois law, of Defendants JJF, JJ SEVERSON, TODD SEVERSON, and BROOKE SEVERSON. A written consent form for Plaintiff WHITON is attached to this Complaint as Exhibit C.

**B.    Defendants:**

31.    Defendants are/were the employer and/or joint employer and/or single employer of Plaintiffs and thousands of other current and former ASMs that Defendants have misclassified as "exempt" under the FLSA and IMWL in order to subject them to long hours and deny them

8

minimum wages and overtime pay.

### i. Defendant JJF

32.     Defendant JIMMY JOHN'S FRANCHISE, LLC, is a Delaware limited liability company with its principal place of business in Illinois, at the following address: 2212 Fox Drive, Champaign, Illinois 61820. JIMMY JOHN'S FRANCHISE, LLC is authorized to do business in the State of Illinois, and is currently doing business in the State of Illinois.

33.     Defendant JIMMY JOHN'S FRANCHISE, LLC, is the successor entity to Jimmy John's Franchise, Inc. JIMMY JOHN'S FRANCHISE, LLC, by operation of law, received all rights, title and interest in and to the assets, and assumed any and all obligations and liabilities, of Jimmy John's Franchise, Inc. Jimmy John's Franchise, Inc. was the franchisor of the JIMMY JOHN'S® Sandwich Shop system from 1993 until December 2006. Other than the franchisor entity's change from an Illinois corporation to a Delaware limited liability company, the merger had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system.

34.     Defendant JIMMY JOHN'S ENTERPRISES, LLC, is a Delaware limited liability company that was created with the sole purpose of merging with Jimmy John's Enterprise, Inc., an Illinois corporation formed in 1983, to change Jimmy John's, Inc. from an Illinois corporation to a Delaware limited liability company. Defendant JIMMY JOHN'S ENTERPRISES, LLC, was the surviving entity after the merger which became effective in December of 2006.  As a result of the merger, Defendant JIMMY JOHN'S ENTERPRISES, LLC, received all the rights, title and interest in and to the assets, and assumed any and all obligations and liabilities of Jimmy John's Enterprises, Inc. Other than the merger's impact on the change from an Illinois corporation to a Delaware limited liability company, the merger otherwise had no impact on the JIMMY JOHN'S® Sandwich Shop franchise system.  Defendant JIMMY JOHN'S ENTERPRISES, LLC,

9

is an affiliate of Defendant JIMMY JOHN'S FRANCHISE, LLC, shares the same principal place of business, shares the same members, corporate governance and for all intents and purposes are one-in-the-same, act in concert or as alter-ego of each other, or as a single integrated entity and is herein collectively referred to as Defendant JJF.

35.     Defendant JIMMY JOHN'S, LLC is the parent corporation of JIMMY JOHN'S FRANCHISE, LLC, shares the same members, business operations and principal business address (Champaign, Illinois) as JIMMY JOHN'S FRANCHISE, LLC, and is one-in-the same, the alter–ego of each other, or a single integrated entity and is herein collectively referred to as Defendant JJF.

36.     Defendant JJF is an employer, under the FLSA and various state wage laws, of every employee working at any JIMMY JOHN'S® Sandwich Shop, including but not limited to Plaintiffs.

37.     Defendant JJF employs an Illinois Choice of Law provision in most contracts, including, but not limited to the standard, uniform Franchise Agreement, which it uses to maintain and exercise the ultimate control over and operation of all JIMMY JOHN'S® Sandwich Shops and employees as alleged herein. As such, Illinois Law applies to all ASMs and employees nationwide.

38.     As of the date of filing this ACC, Defendant JJF's 2013 revenue was approximately 1.3 billion dollars and Defendant JJF is estimated to be valued at well over two billion dollars.

39.     Defendant JJF is in the fast food sandwich industry with its principal business being the sales of gourmet deli sandwiches, fresh baked breads, and other food and beverage products and services, using the "JIMMY JOHN'S®" name, both online and at their over 2,000

10

nearly identical, standard and uniform JIMMY JOHN'S® Sandwich Shops located in at least 44 states and the District of Columbia ("JIMMY JOHN'S® Business System").

40.     Defendant JJF actuates its proprietary JIMMY JOHN'S® Business System by directly opening JIMMY JOHN'S® Sandwich Shops or through entering into an agreement it refers to as a Franchise Agreement with individuals willing to finance, operate, manage and follow explicit, precise and detailed instructions from Defendant JJF ("Operators/Franchisees") at JIMMY JOHN'S® Sandwich Shops.

41.     Defendant JJF exercises control over all aspects of the design, layout, systems and managerial and operational functions at all of their JIMMY JOHN'S® Sandwich Shops, as more fully set forth herein, including creating, mandating and implementing the policies and practices that created the systematic wage theft alleged herein. Defendant JJF creates and causes to be implemented all policies and practices (operation, financial and otherwise), including but not limited to management policies, human resources policies, job titles/positions and duties, staffing requirements, compensation policies, wage and hour policies, employee practices policies, terms and conditions of employment at a JIMMY JOHN'S® Sandwich Shop, job duties and responsibilities, and uniformly applies all policies, procedures and systems to management and operation of every JIMMY JOHN'S® Sandwich Shop.  The policies and practices promulgated, disseminated and mandated by Defendant JJF have caused the misclassification of ASMs and the denial of minimum wages, wages, overtime wages and otherwise just and due compensation.

### ii.     Defendant FORT and Defendant JS FORT

42.     Defendant, JS FORT GROUP, INC. ("JS FORT"), is a domestic corporation, incorporated in the State of Illinois, authorized to do, and doing, business in the State of Illinois

and with its corporate headquarters located at 7028 W CERMAK RD BERWYN Illinois, 60402. It is a closely-held corporation with its President, Secretary, and Registered Agent each listed as: JEFFREY S FORT JR., with the following Cook County, Illinois address: 7028 W CERMAK RD BERWYN IL 60402. Defendant JS FORT is an Operator/Franchisee that entered into Defendant JJF's standard Franchise Agreement and related Agreements, has an ownership interest in, controls, operates or manages the day-to-day operations and is an employer, under the FLSA and Illinois State law, in at least 28 JIMMY JOHN'S® Sandwich Shops located throughout Illinois ("JS FORT JIMMY JOHN'S® Sandwich Shops"), including but not limited to the following locations identified in the 2014 Franchise Disclosure Document ("FDD"):

a.      JS Fort Group, Inc.: 1450 West Lake Street, Addison, Illinois 60101;

b.      JS Fort Group, Inc.: 7520  S. Cicero Avenue, Bedford Park, Illinois 60652;

c.      JS Fort Group, Inc.: 7028 Cermak Rd., Berwyn, IL 60402;

d.      JS Fort Group, Inc.: 718 E. Boughton Rd., Bolingbrook, IL 60440;

e.      JS Fort Subs 552, Inc.: 7924 S Harlem Avenue, Burbank, Illinois 60459;

f.      JS Fort Group, Inc.: 25520 S. Pheasant Lane, Channahon, Illinois 60410;

g.      JS Fort Group, Inc.: 2206 N. Clybourn, Chicago, Illinois 60614;

h.      JS Fort Group, Inc.: 1431 N. Kingsbury Street, Chicago, Illinois 60642;

i.      JS Fort Subs 608, Inc.: 5321 S. Lagrange Road, Countryside, Illinois 60525;

j.      JS Fort Group, Inc.: 2445 75th Street, Darien, IL 60561;

k.      JS Fort Group, Inc.: 2321 Ogden Avenue, Downers Grove, Illinois 60515;

l.      JS Fort Group, Inc.: 1035 S. York Road, Elmhurst, IL 60126;

m.      JS Fort Subs 458, Inc.: 350 Circle Avenue, Forest Park, IL 60130;

n.  JS Fort Group, Inc.: 850 Roosevelt Road, Glen Ellyn, Illinois 60137;

o.  JS Fort Group, Inc.: 7604 West 95th Street, Hickory Hills, Illinois 60457;

p.  JS Fort Group, Inc.: 2223 S. Wolf Road, Hillside, Illinois 60162;

q.  JS Fort Group, Inc.: 60 North Mannheim Road, Hillside, Illinois, 60162;

r.  JS Fort Group, Inc.: 14110 Bell Road, Homer Glen, Illinois, 60491;

s.  JS Fort Group, Inc.: 2311 Essington Road, Joliet, Illinois 60435;

t.  JS Fort Group, Inc.: 2770 S. Highland Avenue, Lombard, Illinois, 60148;

u.  JS Fort Group, Inc.: 8499 Ogden Avenue, Lyons, Illinois 60534;

v.  JS Fort Group, Inc.: 2511 W. North Avenue, Melrose Park, Illinois, 60160;

w.  JS Fort Group, Inc.: 1541 Creek Road, Morris, Illinois 60450;

x.  JS Fort Subs 456, Inc.: 709 Lake Street, Oak Park, Illinois, 60301;

y.  JS Fort Group, Inc.:11908 S. Harlem Avenue, Palos Heights, Illinois, 60463;

z.  JS Fort Group, Inc.: 381 S. Weber Road, Romeoville, Illinois, 60446;

aa.  JS Fort Group, Inc.: 7444 Kingery HWY, Willowbrook, Illinois, 60527; and

bb.  JS Fort Group, Inc.: 6325 Main Street, Woodridge, Illinois, 60098.

43.  Defendant FORT is an individual residing in the State of Illinois with the following address listed with the Illinois Secretary of State: 28 W CERMAK RD BERWYN IL 60402. Defendant FORT is an Operator/Franchisee, has an ownership interest in, controls, operates or manages the day-to-day operations and is an employer, under the FLSA and Illinois State law, in all JS FORT JIMMY JOHN'S® Sandwich Shops. Defendant FORT operates the following JIMMY JOHN'S® Sandwich Shops, but the corporate entities indicated in the 2014

13

FDD have been dissolved and are no longer active with the Illinois Secretary of State:

a.    JS Fort Subs 456, Inc.: 709 Lake Street, Oak Park, Illinois, 60301;

b.    JS Fort Subs 458, Inc.: 350 Circle Avenue, Forest Park, IL 60130;

c.    JS Fort Subs 552, Inc.: 7924 S Harlem Avenue, Burbank, Illinois 60459; and

d.    JS Fort Subs 608, Inc.: 5321 S. Lagrange Road, Countryside, Illinois 60525.

Other than those four locations, according to the 2014 FDD, all other JIMMY JOHN'S® Sandwich Shops operated by Defendant FORT are associated with the active Illinois corporation, JS FORT GROUP, INC. These four locations are included in the definition of JS FORT JIMMY JOHN'S® Sandwich Shops.

44.    Although multiple entities are being used by Defendants FORT and JS FORT in the operation of JS FORT JIMMY JOHN'S® Sandwich Shops, Defendants FORT and JS FORT control, operate, manage the day-to-day operations and maintain an ownership interest in each of those entities, or acts as a joint employer with or agent of Defendant JJF in performing management and operational duties at the JS FORT JIMMY JOHN'S® Sandwich Shops.

45.    Defendants FORT and JS FORT are only Operator/Franchisees, only maintain an ownership interest in and only engage in management and operational duties at the JS FORT JIMMY JOHN'S® Sandwich Shops, which are all located within the State of Illinois.

46.    Defendant JS FORT is an employer under the FLSA and Illinois state law, of Plaintiff BRUNNER and all employees at every JS FORT JIMMY JOHN'S® Sandwich Shop. Defendant JS FORT has directly and proximately caused Plaintiff BRUNNER, and other similarly situated ASMs employed at those JS FORT JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and

14

pay including but not limited to, minimum wages, wages and overtime compensation in violation of the FLSA and Illinois state law.

47.     Defendant FORT, in his individual capacity, is an employer under the FLSA and Illinois state law of Plaintiff BRUNNER and all employees at every JS FORT JIMMY JOHN'S® Sandwich Shop. Defendant FORT has directly and proximately caused Plaintiff BRUNNER, and other similarly situated ASMs employed at those JS FORT JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay including but not limited to,  minimum wages, wages and overtime compensation in violation of the FLSA and Illinois state law.

