IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Jimmy John's Overtime Litigation | Case Nos.    14-CV-5509<br>15-CV-1681<br>15-CV-6010<br><br>Hon. Charles P. Kocoras<br><br>Magistrate Sidney I. Schenkier |

**SUMMARY OF PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
ON THE ISSUE OF JOINT EMPLOYMENT STATUS**

A.  **There is a genuine issue of material fact as to whether Jimmy John's jointly employed Plaintiffs by exercising control over their working conditions.**

Franchisor Jimmy John's exercises such comprehensive control over franchisee Assistant Store Managers' ("ASMs'") working conditions that, as a matter of economic reality, reasonable jurors could conclude that Jimmy John's is a "joint employer" who may be liable for the unpaid overtime claims Plaintiffs have brought under the Fair Labor Standards Act ("FLSA") should Plaintiffs prevail on the merits of their misclassification claims at trial. *See Moldenhauer v. Tazewell Pekin Consl. Communs. Ctr.,* 536 F.3d 640, 644 (7th Cir. 2008) (test is "exercise [of] control over the working conditions of the employee"); *Sec'y of Labor v. Lauritzen,* 835 F.2d 1529, 1538 (7th Cir. 1987) (focus of test is "economic reality"); *Vega v. Contract Cleaning Maint., Inc.,* 2004 U.S. Dist. LEXIS 20949, at *15-22 (N.D. Ill. Oct. 18, 2004) (applying economic reality test to question of control over working conditions); *Schneider v. Cornerstone Pints, Inc.,* 148 F. Supp. 3d, 690, 697 (N.D. Ill. 2015) ("In sum, the [joint employer] test is to look at all facts surrounding the defendant's supervision of the employee and determine whether the defendant exercised control and authority over the employee in a manner that caused the FLSA violation (at least in part)."). As such, Jimmy John's summary judgment motion must be denied. *See Antwerp v City of Peoria, Illinois,* 627 F.3d 295, 297 (7th Cir. 2010) (where "reasonable juror" could find in plaintiffs' favor, motion must be denied).

Jimmy John's motion ignores economic reality and improperly restricts its analysis to four old, artificial, and formalistic factors drawn from *Bonnette v. California Health and Welfare Agency,* 704 F.2d 1465, 1470 (9th Cir. 1983): hiring and firing, scheduling, paying, and keeping records. In *Moldenhauer,* 536 F.3d at 644, the Seventh Circuit said "it would be foolhardy to suggest that these are the *only* relevant factors, or even the most important." Other circuits have rejected the *Bonnette* factors as too narrow, *e.g., Solis v. Laurelbrook Sanitarium & Sch., Inc.,*

1

642 F.3d 518, 522 (6th Cir. 2011) (rejecting precise test in favor "a case-by-case basis upon the circumstances of the whole business activity"); *Zheng v. Liberty Appeal Co., Inc.,* 355 F.3d 61, 72 (2d Cir. 2003) (must consider "functional" control factors), including the Ninth Circuit itself, *see Torres-Lopez v. May,* 111 F.3d 633, 639-40 (9th Cir. 1997) (considering a dozen functional factors). This Court was unequivocal: "It is entirely possible for [a defendant] to be Plaintiffs' joint employer even though Plaintiffs do not allege that [the defendant] hired, fired, or paid them." *Vega* at *21-22; *see also Schneider* at 697 ("test is to look at all facts," not merely formal factors); *accord Salinas v. Commercial Interiors, Inc.,* 848 F.2d 125, 137 (4th Cir. 2017) (*Bonnette* factors "do[ ] not square" with FLSA's broad definition of "employ").

The near-universal rejection of the *Bonnette*-type factors reflects a proper inquiry into the economic reality of employees' working conditions: although hiring a worker, setting her schedule and rate of pay, and keeping some records about her may be a part of *formally* employing the worker, those are not the factors that really determine what she does on the job on a daily basis. To the contrary, the procedures, manuals, and checklists that define, direct, and circumscribe her job duties determine her economic reality—what she actually does on the job after she's been hired and scheduled and her paperwork has been filed away. In this case, what ASMs do day-in-and-day out is the product of *Jimmy John's* direction of store operations: Jimmy John's defines the work like of ASMs—what they do, how they do it, and when they do it. Franchisees may cut the paychecks, but Jimmy John's exercises control over working conditions.