### iii.     Defendants TODD SEVERSON, BROOKE SEVERSON and JJ SEVERSON

48.     Defendants TODD SEVERSON and BROOKE SEVERSON are Illinois residents that each list their address with the Illinois Secretary of State to be in Grayslake, Illinois. Each is an Operator/Franchisee, each entered into Defendant JJF's standard Franchise Agreement and related Agreements, has an ownership interest in, controls, operates or manages the day-to-day operations of at least 12 JIMMY JOHN'S® Sandwich Shops located throughout Illinois, including but not limited to the following locations identified in the 2014 FDD ("SEVERSON JIMMY JOHN'S® Sandwich Shops"):

    a.      JJ Severson Affiliates, Inc.: 1267 E. Dundee Rd., Buffalo Grove, Illinois, 60089;

    b.      JJFA7, Inc.: 908 Northwest HWY, Fox River Grove, Illinois 60021;

    c.      JJ Severson Affiliates, Inc.: 5250 Grand Avenue, Gurnee, Illinois, 60031;

    d.      JJFA7, Inc.: 20771 N Rand Road, Kildeer, Illinois, 60047;

    e.     JJ Severson Affiliates, Inc.: 1746 N. Milwaukee Avenue, Libertyville, Illinois, 60048;

    f.     JJNISK, Inc. 9641 N. Milwaukee Avenue, Niles, Illinois 60714;

    g.     JJFA7, Inc.: 2047 Milwaukee Avenue, Riverwoods, Illinois, 60015;

    h.     JJ Severson Affiliates, Inc.: 1924 N. IL Route 83, Round Lake, Illinois 60073;

    i.     JJNISK, Inc.: 9402 Skokie Blvd., Skokie, Illinois, 60077;

    j.     JJ Severson Affiliates, Inc.: 325 N. Milwaukee Avenue, Vernon Hills, Illinois 60061;

    k.     JJ Severson Affiliates, Inc.: 3951 Fountain Square Place, Waukegan, Illinois, 60085; and

    l.     JJFA Six, Inc.: 2111 Sheridan Road, Zion, Illinois, 60099.

49.    Defendant JJ SEVERSON is a closely-held Illinois Corporation, authorized to do business and doing business within the State of Illinois, with its corporate headquarters located at 34296 N STONEBRIDGE LN GRAYSLAKE IL 60030. Defendant TODD SEVERSON is its Registered Agent and President.  Defendant BROOKE SEVERSON is its Secretary. The 2014 FDD associates JJ SEVERSON with six JIMMY JOHN'S® Sandwich Shops in Illinois as set forth in the preceding paragraph.

50.    Defendant JJ SEVERSON AFFILIATES FIVE, INC. ("JJ SEVERSON 5") is a closely-held domestic corporation, incorporated in the state of Illinois, authorized to do business in the State of Illinois and shares the same corporate headquarters with Defendant JJ SEVERSON AFFILIATES, INC.: 34296 N STONEBRIDGE LN GRAYSLAKE, IL 60030.  It also shares the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant BROOKE SEVERSON) with Defendant JJ SEVERSON AFFILIATES, INC.  JJ SEVERSON 5 does not appear in the 2014 FDD, however may be associated with the

Libertyville JIMMY JOHN'S® Sandwich Shop where Plaintiff TUROWSKI and Plaintiff WHITON were employed. Since the 2014 FDD lists JJ SEVERSON AFFILIATES, INC. as the Owner/Franchisee of the Libertyville JIMMY JOHN'S® Sandwich Shop, JJ SEVERSON 5 (and both corporations have the same corporate address, Registered Agent and officers) is essentially the same entity, or alter-ego of JJ SEVERSON AFFILIATES, INC., and they will therefore be collectively referred to herein as "JJ SEVERSON."

51.     In addition to Defendant JJ SEVERSON 5, the Illinois Secretary of State lists the following similarly named three entities: JJ Severson Affiliates Two, Inc.; JJ Severson Affiliates Three, Inc.; and JJ Severson Affiliates Four, Inc.  Each of those entities also share the same Registered Agent and President (Defendant TODD SEVERSON) and Secretary (Defendant BROOKE SEVERSON) and corporate headquarters at: 34296 N STONEBRIDGE LN GRAYSLAKE, IL 60030. None of these three entities are associated with any JIMMY JOHN'S® Sandwich Shops in the FDD.

52.     Although multiple entities are being used by Defendants TODD SEVERSON and BROOKE SEVERSON, in the operation of at least 12 JIMMY JOHN'S® Sandwich Shops throughout Illinois, Defendants TODD SEVERSON and BROOKE SEVERSON control, operate, manage the day-to-day operations and maintain an ownership interest in each of the SEVERSON JIMMY JOHN'S® Sandwich Shops, or acts as a joint employer with or agent of Defendant JJF in performing management and operational duties ("SEVERSON JIMMY JOHN'S® Sandwich Shops").

53.     Defendant TODD SEVERSON and Defendant BROOKE SEVERSON are only Operator/Franchisees, and only engage in management and operational duties, at the SEVERSON JIMMY JOHN'S® Sandwich Shops, which are all located within the State of

Illinois.

54.     Defendant TODD SEVERSON in his individual capacity is an employer under the FLSA and Illinois state law of Plaintiff TUROWSKI, Plaintiff WHITON and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant TODD SEVERSON has directly and proximately caused Plaintiff TUROWSKI, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

55.     Defendant BROOKE SEVERSON in her individual capacity, is an employer under the FLSA and Illinois state law, of Plaintiff TUROWSKI, Plaintiff WHITON and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant BROOKE SEVERSON has directly and proximately caused Plaintiff TUROWSKI and Plaintiff WHITON, and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

56.     Defendant JJ SEVERSON is an employer, under the FLSA and Illinois state law, of Plaintiff TUROWSKI, Plaintiff WHITON and all employees at every SEVERSON JIMMY JOHN'S® Sandwich Shop. Defendant JJ SEVERSON has directly and proximately caused Plaintiff TUROWSKI, Plaintiff WHITON and other similarly situated ASMs employed at those SEVERSON JIMMY JOHN'S® Sandwich Shops, to be improperly classified as exempt, paid a salary and otherwise denied proper compensation and pay, including, but not limited to, wages and overtime compensation in violation of the FLSA and Illinois state law.

18

57. At all relevant times, all Defendants were engaged in commerce within the meaning of 29 U.S.C. § 203(b).

58. At all relevant times all Defendants performed related activities for a common business purpose and therefore together constitute an enterprise as defined by the FLSA. 29 U.S.C. § 203(r)(1).

59. At all relevant times, all Defendants JS FORT, FORT, TODD SEVERSON, BROOKE SEVERSON, and JJ SEVERSON each acted, directly or indirectly, in the interest of Defendant JJF, in relation to Plaintiffs and similarly situated employees, and implemented the specific and explicit detailed operational and managerial instructions, systems, procedures and employment policies, including policies effecting compensation, and job positions.

## V.     CLASS AND COLLECTIVE ACTION ALLEGATIONS

60. Plaintiffs bring this action individually, and on behalf of similarly situated persons, and in so doing seek certification, in accordance with Fed R. Civ. P. 23 (b)(1), (b)(3) and (c), as well as 29 U.S.C. § 216(b). All Rule 23 requirements for class certification are satisfied. All requirements for collective certification under 29 U.S.C. § 216(b) are satisfied. Therefore, Plaintiffs seek certification of the following **Plaintiff classes and collectives**:

a.      **"Nationwide FLSA Collective" and  Collective period are defined as:**

"All individuals who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop nationwide, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Nationwide FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns,

and successors, or any individual who has, or who at any time during the FLSA Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

    b.    **"Illinois IMWL Class" and Class Period are defined as:**

> "All individuals in Illinois, who are currently or were formerly employed as salaried ASMs at any JIMMY JOHN'S® Sandwich Shop in Illinois, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Illinois IMWL Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper requests for exclusion from the Class.

    c.    **"The Franchisee FLSA Collective" and Collective Period are defined as:**

> "All individuals who are currently or were formerly employed as salaried ASMs at any franchised JIMMY JOHN'S® Sandwich Shop nationwide, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Franchisee FLSA Collective are all employees and ASMs of Defendants who do not opt-in and Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Collective Period has had, a controlling interest in Defendants and the Judge to whom this case is assigned and any member of the Judge's immediate family.

d. **"The Illinois Franchisee IMWL Class" and Class Period are defined as**:

> "All individuals who are currently or were formerly employed as salaried ASMs at any franchised JIMMY JOHN'S® Sandwich Shop, located within the State of Illinois, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the Illinois Franchisee IMWL Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

Additionally, Plaintiff seeks certification under Rule 23(b)(1) and/or Rule 23(b)(3) of the following **<u>Defendant classes</u>**:

e. **"The FLSA Franchisee Defendant Class" and Class Period are defined as:**

> "All persons or entities who are currently or were formerly franchisees of a JIMMY JOHN'S® Sandwich Shop nationwide, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the FLSA Franchisee Defendant Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

f. **"The IMWL Franchisee Defendant Class" and Class Period are defined as:**

> "All persons or entities who are currently or were formerly franchisees of a JIMMY JOHN'S® Sandwich Shop, located within the State of Illinois, at any time from three years prior to the date of commencement of this action through the date of judgment in this action."

Excluded from the IMWL Franchisee Defendant Class are Defendants' legal representatives, officers, directors, assigns, and successors, or any individual who has, or who at any time during the Class Period has had, a controlling interest in Defendants; the Judge to whom this case is assigned and any member of the Judge's immediate family; and all persons who will submit timely and otherwise proper request for exclusion from the Class.

**A.** **Rule 23 Class Allegations**

61. Class certification, in accordance with Fed R. Civ. P. 23 (b)(1) and/or (3) and (c) is appropriate for the following claims:

> a. **Second Claim:** Violations of the IMWL, brought by Plaintiffs, individually and on behalf of the "**Illinois IMWL Class**" (defined herein), against Defendant JJF; and
>
> b. **Fourth Claim:** Violations of the IMWL, brought by Plaintiffs BRUNNER, TUROWSKI and WHITON, individually and on behalf of "**The Illinois Franchisee IMWL Class**" (defined herein) against Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of "**The Franchisee Defendant Class**" (defined herein).

62. Class Definitions and Class Periods for each are set forth in the preceding paragraphs.

63.     **Numerosity:** Defendants have collectively employed over 200,000 geographically disbursed persons during the relevant time period. The persons in each of the Classes identified above are geographically diverse and so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendants. Upon information and belief, there are thousands of members in each Rule 23 Class.