Jimmy John's control is exercised through a comprehensive Operations Manual, mandatory checklists which choreograph store operations and ASM job duties, and policies and procedures which direct how the stores operate, down to minute details. These pervasive controls are enforced by corporate "Business Coaches" who act as *de facto* district managers,

and whose "suggestions" on how to operate, manage, and staff stores must be followed. *Cf. Olvera v. Bareburger Grp., LLC,* 73 F. Supp. 3d 201, 207 (S.D.N.Y. 2014) (denying franchisor putative joint employer's dispositive motion given indicia of operational control, including guidance on how to hire and train franchisee employees; requirements for franchise operations; retaining right to inspect franchises); *Ocampo v. 455 Hospitality LLC,* 2016 U.S. Dist. LEXIS 125928, at *1921 (S.D.N.Y. Sept. 15, 2016) (same).

This control is what is ultimately as issue in this case. Plaintiffs allege that ASMs were misclassified as "managers" exempt from the FLSA's overtime provision. Whether Plaintiffs were misclassified will turn on the work they did. Jimmy John's created and enforced corporate policies and procedures that defined that work. *See, e.g., Morgan v. Family Dollar Stores,* 551 F.2d 1233, 1258-85 (11th Cir. 2008) (evaluating such evidence in case affirming trial verdict for store managers on misclassification claims); *see also* 29 CFR §§ 541.2, 541.101-106. Thus, there is a genuine issue of material fact as to whether it was *Jimmy John's* control over ASMs' working condition that resulted in ASMs working in a manner they contend renders them non-exempt. *Cf. Schneider* at 697 (joint employer tests looks at whether defendant may have been responsible, at least in part, for the alleged FLSA violation).

**B.     Jimmy John's ignores the FLSA's expansive definition of employment, relying on inapposite case law regarding vicarious liability under other areas of law.**

The FLSA's definition of employment is "the broadest definition that has even been included in any one act." *U.S. v. Rosenwasser,* 323 U.S. 360, 363 n.3 (1945); *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992) ("striking breadth"); *see also Tony & Susan Alamo Found. v. Sec'y of Labor,* 471 U.S. 290, 296 (1985) (interpretation must be liberal in light of FLSA's remedial and humanitarian purposes). Jimmy John's does not use this definition, but imports various definitions of employer, employee, and employment gleaned from other areas of

law, mostly vicarious liability cases decided under agency principles. But the FLSA's definition of employee is broader than "traditional agency law principles" or other federal statutes. *Keller v. Miri Microsystems, LLC,* 781 F.3d 799, 804 (6th Cir. 2015). Thus, virtually every case on which Jimmy John's relies is irrelevant to this Court's analysis of the joint-employer issue.

**C.     The record demonstrates Jimmy John's extensive functional and operational control over the economic reality of ASMs' daily lives.**

Plaintiffs' memo sets forth extensive evidence – indeed, over 25 pages worth (*see* Pls. Br. at 12-38) – how Jimmy John's exercises substantial control over ASMs' working conditions, which we can only briefly summarize here: Jimmy John's Operations Manual governs how ASMs work: it is the final word on nearly every aspect of store operations, directing not only how to build sandwiches, but how to count the till, make bank deposits, organize receipts, and clean the store. The Operations Manual's daily "punchlists" cover each period of the day and itemize the to-do list for the store, mandating to extreme detail what must be done, how, and when. Jimmy John's also directed stores on the use of materials, supplies, machinery, tools, items to be stocked and sold, vendors and suppliers, and maintenance, as well as how to decorate, display and organize the store. And Jimmy John's required stores to use specific programs and software for time-keeping, point-of-sale, staffing, and scheduling. Through these written directives, Jimmy John's controlled and choreographed the work ASMs performed at almost every minute of every day, and also eviscerated any "managerial" authority ASMs could exercise. *See* Pls. Br. 12-18.