64.     **Commonality:** There are numerous questions of law and fact common to the Classes that predominate over any questions affecting only individual class members. The questions of law and fact common to the Classes predominate over any question solely affecting individual members of any Class, including, but not limited to:

    a.      Whether all or some of the Defendants employed Plaintiffs, and members of the Class, and whether Defendants were joint or single employers, within the meaning of the applicable statutes;

    b.      Whether Illinois is the law governing the state law disputes set forth in this action;

    c.      Whether Defendants employ an Illinois Choice of Law provision in all or most contracts, including, but not limited to, the standard, uniform Franchise Agreement, which it uses to maintain and exercise the ultimate control over and operation of all JIMMY JOHN'S® Sandwich Shops and employees as alleged herein;

    d.      Whether Defendant JJF exercises operational control and authority over all JIMMY JOHN'S® Sandwich Shops nationwide;

    e.      Which Defendants create and require the job titles, job positions and job

23

descriptions uniformly used at JIMMY JOHN'S® Sandwich Shops nationwide;

f.     Whether Defendant JJF creates, implements, mandates, permits or allows the pay grades and job classifications as "exempt" or "non-exempt", whether directly or indirectly;

g.     Whether all ASMs are similarly situated;

h.     Whether Defendant JJF participates in or exercises significant control over all JIMMY JOHN'S® Sandwich Shops with regard to the operations and management of the JIMMY JOHN'S® Sandwich Shops overall, and with regard to the payment of compensation to ASMs; job responsibilities of ASMs; required number of hours worked by ASMs; the hiring and termination of ASMs, the policy of misclassifying ASMs as "exempt"; the calculation and determination of any bonuses awarded to ASMs; the handling of complaints by ASMs regarding working conditions; or the determination of optimal labor budgets in connection with the time worked, and job duties of, ASMs at all JIMMY JOHN'S® Sandwich Shops nationwide;

i.     Whether Defendant JJF has the right to qualify and approve all ASMs for employment at each of their JIMMY JOHN'S® Sandwich Shops or the right to terminate ASMs at any JIMMY JOHN'S® Sandwich Shop nationwide;

j.     Whether Defendant JJF authored, modified, approved, authorized or required the utilization of the very specific, and standard, rules governing

24

all employees at JIMMY JOHN'S® Sandwich Shops, including but not limited to: basis for termination and discipline, late arrival policy, sick and shift replacement policy, dress code, cell phone use, restrictions on internet use and postings related to work even during non-working hours, language fluency requirements, etc.;

k.  Whether Defendant JJF provides the training and certification of ASMs working at each of their JIMMY JOHN'S® Sandwich Shops;

l.  Whether Defendant JJF controls the scheduling, shifts worked and duties performed by ASMs at each of their JIMMY JOHN'S® Sandwich Shops;

m.  Whether Defendants FORT, JS FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON have the right to exercise their discretion and re-define ASM job duties, responsibilities and terms of employment at any JIMMY JOHN'S® Sandwich Shop;

n.  The relationship between Defendants;

o.  Whether Defendants FORT, JS FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON caused, either directly or by acting as agents of Defendant JJF and enforcing their policies and directions, ASMs to be paid a salary or  failed to pay ASMs all wages owed to the ASMs, including, but not limited to, minimum wages, wages and overtime compensation;

p.  Whether any or all of Defendants failed to keep true and accurate time records for all hours worked by Plaintiffs and members of the Classes;

q.  Whether Plaintiffs and members of the Classes are non-exempt employees

25

of any of the Defendants;

r.      Whether Plaintiffs and members of the Classes were misclassified as "exempt" from the overtime provisions of the IMWL and/or other applicable wage laws;

s.      Whether any or all of Defendants engaged in an intentional and knowing, continuing policy, pattern or practice of misclassifying ASMs, including Plaintiffs and members of the Classes, as "exempt" employees and required, caused to suffer or permitted ASMs to perform work in excess of 40 hours per week without compensating them at 1 ½ times the regular rate of pay for all work performed in excess of 40 hours;

t.      Whether any or all of Defendants failed to pay Plaintiffs and ASMs prevailing minimum wages;

u.      Whether any or all of Defendants knew or should have known that ASMs were erroneously classified as "exempt" or required to work so many hours that their effective hourly rate was below the legally permissible minimum wage;

v.      Whether any or all of Defendants intentionally, willfully and/or knowingly failed to pay Plaintiffs and members of the classes as "non-exempt" employees or an amount not constituting fair and lawful wages under state or federal law;

w.      Whether any or all of Defendants violated the IMWL by refusing and/or failing to pay Plaintiffs and members of the Classes wages and overtime compensation;

26

      x.        Whether Defendants' policy, pattern or practice of misclassifying ASMs as exempt from receiving hourly pay and overtime compensation was done willfully and/or with reckless disregard; and

      y.        Whether any or all of the Defendants failed to pay ASMs minimum wages, overtime wages, for all hours worked and in a timely manner, in compliance with the IMWL.

65.    **Typicality:** The claims of Plaintiffs are typical of the members of each of the Classes.

66.    **Adequacy:** Plaintiffs will fairly and adequately represent the interests of each of the Classes.  Plaintiffs can and will adequately represent and protect the interests of the Classes and have no interests that conflict with or are antagonistic to the interests of Class members. Plaintiffs have retained attorneys competent and experienced in class actions, including employment and wage and hour class actions. No conflict exists between Plaintiffs and Class members.

67.    **Superiority:** A class action is superior to other available methods for their fair and efficient adjudication of the controversy, particularly in the context of wage and hour litigation, where individual employees/plaintiffs either lack the financial resources or cannot justify the commitment of the large financial resources necessary to vigorously prosecute separate lawsuits in federal court and/or state court against large corporate defendants.  The interests of judicial economy favor adjudication of the class claims alleged herein on a class basis rather than an individual basis, especially where, as here, the amount of damages for each claim are small compared to the burden and expense that would be incurred if each claim was litigated individually.

68.    Certification pursuant to Fed. R. Civ. P. 23(b)(1)(A) is proper for both the Plaintiff and Defendant classes because the maintenance of separate actions by individual members of the classes would create a risk of inconsistent or varying adjudications with respect to ASM classifications and wages, and establish incompatible standards of conduct for the Defendants. Furthermore, certification under Fed. R. Civ. P. 23(b)(1)(B) is proper because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of other class members not a party to the adjudication or would substantially impair or impede their abilities to protect their interests.

69.    Certification pursuant to Fed. R. Civ. P. 23(b)(3) is appropriate for both the Plaintiff and Defendant classes because the questions of law or fact common to class members predominate over any questions affecting only individual class members.

**B.    FLSA Collective Allegations**

70.    Plaintiffs bring their FLSA claims pursuant to Section 216(b) of the FLSA. 29 U.S.C. § 216(b).  Under Section 216(b), FLSA violation claims are brought and maintained as an "opt-in" Collective Action. *Id.*

71.    Defendants have deliberately, willfully and intentionally engaged in a widespread pattern and practice of violating the provisions of the FLSA, as described above, by misclassifying ASM employees as "exempt", thereby failing and/or refusing to properly pay Plaintiffs, and other similarly situated ASMs, minimum wages and overtime compensation in accordance with §§ 206 and 207 of the FLSA.

72.    Defendants knew or should have known that said ASMs were not exempt employees under the FLSA. Defendants willfully violated the FLSA by misclassifying Plaintiffs, and all other similarly situated ASMs, as exempt employees; therefore, a three-year statute of

28

limitations applies to such violations, pursuant to 29 U.S.C. § 255.

73.     Plaintiffs and all other ASMs are similarly situated in that they all are or were subject to Defendants' common policy, plan or practice of designating them as exempt from the overtime requirements of the FLSA, when in fact their work and job duties as required and defined by Defendants do not qualify them to be exempt.

74.     Defendants are liable for improperly compensating Plaintiffs and members of the FLSA Collective under the FLSA, and as such notice should be sent to the FLSA Collective. There are thousands of similarly situated current and former ASMs in the Nationwide FLSA Collective and hundreds of ASMs in each the FORT FLSA Collective and SEVERSON FLSA Collective. Defendants, individually or in concert, caused ASMs to be misclassified as exempt and denied minimum wages, wages and the overtime premium in violation of the FLSA. These current, former and future employees would benefit from the issuance of a court-supervised notice of the present lawsuit and the opportunity to join in the present lawsuit. The similarly situated employees are known to Defendants and are readily identifiable through Defendants' records.

## VI.     FACTUAL BACKGROUND

### A.     Plaintiff BRUNNER's Employment by Defendants

75.     Plaintiff BRUNNER is a current employee of Defendants and has worked for Defendants JJF, JS FORT and FORT at the Downers Grove, Illinois JIMMY JOHN'S® Sandwich Shop since November 2013. Plaintiff BRUNNER has held the positions of delivery driver, in-shopper, person in charge, and ASM. Upon commencing her employment, Defendants provided Plaintiff Brunner with a stack of documents copyrighted to Defendant JJF that set forth rules, policies, basis for discipline or termination, dress code, operating procedures, tax forms

29

and other documents, some of which she was required to sign as a condition of her employment.

76.     Plaintiff BRUNNER considers Defendants JJF, JS FORT and FORT to be her employers based on the documentation the she received, the operational control and oversight provided by each of those Defendants, the authority of each of those Defendants to terminate her employment or cause her to be disciplined, the lack of any discretion or control in terms of the design, control or operations of the Owner/Franchisee, manager or other employees at the JIMMY JOHN'S® Sandwich Shop where she is employed.

77.     All representations made to her by Defendants have led Plaintiff BRUNNER to believe that ultimate control of all aspects of the JIMMY JOHN'S® Sandwich Shop where she works is vested in Defendant JJF.

78.     The JIMMY JOHN'S® Sandwich Shop where Plaintiff BRUNNER is employed is frequently inspected, analyzed and evaluated by Defendant JJF's Business Coach on virtually every aspect of the operation, including but not limited to: cleaning procedures, sandwich-making procedures, compliance with employees' dress code, compliance with labor and supply budgets, compliance with reporting requirements to Defendant JJF, maintenance of the point-of-sale system, and accounting and bank deposit procedures.

79.     Defendant JJF's Business Coach will require changes, provide additional compliance training, require remediation efforts, authorize adjustments to procedures, and ultimately score compliance with a score that is utilized to determine Plaintiff BRUNNER's and other ASMs' bonuses, if any.

80.     As an ASM, Plaintiff BRUNNER routinely works about 55 hours per week and is not paid minimum wages and never paid wages or overtime compensation for any hours she works in excess of 40 hours per week or eight hours per day. Plaintiff BRUNNER is paid a

30

salary of $500 per week. Plaintiff BRUNNER has worked, and continues to work, at least 50 hours every week that she has been provided a salary as an ASM by Defendants. Defendants orally advised Plaintiff BRUNNER that she was required to work in excess of 50 hours per week as an ASM, continuously require her to be scheduled to work in excess of 50 hours per week as an ASM, and also provided the requirement in writing in their standard and uniform ASM job description, Operations Manual, Franchise Disclosure Document, Franchise Agreement and Corporate Training Manuals and Workbooks, as well as in a number of other Defendant JJF-created and imposed documents, which *require* ASMs work *at least* 50 hours per week.

81.    Defendant also employed Plaintiff BRUNNER as a delivery driver with the primary job duty to deliver sandwiches and other food items to customers' homes and workplaces.

82.    Defendants required Plaintiff BRUNNER to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

83.    Plaintiff BRUNNER incurred costs for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants.

84.    Defendants required Plaintiff BRUNNER to sign documents attesting of her full automobile insurance coverage as a requisite to driving for Defendants.

85.    Defendants did not appropriately reimburse Plaintiff BRUNNER for her automobile insurance, or her other driving costs, while driving for the sole benefit of Defendants.

86.    Defendants did not provide Plaintiff BRUNNER with GPS or a mobile phone

31

to enable accurate and efficient deliveries. Therefore, Plaintiff BRUNNER used her personal mobile phone to access GPS systems or to make phone calls to Defendants' store or customers or to otherwise communicate with Defendants regarding the performance of her job duties, while on duty.

87.     Defendants paid Plaintiff BRUNNER $7.25 per hour as a delivery driver.

88.     Defendants have a computer system that allows them to keep track of the number of deliveries and the location of each delivery made.

89.     During the applicable limitation period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

90.     The average cost of owning and operating a vehicle, as described above, is determined using the average "driver" and not the average "delivery driver." The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. "Delivery drivers," such as Plaintiff BRUNNER, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average "driver."

91.     Defendants failed to reimburse Plaintiff BRUNNER's automobile expenses to such an extent that h e r net wages are diminished beneath federal minimum wage requirements.

92.     While Defendants employed Plaintiff BRUNNER as a delivery driver, in-shop and person in charge, she was routinely required to work off-the-clock, without pay or

32

compensation of any type, while performing job duties, such as closing duties.

93.     Defendants' managerial employees would actually take affirmative actions to deny Plaintiff BRUNNER pay for all of the time she worked by clocking Plaintiff BRUNNER out prior to her finishing her job duties and then causing her to continue to work without pay.

94.     Plaintiff BRUNNER would be required to continue to work after the managerial employee would clock her out, without compensation of any type.