Jimmy John's control was enforced by its Business Coaches, who regularly audited and inspected the stores, and made detailed, explicit, and wide-ranging "suggestions"—which franchises were contractually obligated to follow in all respects. *See* Pls. Br. 18-30. Business Coaches did not merely enforce quality control; they issued directives on nearly every aspect of

store operations and demanded compliance through scoring and points systems, which Plaintiffs' expert concluded were clearly management practices. *Id.*

Jimmy John's also exercised control over human resource matters (*i.e.,* the *Bonnette* factors) by issuing Rules for Employment for franchise ASMs; requiring franchises to hire additional employees, including "certified managers"; providing "interview guides" that scripted hiring interviews; restricting the labor market through no-hire clauses; participating in the disciplinary and termination process of franchise workers; requiring certain levels of staffing in franchise stores; coordinating rates of pay; retaining the right to inspect franchise records; and training franchise workers. *See* Pls. Br. 30-38.

**D.     Jimmy John's *in terroram*, 'everybody-does-it' and 'brand protection' arguments must be rejected: they are without evidence or supporting authority.**

Jimmy John's claims that Plaintiffs are attacking the franchise model and a joint-employer finding in this case would spell doom for American franchising. This sky-is-falling defense is entirely inappropriate. *See Lauritzen,* 835 F.2d at 1538 ("gloomy predictions that application of the FLSA will have a devastating impact on [a defendant, or other businesses] do not relieve them from complying with the Act's provisions. In any event, that argument is one for the Congress, not the courts."). Moreover, Jimmy John's offer no reliable evidence comparing its degree of control over franchise workers to other franchisors. To the contrary, its own expert admits that some companies "cross the line" and exercise control as a joint employer. Jimmy John's expert also entirely dispels the Chicken Little myth, testifying that franchising is a resilient system that has adapted to major changes in law and technology before and will do so in the future. So too must its notion that the Lanham Act *compels* a franchisor to exercise pervasive operational controls in order to 'protect its brand.' No court has ever come close to holding such a thing. Therefore, Jimmy John's summary judgment motion must be denied.

5

Dated: June 29, 2017
Rye Brook, New York

Respectfully submitted,

*/s/* Seth R. Lesser
Seth R. Lesser

Co-Lead Counsel for Plaintiffs, the Collective, and the Putative Class

**KLAFTER OLSEN & LESSER LLP**
Seth R. Lesser (admitted pro hac vice)
Fran L. Rudich (admitted pro hac vice)
Christopher M. Timmel (admitted pro hac vice)
Two International Drive, Suite 350
Rye Brook, NY 10573
Telephone: (914) 934-9200

**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Michael N. Litrownik (admitted pro hac vice)
685 Third Avenue, 25th Floor
New York, NY 10017
Telephone: (212) 245-1000

**FOOTE, MIELKE, CHAVEZ & O'NEIL, LLC**
Kathleen C. Chavez
10 West State St., Suite #200
Geneva, IL 60134,
Telephone: (630) 232-7450

**SHAVITZ LAW GROUP, P.A.**
Gregg I. Shavitz (admitted pro hac vice)
Alan Quiles (admitted pro hac vice)
1515 S. Federal Highway
Boca Raton, FL 33432
Telephone: (561) 447-8888

**MYRON M. CHERRY & ASSOCIATES, LLC**
Myron M. Cherry
30 North LaSalle Street, Suite 2300
Chicago, IL 60602
Telephone: (630) 232-7450

**WERMAN SALAS P.C.**
Douglas M. Werman
Maureen A. Salas
77 West Washington Street, Suite 1402
Chicago, IL 60602

Telephone: (312) 419-1008

**LANDSKRONER GRIECO MERRIMAN LLC**
Drew Legando (admitted pro hac vice)
Jack Landskroner (admitted pro hac vice)
1360 West 9th Street, Suite 200
Cleveland, OH 44113
Telephone: (216) 522-9000

Attorneys for the Plaintiffs, the Collective, and the Putative Class