95.     As such, Plaintiff BRUNNER was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

**B.     Plaintiff TUROWSKI's Employment by Defendants**

96.     Plaintiff TUROWSKI worked for Defendants JJF, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON at their JIMMY JOHN'S® Sandwich Shop located at 1746 N. Milwaukee Avenue, Libertyville, Illinois, between January 23, 2013 and July 28, 2014. Plaintiff TUROWSKI worked as a delivery driver from January 23, 2013, through September 2013. Thereafter, Plaintiff TUROWSKI worked as an ASM at the same location, for the remainder of her employment, until July 28, 2014.

97.     As an ASM, Plaintiff TUROWSKI routinely worked about 65-70 hours per week and was not paid minimum wages and never paid wages or overtime compensation for any hours she worked in excess of 40 hours per week or eight hours per day. Plaintiff TUROWSKI was paid a salary of $500 per week.  Plaintiff TUROWSKI worked at least 50 hours every week and was provided a salary as an ASM by Defendants. Defendants orally advised Plaintiff TUROWSKI that she was required to work in excess of 50 hours per week as an ASM, and also provided the requirement in writing in their standard and uniform ASM job description, Operations Manual, Franchise Disclosure Document, Franchise Agreement and Corporate

33

Training Manuals and Workbooks, as well as in a number of other Defendant JJF-created and imposed documents, which require ASMs work at least 50 hours per week.

98.     Upon commencing her employment, Defendants provided Plaintiff TUROWSKI with a stack of documents copyrighted to Defendant JJF that set forth rules, policies, basis for discipline or termination, dress code, operating procedures, tax forms and other documents, some of which she was required to sign as a condition of her employment.

99.     Plaintiff TUROWSKI considered Defendants JJF, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, to be her employers based on the documentation that she received, the operational control and oversight provided by each of those Defendants, the authority of each of those Defendants to terminate her employment or cause her to be disciplined, the lack of any discretion or control in terms of the design, control or operations of the Owner/Franchisee, manager or other employees at the JIMMY JOHN'S® Sandwich Shop where she was employed.

100.    All representations made to her by Defendants led Plaintiff TUROWSKI to believe that ultimate control of all aspects of the JIMMY JOHN'S® Sandwich Shop where she worked was vested in Defendant JJF.

101.    Plaintiff TUROWSKI attended training conducted by and at Defendant JJF, at its headquarters in Champaign, Illinois, and through that training her belief was confirmed regarding the identity of her employers, by among other things:

                a.    Paperwork, training manuals, operating guidelines and other written
                      materials that made it clear that Defendant JJF was her employer with
                      ultimate authority to hire and fire her, approve her as an assistant manager,
                      set forth her job duties, establish and enforce every detail of operating

34

procedures at the JIMMY JOHN'S® Sandwich Shop where she worked, audit her work, evaluate her work for purposes of determining any bonus, set her compensation and hours, set the formula by which she was paid a bonus and in all other ways manage every detail of her job duties and responsibilities as an employee at the JIMMY JOHN'S® Sandwich Shop;

b. Trainers made affirmative demands that trainees contact Defendant JJF with any and all issues, including issues involving routine operations, employment or compensation disputes; and

c. Plaintiff TUROWSKI spoke with other trainees from geographically diverse locations that confirmed their nearly identical operations, job duties, compensation and involvement of Defendant JJF in the operations of their respective JIMMY JOHN'S® Sandwich Shop.

102. The JIMMY JOHN'S® Sandwich Shop where Plaintiff TUROWSKI was employed was frequently inspected, analyzed and evaluated by Defendant JJF's Business Coach on virtually every aspect of the operation, including but not limited to: cleaning procedures, sandwich-making procedures, compliance with employees' dress code, compliance with labor and supply budgets, compliance with reporting requirements to Defendant JJF, maintenance of the point-of-sale system, and accounting and bank deposit procedures.

103. Defendant JJF's Business Coach requires changes, provides additional compliance training, requires remediation efforts, authorizes adjustments to procedures, and ultimately scores compliance with a score that is utilized to determine Plaintiff TUROWSKI's and other ASMs' bonuses, if any.

104. In the position of Defendants' delivery driver, Plaintiff TUROWSKI had the

35

primary job duty to deliver sandwiches and other food items to customers' homes and workplaces; however, she was also expected and required to engage in many other job duties (unrelated to driving), such as taking orders, cleaning and making sandwiches.

105.    In the position of delivery driver, Defendants required Plaintiff TUROWSKI to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

106.    Plaintiff TUROWSKI was required by Defendants to incur the cost for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants. Defendants did not adequately compensate Plaintiff TUROWSKI or reimburse her for such costs.

107.    Defendants required Plaintiff TUROWSKI to sign documents attesting of her full automobile insurance coverage as a requisite to driving for Defendants.

108.    Defendants did not reimburse Plaintiff TUROWSKI for her automobile insurance while driving for the sole benefit of Defendants.

109.    Defendants did not provide Plaintiff TUROWSKI with GPS or a mobile phone to enable accurate and efficient deliveries. Yet, Defendants required her to maintain a cell phone and be reachable by Defendants to communicate business responsibilities while driving and on duty for Defendant. Therefore, Plaintiff TUROWSKI used her personal mobile phone to access GPS systems, to make phone calls to Defendants' store or customers or to otherwise communicate with Defendants in connection with the performance of her driver duties.

110.    Defendants paid Plaintiff TUROWSKI $8.25 per hour as a delivery driver.

111.    Defendants have a computer system that allows it to keep track of the number

36

of deliveries and the location of each delivery made.

112.    During the applicable time period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

113.    The average cost of owning and operating a vehicle, as described above, is determined using the average "driver" and not the average "delivery driver." The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. "Delivery drivers," such as Plaintiff TUROWSKI, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average "driver."

114.    Defendants failed to reimburse Plaintiff TUROWSKI's automobile expenses to such an extent that her net wages were diminished beneath federal minimum wage requirements.

115.    While Defendants employed Plaintiff TUROWSKI as a driver, she was required to work off-the-clock, while performing ancillary duties, such as closing duties.

116.    Defendants' managerial employees would clock Plaintiff TUROWSKI out of her shift prior to her finishing her closing duties, yet require her to remain working until the closing duties were complete.

117.    Plaintiff TUROWSKI would be required to continue working after the managerial employee would clock her out.

118.    Plaintiff TUROWSKI was not compensated for her work performed off-the-clock

37

while performing closing duties.

119.    As such, Plaintiff TUROWSKI was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

120.    Defendants failed and refused to pay Plaintiff TUROWSKI her last paycheck of approximately $750.00.

### C.    Plaintiff WHITON's Employment by Defendants

121.    Plaintiff WHITON worked for Defendants JJF, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON at five of their JIMMY JOHN'S® Sandwich Shops. Plaintiff WHITON worked as a delivery driver from March 2013 until June 2013 at the Libertyville location.  In or about June 2013, Plaintiff WHITON worked at the JIMMY JOHN'S® Sandwich Shop located at 3951 Fountain Square Place in Waukegan, Illinois, as an ASM. In or about July 2013, Plaintiff WHITON worked at the JIMMY JOHN'S® Sandwich Shop located at 325 N. Milwaukee Avenue in Vernon Hills, Illinois, as an ASM. In or about August 2013, Plaintiff WHITON worked at the JIMMY JOHN'S® Sandwich Shop located at 5250 Grand Avenue in Gurnee, Illinois, as an ASM. In or about September 2013 until November 2013, Plaintiff WHITON worked as an ASM at the Waukegan location. From November 2013 until January 2014, Plaintiff WHITON worked at the JIMMY JOHN'S® Sandwich Shop located at 2111 Sheridan Road in Zion, Illinois, as a General Manager.  For the remainder of his employment, from January 2014 until March 1, 2014, Plaintiff WHITON worked as an ASM at the Gurnee location.

122.    As an ASM, Plaintiff WHITON routinely worked about 65-70 hours per week and was not paid minimum wages and never paid wages or overtime compensation for any hours he worked in excess of 40 hours per week or eight hours per day. Plaintiff WHITON was paid a

salary of $500 per week. Plaintiff WHITON worked at least 50 hours every week and was provided a salary as an ASM by Defendants. Defendants orally advised Plaintiff WHITON that he was required to work in excess of 50 hours per week as an ASM, and also provided the requirement in writing in their standard and uniform ASM job description, Operations Manual, Franchise Disclosure Document, Franchise Agreement and Corporate Training Manuals and Workbooks, as well as in a number of other Defendant JJF-created and imposed documents, which require ASMs work at least 50 hours per week.

123. Upon commencing his employment, Defendants provided Plaintiff WHITON with a stack of documents copyrighted to Defendant JJF, and known as the "New Hire Packet", that set forth rules, policies, basis for discipline or termination, dress code, operating procedures, tax forms and other documents, some of which he was required to sign as a condition of his employment.

124. Plaintiff WHITON considered Defendants JJF, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON to be his employers based on the documentation that he received, the operational control and oversight provided by each of those Defendants, the authority of each of those Defendants to terminate his employment or cause him to be disciplined, the lack of any discretion or control in terms of the design, control or operations of the Owner/Franchisee, manager or other employees at the JIMMY JOHN'S® Sandwich Shops where he was employed.

125. All representations made to him by Defendants led Plaintiff WHITON to believe that ultimate control of all aspects of the JIMMY JOHN'S® Sandwich Shops where he worked was vested in Defendant JJF.

126. Plaintiff WHITON attended training conducted by and at Defendant JJF, at its

headquarters in Champaign, Illinois, and through that training his belief was confirmed regarding the identity of his employers, by among other things:

    a. Paperwork, training manuals, operating guidelines and other written materials that made it clear that Defendant JJF was his employer with ultimate authority to hire and fire him, approve him as an assistant manager, set forth his job duties, establish and enforce every detail of operating procedures at the JIMMY JOHN'S® Sandwich Shops where he worked, audit his work, evaluate his work for purposes of determining any bonus, set his compensation and hours, set the formula by which he was paid a bonus and in all other ways manage every detail of his job duties and responsibilities as an employee at the JIMMY JOHN'S® Sandwich Shops;

    b. Trainers made affirmative demands that trainees contact Defendant JJF with any and all issues, including issues involving routine operations, employment or compensation disputes;

    c. Plaintiff WHITON spoke with other trainees from geographically diverse locations that confirmed their nearly identical operations, job duties, compensation and involvement of Defendant JJF in the operations of their respective JIMMY JOHN'S® Sandwich Shops.

127. The JIMMY JOHN'S® Sandwich Shops where Plaintiff WHITON was employed were frequently inspected, analyzed and evaluated by Defendant JJF's Business Coach on virtually every aspect of the daily operations, including but not limited to: cleaning procedures, sandwich-making procedures, compliance with employees' dress code, compliance with labor and supply budgets, compliance with reporting requirements to Defendant JJF, maintenance of

the point-of-sale system, and accounting and bank deposit procedures.

128.    Defendant JJF's Business Coach requires changes, provides additional compliance training, requires remediation efforts, authorizes adjustments to procedures, and ultimately scores compliance with a score that is utilized to determine Plaintiff WHITON's and other ASMs' bonuses, if any.

129.    In the position of Defendants' delivery driver, Plaintiff had the primary job duty to deliver sandwiches and other food items to customers' homes and workplaces; however, he was also expected and required to engage in many other job duties (unrelated to driving), such as taking orders, cleaning and making sandwiches.

130.    In the position of delivery driver, Defendants required Plaintiff WHITON to maintain and pay for safe, legally operable, and insured automobiles when delivering sandwiches and other food items.

131.    Plaintiff WHITON was required by Defendants to incur the cost for gasoline, vehicle parts and fluids, automobile repair and maintenance services, automobile insurance, depreciation, and cell phone use while delivering sandwiches for the primary benefit of Defendants. Defendants did not adequately compensate Plaintiff WHITON or reimburse him for such costs.

132.    Defendants required Plaintiff WHITON to sign documents attesting of his full automobile insurance coverage as a requisite to driving for Defendants.

133.    Defendants did not reimburse Plaintiff WHITON for his automobile insurance while driving for the sole benefit of Defendants.

134.    Defendants did not provide Plaintiff WHITON with GPS or a mobile phone to enable accurate and efficient deliveries. Yet, Defendants required him to maintain a cell phone

41

and be reachable by Defendants to communicate business responsibilities while driving and on duty for Defendant. Therefore, Plaintiff WHITON used his personal mobile phone to access GPS systems, to make phone calls to Defendants' store or customers or to otherwise communicate with Defendants in connection with the performance of his driver duties.

135.    Defendants paid Plaintiff WHITON $8.25 per hour as a delivery driver.

136.    Defendants have a computer system that allows it to keep track of the number of deliveries and the location of each delivery made.

137.    During the applicable time period, the IRS business mileage reimbursement rate ranged between $0.500 and $0.565 per mile. Likewise, reputable companies that study the cost of owning and operating a motor vehicle and/or reasonable reimbursement rates, including the AAA, have determined that the average cost of owning and operating a vehicle ranged between $0.45 and $0.55 per mile during the same period.

138.    The average cost of owning and operating a vehicle, as described above, is determined using the average "driver" and not the average "delivery driver." The nature of delivery driving includes frequent starting and stopping of the engine, frequent braking, short routes as opposed to highway driving, and driving under time pressures. "Delivery drivers," such as Plaintiff WHITON, experience lower gas mileage, more frequent vehicle maintenance, and higher repair costs than those contemplated for the average "driver."

139.    Defendants failed to reimburse Plaintiff WHITON's automobile expenses to such an extent that his net wages were diminished beneath federal minimum wage requirements.

140.    While Defendants employed Plaintiff WHITON as a driver, he was required to work off-the-clock, while performing ancillary duties, such as closing duties.

141.    Defendants' managerial employees would clock Plaintiff WHITON out of his shift prior to his finishing his closing duties, yet require him to remain working until the closing duties were complete.

142.    Plaintiff WHITON would be required to continue working after the managerial employee would clock him out.

143.    Plaintiff WHITON was not compensated for his work performed off-the-clock while performing closing duties.

144.    As such, Plaintiff WHITON was not paid minimum wages, all wages due and overtime wages for all hours worked in excess of 40 hours per week.

**D.    Relationship Between Defendant JJF and Operators/Franchisees**

145.    Defendant JJF exercises substantial and nearly complete control over all JIMMY JOHN'S® Sandwich Shops.

146.    Defendant JJF owns and operates many of the JIMMY JOHN'S® Sandwich Shops.

147.    Defendant JJF franchises the majority of JIMMY JOHN'S® Sandwich Shops, but has made public representations confirming it controls all (including Franchisee) of its JIMMY JOHN'S® Sandwich Shops and Defendant JJF utilizes explicit contractual language, in a number of documents with its Operator/Franchisees, that unambiguously establishes its control.

148.    Defendant JJF enters into a standard Franchise Agreement and associated documents with each of its Operator/Franchisees ("JJF Franchise Agreement").

149.    Defendant JJF is required by law to provide Operator/Franchisees with a FDD.

150.    Defendant JJF requires all of its Operator/Franchisees to follow the terms and conditions set forth in a document known as the "Confidential Operations Manual."

43

151. Operator/Franchisees are basically just "buying" themselves a managerial position at a JIMMY JOHN'S® Sandwich Shop, as Defendant JJF requires all Operator/Franchisees to operate and manage their shops, prohibits Operator/Franchisees from operating any other business, requires that all Operator/Franchisees satisfactorily complete Defendant JJF management training and certifications, requires all Operator/Franchisees to strictly adhere to all operational practices and systems, requires Operator/Franchisees to submit to performance audits, receive reprimands and implement remediation or changes (with threat of franchise termination for non-compliance) and provides for Defendant JJF control of every aspect of their operations.

152. Defendant JJF demonstrates that Operator/Franchisees are just glorified employees who "pay" for their positions. When answering their own question on their website, https://www.jimmyjohns.com/company/franchise/who-we-let-do-this-deal/, "Who do we Let Do this Deal", Defendant answered as follows:

**Think you have what it takes?**

1. You have to have the cash.

2. Real passion for my brand. If you don't dig it as much as we all dig it, this brand is not for you!

3. You've got to be a good, hard-working, well-intended individual, who respects yourself and others.

4. You've got to take specific, detailed, & disciplined direction extremely well.

5. You can't be a criminal.

6. You've got to love life, kids, music, dancing, your grandparents & sandwiches.

7. Last, be excited to work harder than you ever have in your life.

44

153.   Defendant JJF's control over Operator/Franchisees, and the JIMMY JOHN'S®️ Sandwich Shops they operate, is further evidenced in a document titled "*Make or Break Statement of Commitments and Lifestyle*." Defendant JJF requires that potential Operator/Franchisees commit to and initial 13 "commitments" such as:

3.  I understand that my store must be in compliance & have 2 certified managers in each store, otherwise, my application for any future stores will be denied.

4.  I understand that arriving early in the morning (5 am) is crucial to the success of the business. The store must be ready by 10 am or earlier in order to handle the unexpected.

5.  I understand that delivering and catering only to those within my delivery area is critical to my success. My delivery area will be set by JJF and only JJF can change it. I will adhere to the boundaries that are set.

6.  I understand that vacations or personal time with friends and family could be interrupted so that I can correct any deficiencies in my restaurants. This includes covering for a teammate when they are truly sick. Running a restaurant is a chosen lifestyle. It is extremely difficult; I accept and embrace that.

7.  I understand that training will be 6-day weeks for a minimum of 10 hours a day and that it is intense, focused, physical, and disciplined. Without 100% buy-in, I will ultimately fail.

8.  I understand that perfect product is critical to the survival of my store and that I must;
    a. Never use bread older than 4 hours
    b. Have a mayo master on the make line 100% of the time
    c. Use the mayo scoop on every sandwich
    d. Leave the mayo on the bread
    e. Make perfect sandwiches, no tomato means no tomato
    f. Have a slicing master on every shift

9.  I am committed to following Jimmy Systems 100% of the time including;
    a. Auditing every line in the system
    b. Auditing the quality of execution on the line
    c. Using business coaches report as a tool
    d. Using only a fixed schedule
    e. Executing 100% of the requirements in the coaches report
    f. Staffing my stores for the sales I want to do
    g. Not discounting or giving out coupons
    h. Comitting to a systematic guerilla sampling program

154.   **Operator/Franchisee Controlled By Defendant JJF:** Defendant JJF requires that every Operator/Franchisee actually operate their JIMMY JOHN'S®️ Sandwich Shops, prohibits Operator/Franchisee's from operating any other businesses, describes in detail all of the Operator/Franchisee job duties, requires Operator/Franchisee to go through Defendant JJF's management training, monitors and audits each Operator/Franchisees ongoing performance, has authority to require Operator/Franchisee to engage changes or remedial efforts, and has the right to terminate Operator/Franchisee's Agreement and rights for not fully and satisfactorily performing management  or general operational duties.

45

155.    Operator/Franchisee acts as an agent of Defendant JJF, or simply follows and carries out precise and explicit operational directions, in connection with the performance of its duties in connection with a JIMMY JOHN'S® Sandwich Shop.

156.    Defendant JJF explicitly establishes its control over Operator/Franchisee and each JIMMY JOHN'S® Sandwich Shop, by providing in its Franchise Agreement, in pertinent part:

    a.    We have the right to develop, operate, and change the Franchise System in any manner that is not specifically prohibited by this Agreement. Whenever we have reserved in this Agreement a right to take or to withhold an action, or to grant or decline to grant you the right to take or omit an action, we may, except as otherwise specifically provided in this Agreement, make our decision or exercise our rights based on information readily available to us and our judgment of what is in the best interests of us, JIMMY JOHN'S® Restaurant franchisees generally, or the Franchise System at the time our decision is made, without regard to whether we could have made other reasonable or even arguably preferable alternative decisions or whether our decision promotes our financial or other individual interest;

    b.    You acknowledge that the Franchise is nonexclusive, that you have no territorial protection whatsoever (even if you provide delivery services), and that we (and our affiliates) retain the right at all times during this Agreement's term to engage in any and all activities that we (and they) deem appropriate, wherever and whenever we (and they) desire, and whether or not such activities compete with your RESTAURANT…; and

46

c.    As a JIMMY JOHN'S® Restaurant franchisee, you must comply with this Agreement and all mandatory specifications, standards, operating procedures, and rules (collectively, "System Standards") that we periodically prescribe for JIMMY JOHN'S® Restaurants in order to maintain the high and consistent quality that is critical to attracting and keeping customers for JIMMY JOHN'S® Restaurants.

157.    **Monitoring of Day-to-Day Operations:** Defendant JJF closely monitors the day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shops, openly and secretly, through frequent and regular inspections, audits, and programs such as the guest satisfaction and "mystery shop" programs. Defendant JJF also hires third-party service providers that Operators/Franchisees are required to agree to and pay for, to assist in the auditing and monitoring of day-to-day operations.

158.    **Business Coach:** Defendant JJF controls day-to-day operations at each of its JIMMY JOHN'S® Sandwich Shops through its own (Defendant JJF) employees, including "Business Coaches" that are charged with closely monitoring, assessing, auditing and remediating all aspects of the operation of the JIMMY JOHN'S® Sandwich Shops they are assigned.

159.    In addition to numerous detailed provisions setting forth its specific control over every aspect of the operation of a JIMMY JOHN'S® Sandwich Shop, Defendant JJF ensured its ultimate and complete control by including a "catch-all" provision in the Franchise Agreement, which provides in part that it retains control of all "*aspects of operating and maintaining the RESTAURANT that we determine to be useful to preserve or enhance the efficient operation, image, or goodwill of the Marks and JIMMY JOHN'S® Restaurants.*"

47

160.     In order to ensure that Liautaud's vision and control is actuated in every JIMMY JOHN'S® Sandwich Shop, regardless of whether it is technically owned by Defendant JJF or Liautaud, or financed by an Operator/Franchisee, Defendant JJF has carefully drafted its FDD, Franchise Agreement, and Operational Manual to solidify its control of every aspect of every JIMMY JOHN'S® Sandwich Shop.

161.     **Control of All Management Level Employees:** Defendant JJF maintains complete and exclusive control over approval of all management level employees at every JIMMY JOHN'S® Sandwich Shop. Specifically, Defendant JJF:

a.      Requires every JIMMY JOHN'S® Sandwich Shop to employ at least one General Manager that Defendant JJF has trained, certified and otherwise approved;

b.      Requires all ASMs to work at least 50 hours per week;

c.      Requires every JIMMY JOHN'S® Sandwich Shop to employ at least two other management employees that have been trained, certified and otherwise approved by Defendant JJF;

d.      In order to be trained by Defendant JJF, the employee must pass a pre-training enrollment test and otherwise be approved by Defendant JJF;

e.      Defendant JJF requires employees at each of its JIMMY JOHN'S® Sandwich Shops to become certified (and approved as an employee by Defendant JJF)  in various tasks such as "Certified Mayo Master" or "Certified Slicing Master";

f.      Defendant JJF dictates the job responsibilities and working hours required by all management level employees;

48

    g.      Requires all management level employees to agree to submit to drug tests given by Defendant JJF during the training sessions; and

    h.      Otherwise controls all job training, job duties, job responsibilities and work performed, approval for position, oversight, auditing and termination rights.

162.    **Employee Control:** Defendant JJF is the employer of every employee at every JIMMY JOHN'S® Sandwich Shop and maintains substantial control over all aspects of employment for every employee working at a JIMMY JOHN'S® Sandwich Shop, including but not limited to:

    a.      Defining all job titles and positions;

    b.      Authoring and revising all job descriptions for positions;

    c.      Directing and defining every job duty, including such things as how quickly employees must be able to make a sandwich (30 seconds), get a sandwich order out the door for delivery (four minutes) or make a delivery;

    d.      Determining whether each job position is hourly or exempt;

    e.      Setting labor budgets and staffing levels;

    f.      Mandating employee qualifications, training, schedules, dress, and appearance;

    g.      Ability to terminate management and other employees it does not deem qualified or appropriate for the position;

    h.      Prohibiting employees' internet and social media use in connection with their employment;

      i.      Prohibiting employees from video or audio recordings of any type while at work; and

      j.      Requiring that Defendant JJF approve and certify every JIMMY JOHN'S® Sandwich Shop management employee.

163.   **Employee "In Store Personal Grooming and Uniform Dress Code":** Defendant JJF micromanages employees at every JIMMY JOHN'S® Sandwich Shop by mandating every employee sign and agree to comply with, and providing to each in their Orientation Folder, Defendant JJF's standard "In Store Personal Grooming and Uniform Dress Code" which requires, among a list of other things, that all employees arrive at work "freshly showered/clean shaven," and "only one plain earring per ear" and "one plain ring per hand." The list of detailed requirements, many of which are arguably intrusive and unnecessary, is extensive and the plain language of the document states, "All stores must comply with the current and any future specifications." The document is copyrighted to Defendant JJF.

164.   All employment-related contracts and documents executed by Plaintiffs, and members of the class, are created by, copyrighted by, uniform and mandated to be used by all employees, at all JIMMY JOHN'S® Sandwich Shops, by Defendant JJF.

165.   **Control of Employees Evidenced In Confidential Operations Manual:** Defendant JJF's "Confidential Operations Manual" sets forth requirements covering every aspect of employment, including but not limited to sections setting forth: Rules for Employment, Additional Rules for Management, Controlling Labor Costs, Importance of Maintaining Minimum Staffing Levels, Recruiting the Ideal Jimmy John's Employee, Job Descriptions, Examples of Fair and Legal Interviewing, Group Interview, Individual Interview, Staffing, How to Determine Staffing Levels, Using the Schedule Writer, Scheduling and Using a Block

Schedule, Orientation Folder, Training Employees, Training Your Staff using the 5 Step Hourly Training Process, Evaluating, Disciplining, and Terminating Employees, Employee Reviews, Disciplining Employees Using the Three-Tier Approach, The Big 3, Core Components, and Company Culture. It further provides a copy of the uniform "Orientation Folder" and the following documents that must be given to employees: (a) Rules for Employment, (b) Additional Rules for Management, (c) In-store Personal Grooming and Uniform Dress Code, (d) Employee Confidentiality and Non-Competition Agreement, (e) Jimmy John's Driver Agreement and Eligibility Form, (f) W-4, (g) I-9 and menu cheat sheet. Then, there are other uniform forms that are to be used as appropriate, such as: Jimmy John's Application for Employment, Sub Screen 1, Sub Screen 2, Disciplinary Action Report, Employee Separation Form, In-shopper Training Chart, Driver Training Chart, and Manager Training Chart.

166.    Defendant JJF maintains a website for JIMMY JOHN'S® Sandwich Shops at https://www.jimmyjohns.com/.  Defendant JJF does not permit franchisees to maintain a website for their individual JIMMY JOHN'S® Sandwich Shops, use the Jimmy John's name or trademarks in connection with any domain names, homepage, electronic address or any social media, such as use of social media, such as YouTube, personal blogs, Facebook and MySpace, professional networks like LinkedIn, liveblogging tools like Twitter, virtual worlds, file, audio and video-sharing sites, or any other similar social networking or media sites or tools. Rather, any website presence must be limited to that which is controlled and operated by Defendant JJF.

167.    Defendant JJF processes online orders for all of its approximately 2,000 JIMMY JOHN'S® Sandwich Shops nationwide. Defendant JJF has a webpage dedicated to online customer order placement for online ordering and payment at any of its approximately 2,000 stores                                                                                                                    nationwide.

https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20j

ohn's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+-

+Enhanced#/.  Franchisees are not permitted to set up their own online order processing system.

168.   Defendant JJF offers customers the ability to sign up for a customer account online and place orders for food and other merchandise. https://online.jimmyjohns.com/?utm_source=google&utm_medium=cpc&utm_term=jimmy%20j

ohn's%20locations&utm_content=37437445430&utm_campaign=JJ+Brand+Group+5+-

+Enhanced#/register/accountinfo.  Once a customer establishes an account, the customer can order from any JIMMY JOHN'S® Sandwich Shop nationwide.  Franchisees are not permitted to offer online customer accounts or keep an online database of loyal customers.

169.   Defendant JJF maintains a blog at http://www.freakyfast.com/.  However, franchisees are not permitted to maintain blogs related to their stores.

170.   **Maintains Access and Control Over Operator/Franchisee Bank Accounts:** Defendant JJF maintains control and full access to its franchisees' business checking accounts, as set forth in pertinent part in the JJF Franchise Agreement: "Before the RESTAURANT opens, you agree to sign and deliver to us the documents we require to authorize us to debit your business checking account automatically for the Royalty, Fund contributions (defined below), and other amounts due under this Agreement and for your purchases of Trade Secret Food Products, Branded Products, Permitted Brands, and other items from us and/or our affiliates (the "Electronic Depository Transfer Account" or "EDTA"). *We may auto-debit all fees and payments you owe us and our affiliates. We will debit the EDTA for these amounts on their due dates. Funds must be available in the EDTA to cover our withdrawals, and you must report your Gross Sales as we require.*" (Emphasis added).

52

171. **Intellectual Property and Creative Rights:** Defendant JJF retains all rights to any and all ideas, concepts, techniques, or materials (created by Operator/Franchisee or any employee of a JIMMY JOHN'S® Sandwich Shop) concerning a JIMMY JOHN'S® Sandwich Shop, regardless of whether or not it is protectable intellectual property. Defendant JJF further requires prompt disclosure, assignment of all rights and acknowledgement that it is their sole and exclusive property. Defendant JJF does not share any benefit or ownership interest with the Operator/Franchisee.

172. **Mandating English Verbal and Written Fluency:** Defendant JJF mandates that every employee that could come in contact with a customer (essentially every employee), at any of its JIMMY JOHN'S® Sandwich Shops, be able to read, write and speak fluent English and retains the exclusive right to determine fluency through administration of Defendant JJF's own designated English fluency test, which can be administered by Defendant JJF or a third party. Defendant JJF retains the exclusive right to decide what constitutes passing fluency and, therefore, whether each employee can be employed at a JIMMY JOHN'S® Sandwich Shop. Defendant JJF mandates Operator/Franchisee compliance with this requirement (in writing), despite the fact that the requirement is overly broad by requiring English fluency in job positions where the duties and responsibilities do not require the employee to read, write and speak fluent English. It leaves no discretion to Operator/Franchisee and again retains ultimate control over employment decisions at all JIMMY JOHN'S® Sandwich Shops.

173. **Mandating Point-of-Sale System:** Defendant JJF requires that every JIMMY JOHN'S® Sandwich Shop utilize only the currently-approved point-of-sale system, which is currently provided by and proprietary to Signature Systems, Inc. Owner/Franchisee has no discretion in the point-of-sale system that is utilized.

53

174. **Mandating On-Line Ordering System**: Defendant JJF controls all aspects of the online ordering system that is utilized by every JIMMY JOHN'S® Sandwich Shop and only permits use of its approved online ordering system, which is currently provided by OrderTalk. Operator/Franchisee has no discretion in the online ordering system that is utilized.

175. **Mandating Back-of-Office Computers and Software:** Defendant JJF controls exactly what back-of-office computer systems must be used at each of its JIMMY JOHN'S® Sandwich Shops, requiring a Windows-compatible desktop computer, use of Windows 7 or 8 and use of Microsoft Excel 2010. Defendant JJF also provides in its Franchise Agreement that the Operator/Franchisee "(m)ust upgrade any computer-based system and/or obtain service and support as we require or as is necessary because of technological developments. There are no contractual limitations on the frequency and cost of this obligation." Operator/Franchisee has no discretion to use a different type of computer, operating system, or software.

176. **Mandating Ordering and Delivery Process:** Defendant JJF controls all aspects of the ordering and delivery process, including geographical delivery zone, delivery processes, timing of deliveries and accounting of deliveries, as set forth in part as follows in its Franchise Agreement with Operators/Franchisees:

　　　　a.　　"You must provide delivery services in compliance with our System Standards but only in the delivery area we specify for you (in an email or other communication) after you find the RESTAURANT's site. You acknowledge and understand that we may, at any time and from time to time, and for any or no reason, change the definition of the delivery area and, in particular, reduce its size. If we ever decide to do so, you agree, without any argument or disagreement, immediately to change the

54

delivery services that you provide and to deliver;" and

      b.    "Delivery and catering services (as provided in Subsection 1.D.), including your obligation to deliver Menu Items to customers in your delivery area only with your own employed delivery drivers in compliance *with our procedures and not through third-party food ordering, drop-off/catering, or delivery services or systems (such as TAKEOUT TAXI); delivery driver qualifications*; your obligation *not to use third-party food ordering systems (such as campusfood.com or diningin.com);* and your obligation to *ring up and account for (in the manner we specify)* delivery and catering charges not included in the price of Menu Items." (Emphasis added).

177.   **Control of Products and Services:**  Defendant JJF maintains exclusive control over all products and services that are offered at a JIMMY JOHN'S® Sandwich Shop. The Franchise Agreement explicitly prohibits Operator/Franchisee from offering to sell, or selling any products or performing any services, not authorized by Defendant JJF. Operators/Franchisees have absolutely no discretion or control over the products and services offered for sale at the JIMMY JOHN'S® Sandwich Shop.

178.   **Control of Pricing:** Defendant JJF establishes the pricing of all in-store items, as well as pricing methods and procedures for in-store, delivery, and on-line/electronic orders.

179.   **Mandating Hours and Days of Operation:** Defendant JJF sets the specific days and specific hours that each JIMMY JOHN'S® Sandwich Shop must be open for business and Defendant JJF approval is required for any deviation.

180.   **Mandating Handling Procedures for Customer Complaints:**  Defendant JJF

requires all of its franchisees to comply with the JJF customer complaint resolution procedures. Operators/Franchisees are not free to promulgate or utilize their own processes, techniques or discretion to deal with customers or resolve customer complaints.

181. **Mandated Payment Methods:** Defendant JJF dictates the terms and type of customer payment that every franchisee must accept at a JIMMY JOHN'S® Sandwich Shop from customers, such as requiring that credit and debit cards, other payment systems, and check verification services be accepted and prohibiting franchisees from imposing any minimum amount for the acceptance of any payment method.

182. **Mandated Bookkeeping, Accounting and Recordkeeping:** Defendant JJF controls and dictates the manner and methods for all recordkeeping, bookkeeping, data processing and accounting, including the systems, forms, formats, content and frequency of sales reports, financial performance reports, revenue reports, and other required reports.

183. **Mandated Use of Proprietary Software and Electronic Media:** Defendant JJF controls, determines and requires use of specific software and electronic media used in connection with a JIMMY JOHN'S® Sandwich Shop, all aspects of its franchisee system and its Intranet.

184. **Mandated Insurance Coverage and Terms/Conditions of Coverage:** Defendant JJF controls all aspects of insurance including not only the type of insurance and amounts of coverages required, but also the inclusion of additional covered entities, approval of the insurance contract language and specific provisions and conditions that are permissible/impermissible in the insurance contracts, the right to defend and the right to obtain insurance for the franchisee (and charge the franchisee for the insurance).

185. Numerous other oral and written materials from Defendant JJF establish

56

Defendant JJF's control over every aspect of the operations and existence of JIMMY JOHN'S® Sandwich Shops, from selection of employees, vetting of management employees, establishing all procedures, policies, rules and guidelines, auditing, remediating, establishing the basis for hiring, firing and being awarded bonuses or awards for all employees, retaining authority to terminate any employee, including its relationship with the Operator/Franchisee, and other such control and management sufficient to establish Defendant JJF as Plaintiffs', and the Class Members', employer and responsible for all wage violations and other claims arising out of Plaintiffs', and Class Members', said employment at a JIMMY JOHN'S® Sandwich Shop.

186.    Defendant JJF mandates that all JIMMY JOHN'S® Sandwich Shops utilize the same job titles, job positions, job descriptions, job classification, form employment documents, employment policies and practices.  Defendant JJF sets uniform job duties, job descriptions, job postings, etc., for all 2,000+ JIMMY JOHN'S® Sandwich Shops.

187.    At the direction of and pursuant to the policies of Defendant JJF, Defendants' General Managers ("GMs") are classified as "exempt" employees under the FLSA/state wage laws and are paid a salary. GMs are required to work at least 50 hours per week, in-shop. GMs have the primary managerial and supervisory responsibilities, such as hiring, firing, disciplining, setting the schedules, overseeing budgets, ordering, managing and directing employees, reporting, accounting, budgeting and other managerial/supervisory duties.

188.    At the direction of and pursuant to the policies of Defendant JJF, Defendants' ASMs are classified as "exempt" employees under the FLSA/IMWL and are paid a salary. ASMs have de minimis, limited administrative, managerial or supervisory duties. ASMs are required to work at least 50 or more hours per week, in-shop. ***More than*** 90% of ASMs' time worked is spent doing the same routine, manual labor as Defendants' hourly employees,

including, but not limited to, making sandwiches, baking bread, taking orders, and checking out customers at the register, stocking and cleaning, amongst other non-exempt labor tasks.

189.    In performing their primary duties, Plaintiffs and members of the FLSA Collective/IMWL Class were not involved in planning Defendants' long or short term business objectives; could not formulate, affect, implement or interpret Defendants' management policies or operating practices; did not carry out major assignments that affected Defendants' business operations; did not have authority to commit Defendants in matters of significant financial impact; and could not waive or deviate from Defendants' established policies or procedures without prior approval.

190.    Plaintiffs' and the Collective/Class's primary duties were manual in nature.

191.    The performance of manual labor duties occupied the majority and almost all of Plaintiffs' and the Collective/Class' working hours including overtime and non-overtime hours.

192.    The overwhelming majority of the time, ASMs are working simultaneously with a GM in-shop, whom have the primary managerial/supervisory duties and direct the work of all other employees. In the rare event that an ASM is in the restaurant without a GM, the ASM still performs the same work as the hourly employees and the hourly employees have already been told, directed and trained on what to do by the GMs. There is little to no variation in the routine duties of the hourly employees and they are directed by the GMs.

193.    Plaintiffs, and ASMs at all JIMMY JOHN'S® Sandwich Shops, are required to work at least 50  hours per week without being paid minimum wages or overtime for any hours worked in excess of 40 hours.

194.    Plaintiff BRUNNER makes a salary of $500 per week and has worked at least 50 hours per week every week that she has been employed as an ASM for Defendants, as required

by Defendants.

195. Plaintiff TUROWSKI was paid a salary of $500 per week and worked at least 50 hours every week that she was employed as an ASM for Defendants, as required by Defendants.

196. Plaintiff WHITON was paid a salary of $500 per week and worked at least 50 hours every week that he was employed as an ASM for Defendants, as required by Defendants.

197. During the relevant period of time, Defendants employed thousands of salaried ASM employees around the country with job duties and descriptions that are, for all intents and purposes, identical to Plaintiffs'. Plaintiffs and other similarly situated ASMs report directly to GMs, in who resides the real management/administrative authority of the uniformly and systemically operated JIMMY JOHN'S® Sandwich Shops.

198. Defendant JJF exercises significant managerial control over all JIMMY JOHN'S® Sandwich Shops, both wholly-owned and franchise restaurants. Defendant JJF has operating and management policies and procedures that apply uniformly to all restaurants nationwide. No matter the size of the restaurant or the location, every detail of how the restaurant is managed and run is uniformly fixed, mandated and controlled by Defendants through JJF's policies, directives and mandated procedures. Defendant JJF manages and operates, both contractually and in practice, all JIMMY JOHN'S® Sandwich Shops and makes routine, monthly on-site visits to all JIMMY JOHN'S® Sandwich Shops, both wholly-owned and franchises, to make sure that all policies and procedures as set forth by, established by and mandated by Defendant JJF, are being implemented and followed.

199. Defendant JJF created and mandates all of the job positions and exemption classifications for all of the JIMMY JOHN'S® Sandwich Shops in an effort to maintain management control and continuity amongst the brand and company.

200. Defendant JJF exercises significant control over the management of all JIMMY JOHN'S® Sandwich Shops by training on, monitoring closely and mandating policies, procedures and practices related to payroll, employee hours and labor budgets.

201. Defendant JJF is fully aware that ASMs are paid on a salary, when they should be paid on an hourly basis.

202. In fact, Defendant JJF, through its extensive training and regular oversight of each JIMMY JOHN'S® Sandwich Shop, and directions provided to each JIMMY JOHN'S® Sandwich Shop from its "Business Coach," provides formulas and metrics for determining labor budgets. These formulas and metrics provide for ASMs to work long hours and to be paid on a salaried basis.

203. All ASMs nationwide are classified as "exempt" pursuant to Defendant JJF's management policies, practices and mandates.

204. All ASMs nationwide have the same job description and perform the same duties pursuant to Defendant JJF's management policies, practices and mandates.

**E. ASMs Are Not Exempt Under the FLSA or IMWL**

205. At all times herein set forth, Plaintiffs and members of the Class and Collectives are "employees" of Defendants within the definition of the FLSA and the IMWL.

206. At all times herein set forth, each Defendant is an "employer" within the definition of the FLSA and IMWL.

207. The FLSA and IMWL have certain exemptions from their overtime requirement including exemptions for bona fide executive or administrative employees. 29 U.S.C. § 213(a)(1); 820 ILCS 105/4a(2)(E). Defendants' ASMs do not qualify as bona fide executives or administrative employees under the FLSA or IMWL. *Id.*

60

208. To establish an employee is a bona fide executive employee and exempt from being paid overtime compensation under the FLSA or IMWL, an employer must show: (1) the employee is compensated on a salary basis at a rate of not less than $455 per week; (2) the employee's *primary* duty is management of the enterprise in which the employee is employed or of a customarily recognized department or subdivision; (3) the employee *customarily and regularly* directs the work of 2 or more other employees; and (4) the employee has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or any other change of status of other employees are given particular weight. 29 C.F.R. § 541.100(1)(2006).

209. To establish an employee is a bona fide administrative employee and exempt from being paid overtime compensation under the FLSA, IMWL and other state wage laws, an employer must show: (1) that the employee's primary duty is the performance of work directly related to the management or general business operations of the employer or the employer's customers; and (2) that the employee's primary duty includes the exercise of discretion and independent judgment with respect to matters of significance. 29 C.F.R. § 541.201(a); 29 C.F.R. § 541.202(a).

210. Neither Plaintiffs nor any other ASM qualifies as either an executive or administrator under the exemptions set forth in the Code of Federal Regulations, FLSA or IMWL.

211. The frequency and time spent on "exempt" duties and the primary duties done by Plaintiffs and all other ASMs do not qualify them as exempt from receiving overtime compensation as management, an executive or under any other exemption. Therefore,

61

Defendants are not entitled to classify Plaintiffs or any other ASMs as "exempt", and are required to pay them minimum wages and overtime compensation.

**F.      Time Spent On Exempt v. Non-Exempt Tasks**

212.    ASMs spend the majority of their time on tasks that qualify them as "non-exempt" employees, rather than "exempt" employees.  Plaintiffs' and other ASMs' primary duties are not managerial or administrative in nature.  Plaintiffs and other ASMs customarily and regularly spend *more than* 90% of their time performing non-exempt duties, including but not limited to the following enumerated duties:

  a.      Taking orders;

  b.      Checking out customers at the register;

  c.      Making sandwiches;

  d.      Slicing meat;

  e.      Baking bread;

  f.      Bagging orders;

  g.      Opening/closing restaurant;

  h.      Answering telephone calls;

  i.      Identifying and reacting to in-restaurant repairs;

  j.      Stocking;

  k.      Cleaning; and

  l.      Maintaining the restaurant: facing/adjusting merchandise to face front of shelf, dusting, vacuuming, window cleaning, cleaning restrooms, fixtures, restaurant exterior, sweeping lots of trash, etc.

213.    During both overtime and non-overtime hours, Plaintiffs and the Collective/Class

performed the manual labor tasks identified in the preceding paragraph.

214. While Plaintiffs' and other ASMs' duties may slightly vary, insignificantly, based on the location where they work, the duties are substantially the same. Moreover, regardless of the location of Plaintiffs and other ASMs, they all spend *more than* 90% of their time performing non-exempt duties, as alleged herein.

215. Plaintiffs' and other ASMs' primary duties are composed of non-exempt duties which are more important to Defendants' business model than the few de minimis, *purportedly* exempt duties that they occasionally do.

216. Few, if any, of the duties of ASMs qualify as management or administrative duties under federal and state law because they do not relate to the management of general business operations. More than 90% of the time, ASMs perform duties consisting of carrying out the day-to-day affairs of the restaurant and do not require the exercise of discretion and/or independent judgment on matters of significance.

217. The few de minimis and *purportedly* exempt tasks ASMs may occasionally do are strictly controlled, outlined and pre-arranged as to how they are to be executed by Defendants and are closely scrutinized and supervised by GMs, Area Managers and corporate level employees of Defendants, such as the "Business Coach," to ensure compliance. ASMs are not allowed to perform any "administrative" or "executive" tasks outside of the strict limitations and confines set forth by Defendants and/or GM supervision.

218. The overwhelming majority of the job duties assigned to ASMs are also assigned to hourly employees.

219. Defendants intentionally and knowingly use ASMs to perform significant amounts of manual labor and other non-exempt functions, in order to work them long hours each

63

week and limit the payroll budget of restaurants, and to increase the profitability of the restaurants and franchises. It is key to Defendants' business model that ASMs perform non-exempt tasks and duties, without receiving minimum wages or overtime compensation for hours worked in excess of 40 hours per week.

220. Defendants' violations are and continue to be willful and intentional in that they have known all along what federal and state wage laws require and that the primary duties and tasks of its salaried ASMs are such that they are not exempt from being paid overtime.

221. As a result of Defendants' willful violations of the FLSA and the IMWL, Plaintiffs and all other similarly situated ASMs have suffered damages in that they have not received proper minimum wages, wages and overtime compensation in accordance with the FLSA or IMWL.

### G. Illinois Choice of Law

222. Illinois is the law that applies to all of the Claims brought by Plaintiffs individually, and on behalf of the Classes.

223. All of the conduct giving rise to the claims alleged herein occurred primarily within the State of Illinois.

224. All Defendants are Illinois residents, and Defendant JJF makes all relevant decisions, develops and implements all relevant policies, procedures and operational rules, conducts all training, makes all relevant decisions related to employment and otherwise conducts all or most of their business operations from Illinois.

225. Defendants designate Illinois law in all, or most, of their contracts as the choice of law.

226. All other factors relevant to choice of law favor application of Illinois substantive

law.

## VII.   LEGAL CLAIMS

### FIRST CLAIM FOR RELIEF
### (Violations of the FLSA)
### Plaintiffs v. Defendant JJF

227.   Plaintiffs, individually and on behalf of the Nationwide FLSA Collective, re-allege and incorporate by reference all the preceding paragraphs, to the extent applicable herein and specifically do not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

228.   Plaintiffs bring their First Claim individually, and on behalf of the Nationwide FLSA Collective, against Defendant JJF.

229.   For purposes of this Claim, any references to Plaintiffs and Defendant refer to all Plaintiffs and only the Defendant that are Parties to this Claim.

230.   Plaintiffs bring their individual claims for violations of the FLSA, as set forth herein, related to their respective positions as ASM, as well as for any such violations causing damages in any other positions they held, such as in-shopper or driver.

231.   Plaintiffs bring the Collective claims solely for violations of the FLSA, and damages sustained, by similarly situated ASMs, as set forth in the Nationwide FLSA Collective definition.

232.   At all relevant times, Plaintiffs and members of the FLSA Collective were engaged in commerce and/or the production of goods for commerce within the meaning of 20 U.S.C §§ 206(a) and 207(a).

233.   At all relevant times, Defendant was an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d),

206(a) and 207(a).

234.     At all relevant times, Plaintiffs and members of the FLSA Collective were employees within the meaning of the FLSA in 29 U.S.C. §§ 203(e) and 207(a).

235.     At all times relevant, Defendant employed Plaintiffs and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

236.     Defendant engaged in a wide-spread pattern, policy and practice of violating the FLSA, as detailed in this ACC.

237.     Defendant failed to keep accurate records of time worked by Plaintiffs and members of the National FLSA Collective.

238.     Defendant did not make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and members of the FLSA Collective.

239.     Defendant's violations of the FLSA, as described in this ACC, have and continue to be willful and intentional, thus applying a three-year statute of limitations to Defendant's violations, pursuant to 29 U.S.C. § 255.

240.     As a result of Defendant's willful and knowing violations of the FLSA, Plaintiffs and members of the FLSA Collective, who opt into this litigation, are entitled to recover wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq.*

**SECOND CLAIM FOR RELIEF**
**(Violations of the IMWL)**
**<u>Plaintiffs v. Defendant JJF</u>**

241.     Plaintiffs, individually and on behalf of the Illinois IMWL Class, re-allege and incorporate by reference all the preceding paragraphs, to the extent applicable herein and specifically do not re-allege any allegations that are not relevant to or inconsistent with this

Claim, as if fully set forth herein.

242.     Plaintiffs bring their Second Claim individually, and on behalf of the Illinois IMWL Class against Defendant JJF.

243.     For purposes of this Claim, any references to Plaintiffs and Defendant refer to all Plaintiffs and only the Defendant that are Parties to this Claim.

244.     Illinois Law applies to all ASMs and employees nationwide.

245.     Plaintiffs each bring their individual claim for violations of the IMWL, as set forth herein, related to their position as ASM as well as for any such violations causing them damages in any other positions in which they were employed by Defendant, such as an in-shopper or driver.

246.     Plaintiffs bring the Class claims solely for violations and damages sustained under the IMWL by similarly situated ASMs, as set forth in the Illinois IMWL Class definition.

247.     At all times herein set forth, Plaintiffs are/were an "employee" within the definition of the IMWL. 820 ILCS 105/3(c); 820 ILCS 115/2.

248.     At all times herein set forth, Defendant is/was an "employer" within the definition of the IMWL. 820 ILCS 105/3(c); 820 ILCS 115/13.

249.     The IMWL requires an employer, such as Defendant, to compensate employees minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

250.     The IMWL requires an employer, such as Defendant, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

67

251.    During the Class Period, Plaintiffs and members of the Class did not fall under any of the exemptions provided by the IMWL. 820 ILCS 105/1 *et seq.*; 820 ILCS 115/1 *et seq.*

252.    Defendant willfully, intentionally and/or knowingly improperly classified Plaintiffs and members of the Class as "exempt" employees.

253.    Plaintiffs and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL.

254.    Defendant's failure to comply with the IMWL was reckless and/or willful.

255.    Defendant failed to keep accurate records of time worked by Plaintiffs and members of the Class.

256.    Defendant intentionally and willfully failed and/or refused to pay Plaintiffs and members of the Class minimum wages and overtime compensation by violating the IMWL, including but not limited to improperly misclassifying Plaintiffs and all ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employees' regular rate of pay, for all work performed in excess of 40 hours per week.

257.    Defendant's failure to comply with Illinois law was reckless and/or willful.

258.    Based on the foregoing, Plaintiffs individually, and members of the Class, are entitled to recover all unpaid wages, minimum wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant to § 12(a) of the IMWL. 820 ILCS 105/12.

**THIRD CLAIM FOR RELIEF**
**(Violations of the FLSA)**
**Plaintiffs v. Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON**

259. Plaintiffs BRUNNER, TUROWSKI and WHITON, individually and on behalf of The Franchisee Collective, re-allege and incorporate by reference all the preceding paragraphs, to the extent applicable herein and specifically do not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

260. Plaintiffs BRUNNER, TUROWSKI and WHITON bring this Third Claim individually, and on behalf of The Franchisee Collective, against Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of The FLSA Franchisee Defendant Class.

261. For purposes of this Claim, any references to Plaintiffs and Defendants refer to the Plaintiffs and Defendants that are Parties to this Claim.

262. Plaintiffs brings their individual claims for violations of the FLSA, as set forth herein, related to their positions as ASMs as well as for any such violations causing them damages in any other positions they held, such as in-shopper or driver.

263. Plaintiffs bring the Collective claims solely for violations of the FLSA and damages sustained by similarly situated ASMs, as set forth in the Collective definition.

264. At all relevant times, Plaintiffs, and members of the FLSA Collective, were engaged in commerce and/or the production of goods for commerce within the meaning of 29 U.S.C. §§ 206(a) and 207(a).

265. At all relevant times, Defendants were each an employer engaged in commerce and/or the production of goods for commerce within the meaning of the FLSA in 29 U.S.C. §§ 203(d), 206(a) and 207(a).

266. At all relevant times, Plaintiffs and members of the FLSA Collective were employees within the meaning of the FLSA in 29 U.S.C. §§ 203(e) and 207(a).

69

267.     At all relevant times, Defendants employed Plaintiffs and members of the FLSA Collective as an employer and/or joint employer and/or single employer.

268.     Defendants engaged in a wide-spread pattern, policy and practice of violating the FLSA, as detailed in this ACC.

269.     Defendants failed to keep accurate records of time worked by Plaintiffs and members of the FLSA Collective.

270.     Defendants did not make a good faith effort to comply with the FLSA with respect to compensating Plaintiffs and members of the FLSA Collective.

271.     Defendants' violations of the FLSA, as described in this ACC, have and continue to be willful and intentional, thus applying a three-year statute of limitations to Defendants' violations, pursuant to 29 U.S.C. § 255.

272.     As a result of Defendants' willful and knowing violations of the FLSA, Plaintiffs, and members of the FLSA Collective who opt into this litigation, are entitled to recover unpaid wages and overtime to be determined at trial, liquidated damages, prejudgment interest, attorneys' fees, costs and other compensation under the FLSA, 29 U.S.C. §§ 201 *et seq*.

**FOURTH CLAIM FOR RELIEF**
**(Violations of the IMWL)**
**<u>Plaintiffs v. Defendant JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and</u>**
**<u>BROOKE SEVERSON</u>**

273.     Plaintiffs BRUNNER, TUROWSKI and WHITON, individually and on behalf of The Illinois Franchisee IMWL Class, re-allege and incorporate by reference all the preceding paragraphs, to the extent applicable herein and specifically do not re-allege any allegations that are not relevant to or inconsistent with this Claim, as if fully set forth herein.

274.     Plaintiffs BRUNNER, TUROWSKI and WHITON bring this Fourth Claim

70

individually, and on behalf of The Illinois Franchisee IMWL Class, against Defendants JS FORT, FORT, JJ SEVERSON, TODD SEVERSON and BROOKE SEVERSON, individually and as representatives of The IMWL Franchisee Defendant Class.

275.    For purposes of this Claim, any references to Plaintiffs and Defendants refer to the Plaintiffs and Defendants that are Parties to this Claim.

276.    Plaintiffs bring their individual claims for violations of the IMWL, as set forth herein, related to their positions as ASMs as well as for any such violations causing them damages in any other positions they held, such as in-shopper, driver, etc.

277.    Plaintiffs bring the class claims solely for violations and damages sustained by similarly situated ASMs, as set forth in the class definition.

278.    At all times herein set forth, Plaintiffs and members of the Class are/were an "employee" within the definition of Illinois 820 ILCS 105/3(c).

279.    At all times herein set forth, Defendants are/were an "employer" within the definition of Illinois and other state wage laws. 820 ILCS 105/3(c).

280.    The IMWL requires an employer, such as Defendants, to compensate employees, minimum wages, wages for all hours worked and overtime for all hours worked in excess of 40 hours per week.

281.    The IMWL requires an employer, such as Defendants, to compensate employees for all hours worked in excess of 40 hours per week, at a rate of one-and-a-half times the employee's regular rate of pay, unless the employee is classified as exempt from receiving overtime compensation.

282.    During the Class Period, Plaintiffs and members of the Class did not fall under any of the exemptions provided by the IMWL. 820 ILCS 105/1 *et seq*.

71

283.     Defendants willfully, intentionally and/or knowingly improperly classified Plaintiff and members of the Class as "exempt" employees.

284.     Plaintiffs and members of the Class regularly worked in excess of 40 hours per week without receiving compensation for those hours, in violation of the IMWL, as alleged herein.

285.     Defendants' failure to comply with the IMWL was reckless and/or willful.

286.     Defendants failed to keep accurate records of time worked by Plaintiffs and members of the Class.

287.     Defendants did not make a good faith effort to comply with the IMWL with respect to compensating Plaintiffs and members of the Class minimum wages and/or overtime compensation.

288.     Defendants intentionally and willfully failed and/or refused to pay Plaintiffs and members of the Class minimum wages, wages and overtime compensation by violating the FLSA and IMWL, including but not limited to improperly misclassifying Plaintiffs and the Class of ASMs as "exempt" employees in order to work them long hours and avoid paying them minimum wages, wages and overtime compensation, at a rate of one-and-a-half times the employee's regular rate of pay, for all work performed in excess of 40 hours per week.

289.     Based on the foregoing, Plaintiffs individually, and members of the class, are entitled to recover all unpaid wages and overtime compensation, prejudgment interest, statutory penalties, attorneys' fees and costs and all other available remedies pursuant to § 12(a) of the IMWL. 820 ILCS 105/12.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated persons respectfully request the following relief:

a.   That this Court find that all the requirements for certification of a collective action under 29 U.S.C. § 216(b) have been satisfied and certify the collective action FLSA claims set forth in Plaintiffs' First Claim and Third Claim, including a Defendant class under Plaintiffs' Third Claim;

b.   That this Court find that all requirements of Rule 23 of the Federal Rules of Civil Procedure are satisfied and certify Plaintiffs' Second Claim and Fourth Claim as a class action under Rule 23(b)(1) and/or (b)(3) of the Federal Rules of Civil Procedure, including Defendant classes under Plaintiffs' Third and Fourth Claims;

c.   That Plaintiffs be appointed as representatives of the Classes and Collectives, as set forth herein;

d.   That Plaintiffs' counsel be appointed as Class Counsel;

e.   That Plaintiffs and members of the Classes and Collectives be awarded damages including unpaid wages and overtime compensation under the FLSA and IMWL;

f.   That Plaintiffs and members of the Classes and Collectives be awarded an additional and equal amount as liquidated and/or punitive damages under the FLSA and IMWL;

g.   Entry of an Order directing Defendants to supply the names, all known addresses and phone numbers of the similarly situated ASMs to Plaintiffs'

counsel so that Plaintiffs may be allowed to send out notice of the Class Action and FLSA Collective Action, or that the Court issue such notice, to all persons who are presently, or have been at any time during the past 10 years immediately preceding the filing of this suit, employed by Defendants as ASMs. Such notice shall inform them of the filing of this civil action, the nature of the action, and their right to join this lawsuit if they believe they were denied wages;

h.     Permanent Injunctive Relief directing Defendants to discontinue its practice of denying ASMs overtime pay;

i.     Award of pre-judgment and post-judgment interest, as provided by law;

j.     Award reasonable attorneys' fees and costs under the FLSA and IMWL; and

k.     Award any and all other appropriate relief as in law or equity may pertain.

## **JURY DEMAND**

Plaintiffs demand a trial by jury by all issues so triable.

Dated: <u>May 14, 2015</u>                    Respectfully submitted,

FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC

/s/Robert M. Foote

Robert M. Foote
Peter L. Currie
Kathleen C. Chavez
Kevin P. Noll
FOOTE, MEILKE, CHAVEZ & O'NEIL, LLC
10 West State Street, Suite #200
Geneva, Illinois 60134
(630) 232-7450

Myron M. Cherry
Jacie C. Zolna
Alexandra L. Nickow
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
(312) 372-2100

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 14, 2015, I electronically filed the foregoing document with the clerk of court for the U. S. District Court, Northern District of Illinois, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/Robert M. Foote