**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| In Re: | Case Nos. 14-CV-5509, 15-CV-1681 & 15-CV-6010 |
| Jimmy John's Overtime Litigation | Honorable Charles P. Kocoras |
| | Magistrate Heather K. McShain |

**MEMORANDUM OF LAW IN SUPPORT OF JOINT MOTION FOR
APPROVAL OF COLLECTIVE ACTION SETTLEMENT AGREEMENT**

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND.......................................................... 2

OVERVIEW OF SETTLEMENT AGREEMENT TERMS ............................................... 5

    A.    The Proposed Collective Action Members And Collective Action Period ................. 5

    B.    Settlement Amount And Payments To Collective Action Members ........................... 6

    C.    Release Of Claims....................................................................................................... 6

    D.    Settlement Administration .......................................................................................... 7

    E.    Notice Of Settlement.................................................................................................. 7

    F.    Extra Procedural Protections By Allowing Opt-In Plaintiffs The Right To
            Object And Opt Out Of The Settlement .................................................................... 7

    G.    Service Awards ........................................................................................................... 9

    H.    Attorneys' Fees And Costs ......................................................................................... 9

ARGUMENT ....................................................................................................................... 10

    I.    LEGAL STANDARD................................................................................................ 10

    II.    THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED
          LITIGATION .......................................................................................................... 11

    III.    THE SETTLEMENT AGREEMENT REFLECTS A FAIR AND
          REASONABLE RESOLUTION OF A BONA FIDE DISPUTE ............................. 11

          1.    A Bona Fide Dispute Between The Parties Existed Over
                 Defendant's "Employer" Status................................................................. 11

          2.    The Settlement Agreement Is Fair And Reasonable................................. 13

    IV.    NAMED PLAINTIFFS WERE CRITICAL TO THE RESOLUTION OF THE
          CLAIMS AND ARE ENTITLED TO MODEST SERVICE AWARDS.................. 20

    V.    COLLECTIVE ACTION LEAD  COUNSEL'S DISCOUNTED
          ATTORNEY'S FEES AND COSTS SHOULD BE APPROVED............................. 21

CONCLUSION.................................................................................................................... 22

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Walgreen Co.*,
   No. 14-CV-1208-JPS, 2015 WL 4067752 (E.D. Wis. July 2, 2015)......................................10

*Bainter v. Akram Investments, LLC*,
   No. 17-CV-7064, 2018 WL 4943884 (N.D. Ill. Oct. 9, 2018) .................................................8

*In Re BankAmerica Corp. Sec. Litig.*,
   210 F.R.D. 694 (E.D. Mo. 2002) ...........................................................................................15

*Bozak v. FedEx Ground Package Sys., Inc.*,
   No. 11-CV-738, 2014 WL 3778211 (D. Conn. July 31, 2014) .................................................8

*Brewer v. Molina Healthcare, Inc.*,
   No. 16-CV-09523, 2018 WL 2966956 (N.D. Ill. June 12, 2018)..............................................8

*Briggs v. PNC Fin. Servs. Group, Inc.*,
   No. 15-CV-10447, 2016 WL 7018566 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.)..............8, 15, 20

*Brunner, et al. v. Jimmy John's, LLC, et al.*,
   No. 14-CV-5509 ....................................................................................................................2, 3

*Burkholder v. City of Ft. Wayne*,
   750 F. Supp. 2d 990 (N.D. Ind. 2010) ...................................................................................10

*Burns v. Respite Care/Care in the Home, Inc.*,
   No. 17-CV-00971 (N.D. Ill. Mar. 1, 2018)..............................................................................8

*Carr v. Bob Evans Farms, Inc.*,
   No. 1:17-CV-1875, 2018 WL 7508650 (N.D. Ohio July 27, 2018) ..........................................8

*Castillo v. Noodles & Co.*,
   No. 16-CV-03036, 2016 WL 7451626 (N.D. Ill. Dec. 23, 2016)...................................7, 8, 20

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) ...............................................................................................20

*Day v. NuCO2 Mgmt., LLC*,
   No. 18-CV-02088, 2018 WL 2473472 (N.D. Ill. May 18, 2018)..............................................8

*Fernandez v. Victoria Secret Stores, LLC*,
   No. 08-CV-04149, 2008 WL 8150856 (C.D. Cal. July 21, 2008)...........................................18

*Furman v. At Home Stores, LLC*,
No. 16-CV-08190, 2017 WL 1730995 (N.D. Ill. May 1, 2017) ................................................8

*Genesis Healthcare Corp. v. Symczyk*,
133 S. Ct. 1523 (2013) ..............................................................................................................7

*Great Neck Capital Appreciation Inv. P'Ship., LLP v. PriceWaterhouseCoopers, LLP*,
212 F.R.D. 400 (E.D. Wis. 2002) ............................................................................................14

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
842 F.3d 215 (3d Cir. 2016)........................................................................................................9

*Hart v. RCI Hosp. Holdings, Inc.*,
No. 09-CV-3043 PAE, 2015 WL 5577713 (S.D.N.Y. Sept. 22, 2015) ...................................20

*Heuberger v. Smith*,
No. 3:16-CV-386 JD, 2019 WL 3030312 (N.D. Ind. Jan. 4, 2019) .........................................8

*Johnson v. Ashley Furniture Indus.*,
No. 13-CV-2445, 2016 WL 866957 (S.D. Cal. Mar. 7, 2016) ................................................18

*Knox v. Jones Grp.*,
No. 15-CV-1738, 2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) ...........................................20

*Koszyk v. Country Fin.*,
No. 16-CV-3571, 2016 WL 5109196 (N.D. Ill. Sept. 16, 2016) ............................................20

*Lucas v. Vee Pak, Inc.*,
No. 12-CV-09672, 2017 WL 6733688 (N.D. Ill. Dec. 20, 2017)...........................................14

*Lukas v. Advocate*,
No. 1:14-CV-2740, D.E. 150 (N.D. Ill. June 29, 2016)..........................................................20

*Lynn's Food Stores, Inc. v. United States*,
679 F.2d 1350 (11th Cir. 1982) .................................................................................10, 13, 14

*Moore v. Ackerman Inv. Co.*,
No. 07-CV-3058, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009).............................................8

*Parker v. Jekyll & Hyde Entm't Holdings, L.L.C.*,
No. 08-CV-7670, 2010 WL 532960 (S.D.N.Y. Feb 9, 2010)..................................................20

*Puglisi v. TD Bank, N.A.*,
No. 13-CV-637 GRB, 2015 WL 4608655 (E.D.N.Y. July 30, 2015)......................................20

*Reyes v. Buddha-Bar NYC*,
No. 08-CV-2494, 2009 WL 5841177 (S.D.N.Y. May 28, 2009) ............................................21

*Roberts v. Apple Sauce, Inc.*,
No. 12-CV-830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ............................13

*Shames v. Hertz Corp.*,
No. 07-CV-2174, 2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ............................18

*Soto v. Wings R Us Romeoville, Inc.*,
No. 15-CV-10127, 2018 WL 1875296 (N.D. Ill. Apr. 16, 2018) .........................20

*In Re Southwest Airlines Voucher Litig.*,
799 F.3d 701 (7th Cir. 2015) ..............................................................................16

*Stokes v. Consol. Wings Inv., LLC*,
No. 15-CV-01932-RLY-DKL (S.D. Ind.), ECF NO. 61 ......................................8

*Torres v. Pet Extreme*,
No. 1:13-CV-01778, 2015 WL 224752 (E.D. Cal. Jan. 15, 2015) .......................18

*In re Toys "R" Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA)
Litig.*,
295 F.R.D. 438 (C.D. Cal. 2014) .........................................................................17

*Watson v. BMO Fin. Corp. and BMO Harris Bank, N.A.*,
No. 15-CV-11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF Nos. 34, 39 ...........8

*Watson v. Jimmy John's, LLC, et al.*,
No. 15-CV-768 (S.D. Ohio) ...................................................................................2

*Whiton v. Jimmy John's, LLC, et al.*,
Case No. 15-CV-1681 ............................................................................................2

*Young v. Polo Retail, LLC*,
No. 02-CV-4546, 2007 WL 951821 (N.D. Cal. Mar. 28, 2007) ..........................18

*Zolkos v. Scriptfleet, Inc.*,
No. 12-CV-8230, 2015 WL 4275540 (N.D. Ill. July 13, 2015) ...........................20

**Statutes**

Bloomberg BNA, The Fair Labor Standards Act, 17.X.D. (3d ed. 2017) ......................8

FLSA ...................................................................................................................... *passim*

FLSA Section 16 ..............................................................................................................2

FLSA Section 216(b) ........................................................................................................8

Illinois Minimum Wage Law, 820 ILCS 105/1, *et seq.* .................................................1

Ohio Wage Laws, O.R.C. § 4111.01, *et seq.* .................................................................1

Plaintiffs and the Opt-In Plaintiffs under the Fair Labor Standards Act, 29 U.S.C.
    § 201, *et seq.* ............................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 23 ...........................................................................................................7, 8, 20

*Newberg on Class Actions* § 11.41 ..............................................................................14

Plaintiffs Lara Bailey (substituted for original plaintiff Emily Brunner), Caitlin Turowski, Alexander Whiton, and Scott Watson (collectively, "Plaintiffs"); and Defendants Jimmy John's LLC, Jimmy John's Enterprises, LLC, and Jimmy John's Franchise, LLC (collectively "the Jimmy John's Defendants," and together with Plaintiffs, the "Parties"), through their respective counsel, hereby jointly move the Court for an order approving the proposed settlement the Parties have reached in this action under 29 U.S.C. § 216(b). As discussed more fully below, the settlement proposed by the parties is a reasonable compromise of the Parties' *bona fide* dispute and should be approved.

## INTRODUCTION

Plaintiffs, on behalf of the Opt-In Plaintiffs who joined this lawsuit as a conditionally certified collective action, and the Jimmy John's Defendants, seek preliminary approval of the Parties' Settlement Agreement. Under the terms of the Settlement Agreement, the Jimmy John's Defendants will pay approximately $1,835,000 to resolve the overtime and unpaid wage claims brought by Plaintiffs and the Opt-In Plaintiffs under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*, the Illinois Minimum Wage Law ("IMWL"), 820 ILCS 105/1, *et seq.*, and the Ohio Wage Laws, O.R.C. § 4111.01, *et seq.*

Because the proposed Settlement Agreement was made to compromise *bona fide* disputed claims, the Parties submit that it should be approved by the Court, and that the Court should grant this motion and enter an order, in the form attached hereto as Exhibit 1-C, that (1) grants preliminary approval of the proposed Settlement Agreement; (2) approves the proposed Notice to members of the conditionally certified collective action, as well as the proposed method of distribution of the settlement proceeds; and (3) sets the date for the Final Approval Hearing.

## FACTUAL AND PROCEDURAL BACKGROUND

On July 18, 2014, Plaintiffs Emily Brunner and Caitlin Turowski – both employees of Jimmy John's restaurants that were owned and operated by independent franchisees – filed *Brunner, et al. v. Jimmy John's, LLC, et al.*, No. 14-CV-5509, in the U.S. District Court for the Northern District of Illinois, against Jimmy John's and certain franchisee defendants. In *Brunner*, the plaintiffs brought a nationwide putative collective action for unpaid overtime on behalf of all Assistant Store Managers ("ASMs") who worked at one (or more) franchisee-owned or corporate-owned Jimmy John's restaurants across the country.

On February 25, 2015, another employee of a franchisee-owned restaurant, Alexander Whiton, filed a separate collective action complaint entitled *Whiton v. Jimmy John's, LLC, et al.*, Case No. 15-CV-1681, in the U.S. District Court for the Northern District of Illinois. On March 12, 2015, the Court consolidated the *Whiton* action with the *Brunner* action.

On March 2, 2015, another employee of a franchisee-owned restaurant, Scott Watson, filed a nearly identical action against Jimmy John's in the U.S. District Court for the Southern District of Ohio, entitled *Watson v. Jimmy John's, LLC, et al.*, No. 15-CV-768 (S.D. Ohio). The Southern District of Ohio subsequently transferred that case to the Northern District of Illinois, where it was also eventually consolidated with *Brunner* and *Whiton,* and then renamed *In Re Jimmy John's Overtime Litigation*.

Subsequently, first in the *Watson* case and then in the consolidated case, FLSA Section 16 notice was approved to be sent to individuals who were employed by Jimmy John's franchisees, not by Jimmy John's itself, and just under 600 of these individuals – the "Franchise Opt-Ins" – joined the conditionally certified collective action predicated on Plaintiffs' theory that Jimmy John's could be held liable as their joint-employer, a theory that Jimmy John's contested

from the beginning of this litigation.[1] There were also a smaller number, 66, opt-ins, who had

worked as ASMs for Jimmy John's itself and who joined the case (the "Corporate Opt-Ins").

After a series of contested motions and conferences before the Court, the Court first moved

forward with addressing the merits of the franchisee-employed individuals. Thereupon, for

nearly a year there was full and extensive discovery regarding their claims, which led to the

filing of a Motion for Partial Summary Judgment on Issue of Joint-Employer Status by Jimmy

John's on May 17, 2017, which the Court granted on June 14, 2018. That decision held that the

Jimmy John's Defendants may not be held liable under a joint-employer theory to Plaintiffs and

Opt-Ins who were employed by independent franchisees (the "Joint Employer Decision"). (*See*

ECF No. 621.) Those Plaintiffs and Opt-Ins, however, have never been formally dismissed from

this lawsuit. Moreover, the Joint Employer Decision did not resolve the claims of the 66

Corporate Opt-Ins.

      Throughout the case, and up through the Joint Employer Decision, and following it as the

Parties addressed its ramifications and the next steps in addressing the claims of the 66 Corporate

Opt-Ins, Counsel for the Parties vigorously pursued their positions and the rights of their clients

through extended legal and factual analysis, discovery, and exchanges of information.

      Following upon earlier efforts, on September 22, 2020, the Parties engaged in a

mediation in an effort to resolve all remaining claims in this lawsuit. The mediation was presided

over by Hunter Hughes, Esq., a highly respected mediator with extensive experience mediating

---

[1] *Jimmy* John's itself had no complete list of the individuals employed by franchisee operations, just some names and in some cases email addresses or other forms of contact information that had been collected for various purposes, most notably the manager training program. In substantial measure, the list of names to whom conditional certification notice was sent was obtained by Plaintiffs' counsel, which effort took a substantial amount of time and effort, including a large number of third-party subpoenas.

wage-and-hour class action and collective action matters. In preparation for this mediation, counsel for the Parties exchanged extensive information and data, and engaged in good faith, arms-length negotiations. At the mediation, the parties were able to narrow the issues, identify areas of agreement, and make concessions when appropriate, all of which was overseen by the mediator. With Mr. Hughes's assistance, the Parties subsequently reached an agreement in principle, which agreement has been clarified and memorialized in the Settlement Agreement that is attached hereto as Exhibit 1.

Plaintiffs and the Jimmy John's Defendants, along with their respective counsel, believe it is in their best interest to resolve this matter at this time. Collective Action Lead Counsel,[2] acting in the best interest of the members of the conditionally certified collective action, wish to resolve this matter in a fair and cost-effective manner that would benefit the Collective Action Members without the expense, delay, diversion, and risk of protracted and complex litigation. For the Franchise Opt-ins, whose claims have been dismissed on the merits by the Joint Employer Decision, it will provide a tangible benefit and avoid the possibility of losing on an appeal to the Court of Appeals, which appeal could only be taken after final judgment. As to the Corporate Opt-ins, the settlement will avoid a potentially lengthy – at least another year – of "second stage" FLSA discovery, a possible motion for decertification, and all the risks and expenses attendant upon the full litigation of FLSA misclassification claims. The Settlement would also provide for payment this year, which, for many Collective Action Members would be an extraordinarily welcome event given the difficulties for so many individuals created by the Covid pandemic.

---

[2] Unless otherwise defined herein, capitalized terms shall have the same meaning ascribed to them in the attached Settlement Agreement. (*See* Exhibit 1.)

The Jimmy John's Defendants and their counsel also wish to avoid the expense, burden, diversion, and risk of protracted litigation, and wish to resolve this matter on the agreed-upon terms.

At all times, the negotiations leading to the Settlement Agreement were adversarial and non-collusive. After extensive arm's-length negotiations between the Parties and their counsel, the Parties have reached a proposed Settlement Agreement as to all claims in this litigation. The Parties have memorialized their agreed proposed resolution in the Settlement Agreement, attached hereto as Exhibit 1. The Settlement Agreement is proposed for the sole purpose of settling all claims brought, or which could have been brought, in this litigation on a global basis. It was made to compromise *bona fide* disputed claims, and the Parties submit that it should be approved by the Court.

## OVERVIEW OF SETTLEMENT AGREEMENT TERMS

### A. The Proposed Collective Action Members And Collective Action Period

The Collective Action Members whose claims would be impacted by the Settlement Agreement consist of: (i) the specific Named Plaintiffs (the "Plaintiffs" as defined herein); (ii) the sixty-six (66) Corporate Opt-Ins, who were employed at restaurants owned and operated by Jimmy John's, including Andrew Rogers, who substituted as a Named Plaintiff for the conditionally certified collective action of Corporate Opt-Ins; and (iii) the 574 Franchise Opt-Ins who were employed at restaurants owned and operated by Jimmy John's franchisees. (*See* Ex. 1, ¶¶ 4, 6, 13.) All of those Plaintiffs and Opt-Ins submitted forms consenting to join this litigation. For clarity, the Corporate Opt-Ins and the Franchise Opt-Ins are specifically identified on Exhibits A and B of the Settlement Agreement, respectively.

### B.     Settlement Amount And Payments To Collective Action Members

The Jimmy John's Defendants have agreed to settle this lawsuit for up to $1,834,700. That amount would be deposited into a Gross Settlement Fund, which would be comprised of: (i) a Corporate Opt-In Fund, which is the $272,500 set aside to make Settlement Payments to the 66 Corporate Opt-Ins and to pay any employer-side taxes arising from those Settlement Payments; (ii) the Gift Card Amount, which, as described below, would be comprised of the 1,722 individual Gift Cards worth $100 each that would constitute the Settlement Payments to Franchise Opt-Ins (who would each receive three Gift Cards for a total value of $300), whose claims were dismissed on their merits by the Joint Employer Decision; and (iii) the Fee Fund, which is the $1.39 million of the Gross Settlement Fund from which attorneys' fees, costs, Service Awards, and Administration Costs shall be paid. (*Id.* ¶¶ 7, 10, 16, 49.)

The Corporate Opt-Ins will receive settlement payments reflective of their *pro rata* share of the Corporate Opt-In Fund, which is based on the number of weeks they worked for the Jimmy John's Defendants during their Individual Collective Action Periods. (*Id.* ¶ 53.) Each Franchise Opt-In would receive an equal Settlement Payment in the form of three $100 Gift Cards each. (*Id.* ¶ 57.) Two particularly notable points are that: (1) as to the Gift Cards, they shall be freely transferable and the proposed Settlement Administrator, AB Data, Ltd., will provide a resell market for them; and (2) the Settlement Agreement would not require any Collective Action Member to submit a claim form to receive a Settlement Payment. (*Id.*)

### C.     Release Of Claims

Collective Action Members who do not exclude themselves from the Settlement will release and discharge the Released Parties from all claims asserted in the operative complaints that were filed in the three underlying actions comprising this consolidated lawsuit, including any claims for allegedly unpaid overtime, interest, and statutory penalties. (*Id.* ¶90) All

Settlement Collective Action Members will also release their right to appeal any orders entered by the Court in this Litigation. (*Id.*)

>    **D.     Settlement Administration**

The Parties have selected AB Data, Ltd. to act as the Settlement Administrator. AB Data, Ltd. is an extremely experienced Settlement Administrator, and it has undertaken to provide a secondary resell market for the Gift Cards that the Franchise Opt-Ins shall receive.

>    **E.     Notice Of Settlement**

The Parties' proposed notice program includes a proposed Notice (attached hereto as Exhibit 1-E), that notifies Collective Action Members of, among other things, the claims in the case, the Gross Settlement Amount, the Net Settlement Amount available for distribution to Settlement Collective Action Members, the amount requested for Collective Action Lead Counsel's fees and costs, and the Service Award request. Collective Action Members will receive their notices by first-class mail from the Settlement Administrator, with additional avenues available to them thereafter to obtain more information about the Settlement.

>    **F.     Extra Procedural Protections By Allowing Opt-In Plaintiffs The Right To Object And Opt Out Of The Settlement**

Collective actions under the FLSA are fundamentally different than class actions raised under Fed. R. Civ. P. 23. *Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013). The due process concerns present in the settlement of Rule 23 class actions are not present in collective actions brought under the FLSA because there are no absent class members who will be bound to a release of their claims. *Castillo v. Noodles & Co.*, No. 16-CV-03036, 2016 WL

7451626, at *1 (N.D. Ill. Dec. 23, 2016).[3] As a result, to approve an FLSA collective action settlement, a district court need only engage in a one-step process. *Briggs v. PNC Fin. Servs. Group, Inc.*, No. 15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (St. Eve, J.) (citing *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16-CV-3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016) ("'A step-one settlement approval process is appropriate[ ]' in FLSA settlements.")).[4] Although district courts in the Northern District of Illinois do not require a two-stage settlement process, the parties here have nonetheless included settlement terms that allow each Collective Action Member the chance to object to the settlement and exclude themselves from the settlement if they so desire. (*Id.* ¶¶ 64-68.) Per the terms of the Settlement Agreement,

---

[3] *See also Bozak v. FedEx Ground Package Sys., Inc.,* No. 11-CV-738, 2014 WL 3778211 (D. Conn. July 31, 2014) (resolving FLSA settlement with one step and explaining differences between collective actions under Section 216(b) of FLSA and Rule 23 class actions).

[4] *See Bainter v. Akram Investments*, *LLC*, No. 17-CV-7064, 2018 WL 4943884 (N.D. Ill. Oct. 9, 2018) (order approving collective action settlement using a one-step approval process); *Brewer v. Molina Healthcare, Inc.*, No. 16-CV-09523, 2018 WL 2966956, at *1 (N.D. Ill. June 12, 2018) (same); *Burns v. Respite Care/Care in the Home, Inc.*, No. 17-CV-00971 (N.D. Ill. Mar. 1, 2018) (same); *Day v. NuCO2 Mgmt., LLC*, No. 18-CV-02088, 2018 WL 2473472, at *1 (N.D. Ill. May 18, 2018) ("A one-step settlement approval process is appropriate for this FLSA overtime collective action, and has been used in other collective actions."); *Furman v. At Home Stores, LLC*, No. 16-CV-08190, 2017 WL 1730995, at *1 (N.D. Ill. May 1, 2017) (order approving settlement which included step-one approval process); *Stokes v. Consol. Wings Inv., LLC*, No. 15-CV-01932-RLY-DKL (S.D. Ind.), ECF NO. 61 (approving FLSA collective action settlement in one step); *Castillo v. Noodles & Co.*, No. 16-CV-030306, 2016 WL 7451626, at *1 (N.D. Ill. Dec. 23, 2016) (granting request for one-step approval process); *Watson v. BMO Fin. Corp. and BMO Harris Bank, N.A.*, No. 15-CV-11881 (N.D. Ill. July 11, 2016) (St. Eve, J.), ECF Nos. 34, 39 (granting request for one-step approval process); *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018); *Heuberger v. Smith*, No. 3:16-CV-386 JD, 2019 WL 3030312, at *2-3 (N.D. Ind. Jan. 4, 2019) citing *Knox v. Jones Grp.*, No. 15-CV-1738, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017) (order approving settlement which included step-one approval process); Bloomberg BNA, The Fair Labor Standards Act, 17.X.D. (3d ed. 2017) ("A collective action settlement may be brought to the court on a single motion to approve the settlement and enter a stipulated judgment."); *Moore v. Ackerman Inv. Co.*, No. 07-CV-3058, 2009 WL 2848858, at *2 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b).").

any Collective Action Member who chooses to opt-out of the settlement shall be deemed to have withdrawn his or her consent to join and participate in this Litigation, will be dismissed from the Litigation without prejudice, will not be bound by any of the orders or judgments entered by the Court in this Litigation, and therefore will not have any right to appeal any of those orders. (*See id.* ¶ 68; *see also Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 230 (3d Cir. 2016) ("When the opt-in plaintiffs were dismissed without prejudice, they did not suffer an adverse judgment on the merits of any claim. They lost nothing but the ability to proceed in [named plaintiff's] case. This does not give rise to a right to pursue an appeal from [named plaintiff's] individual final judgment.")).

### G.  Service Awards

The Settlement Agreement provides that the Named Plaintiffs Lara Bailey (substituted for Emily Brunner), Caitlin Turowski, Alexander Whiton, Scott Watson and Andrew Rogers may apply for Service Awards, meaning separate payments from the Gross Settlement Fund of $2,500 each that would be made to each of the Named Plaintiffs as collective action representative service award payments and for resolution and release of their claims against the Jimmy John's Defendants in this Litigation, and any claims against the Jimmy John's Defendants arising out of or relating to their employment or the termination of their employment with Jimmy John's or any Jimmy John's franchisee. (*Id.* ¶ 77.) All such Service Awards are subject to the Court's approval. (*Id.*)

### H.  Attorneys' Fees And Costs

Collective Action Lead Counsel will apply to the Court for payment of attorneys' fees and costs to come from the Gross Settlement Fund. As further explained below, the total fees sought shall not exceed $1.1 million, and the total costs sought shall not exceed $250,000, which is but a small fraction of the total expenses and lodestar incurred by Plaintiffs' Counsel. (*Id.* ¶

85.) The Jimmy John's Defendants have agreed not to object to Collective Action Lead Counsel's request for fees and costs, subject to these agreed-upon limits and applicable law. (*Id.*) The Notice will advise Collective Action Members about this process for the request for Collective Action Lead Counsel's fees and costs. (*See* Ex. 1-E.)

## ARGUMENT

### I. LEGAL STANDARD

A district court may approve the settlement of claims arising under the FLSA that were reached as a result of contested litigation to resolve a *bona fide* dispute between the parties. *Lynn's Food Stores, Inc. v. United States,* 679 F.2d 1350, 1354 (11th Cir. 1982). Court approval of FLSA settlements consistent with the Eleventh Circuit's holding in *Lynn's Food Stores* is the norm in the Seventh Circuit. *See, e.g., Adams v. Walgreen Co.*, No. 14-CV-1208-JPS, 2015 WL 4067752 (E.D. Wis. July 2, 2015); *Burkholder v. City of Ft. Wayne*, 750 F. Supp. 2d 990, 994 (N.D. Ind. 2010) ("[S]tipulated settlements in a FLSA case must be approved by the Court.") (quoting *Misiewicz v. D'Onofrio Gen. Contractors,* No. 08-CV-4377, 2010 WL 2545439, at *3 (E.D.N.Y. May 17, 2010)). Acoordingly, the Court should perform two inquiries before approving an FLSA settlement. *First*, the Court must be satisfied that the settlement was the product of "contested litigation." *Second*, the Court must be satisfied that the settlement involves a fair and reasonable resolution of a *bona fide* dispute between the parties. Typically, courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354. If the proposed settlement reflects a reasonable compromise over contested issues, the Court may approve the settlement in order to promote the policy of encouraging settlement of litigation. *Id.*

The Parties respectfully submit that the proposed Settlement Agreement reached in this litigation warrants judicial approval.

## II.      THE PROPOSED SETTLEMENT IS THE PRODUCT OF CONTESTED LITIGATION

The Court can take notice that this Settlement is a result of contested litigation. The lawsuit was resolved only after contested motions for opt-in notice, more than 28 depositions across the United States, written discovery and the production of more than a million pages of documents, expert discovery and depositions, dispositive motions, and a day-long mediation. Accordingly, the Court should conclude that the proposed Settlement was the product of contested litigation.

## III.     THE SETTLEMENT AGREEMENT REFLECTS A FAIR AND REASONABLE RESOLUTION OF A *BONA FIDE* DISPUTE

The second prong of the Court's settlement approval inquiry focuses on two issues. The first issue is confirming the existence of a *bona fide* dispute between the parties. The second issue involves a review of the fairness and reasonableness of the proposed settlement. As explained below, the Court should readily conclude that both issues implicated by this second prong of the Court's settlement approval inquiry are satisfied.

### 1.      A *Bona Fide* Dispute Between The Parties Existed Over Defendant's "Employer" Status

All of the Named Plaintiffs in this lawsuit and the Franchise Opt-Ins, the vast majority of those who opted-in to the conditionally certified collective action were employees of franchisee-owned restaurants, meaning that they were employed by owner/operators of independent franchise restaurants and not by any of the Jimmy John's entities. The 66 Corporate Opt-Ins worked at corporate-owned restaurants and were therefore employed by Jimmy John's. Because employees of franchisee-owned restaurants were not employed by Jimmy John's, the Franchise Opt-Ins' claims depended entirely on their theory that Jimmy John's should be found as a matter

of law to be a "joint employer," and therefore liable, along with the Franchise Opt-Ins' actual employers, for the purported employment-law violations described in the various complaints.

That joint-employer theory was rejected by the Court on June 14, 2018, and those claims were dismissed on summary judgment. Although that ruling effectively extinguished the claims of all the Named Plaintiffs (except Andrew Rogers, substituted Named Plaintiff for the Corporate Opt-Ins) and hundreds of Franchise Opt-Ins, those parties were never formally dismissed from the lawsuit. That decision also left intact the claims of the 66 Corporate Opt-Ins who had opted-in to the conditionally certified collective action because their claims do not depend on a joint-employer theory. At present, therefore, there are still approximately 66 Corporate Opt-Ins who are proceeding with their claims against Jimmy John's in a conditionally certified collective action, as well as 574 Franchise Opt-Ins and Named Plaintiffs who nominally are still in the lawsuit but whose claims did not survive the Court's Joint Employer Decision.

The Franchise Opt-Ins and the Corporate Opt-Ins assert that they were improperly classified as exempt under the FLSA and consequently denied overtime pay. The Jimmy John's Defendants have consistently denied Plaintiffs' material factual allegations and have asserted an array of affirmative defenses, most notably that they could not be held liable to Franchise Opt-Ins because they did not employ those Opt-Ins and were not their joint employers, and because Corporate Opt-Ins were properly classified as exempt because their primary duties were managerial in nature, and because they otherwise met the applicable tests to be considered exempt employees.

Plaintiffs continue to believe that the claims they propose to settle herein have merit, but Plaintiffs and their counsel recognize and acknowledge the uncertain outcome and risk of continuing with this Litigation. Plaintiffs also recognize the expense and complexity of the

continued proceedings that would be necessary to prosecute the claims through trial (for the Corporate Opt-Ins), appeal (for the Franchise Opt-Ins and possibly the Corporate Opt-Ins), as well as the difficulties and delay inherent in FLSA misclassification litigation. They also believe that the settlement set forth in the Settlement Agreement confers substantial benefits to them. Based on their evaluation of the above, Plaintiffs and their counsel have determined that the proposed settlement set forth in the Settlement Agreement is in Plaintiffs' best interests and in the best interests of the conditionally certified collective action.

The Jimmy John's Defendants vigorously deny and continue to dispute all of the claims and contentions alleged in this lawsuit and deny any and all allegations of wrongdoing, fault, liability or damage of any kind to Plaintiffs or any of the members of the conditionally certified collective action. However, the Jimmy John's Defendants recognize and acknowledge the risks and potential costs of continued litigation of this lawsuit, on the one hand, and the benefits of the proposed settlement, on the other hand, and desire to settle this lawsuit upon the terms and conditions set forth in the Settlement Agreement.

## 2. The Settlement Agreement Is Fair And Reasonable

This Settlement was the product of arm's-length negotiations by experienced wage and hour class/collective-action counsel over the course of several months. The Settlement has the effect of (1) providing pecuniary relief to the Collection Action Members either in the form of settlement checks or transferable Gift Cards, (2) in exchange for a limited release of the claims that could have been asserted in the Complaint based on the facts alleged, and (3) eliminating the inherent risks both sides would bear if this complex litigation continued to resolution on the merits. Under these circumstances, a presumption of fairness should attach to the Settlement. *See Lynn's Food Stores, Inc.*, 679 F.2d at 1354 (recognizing that courts rely on the adversarial nature of a litigated FLSA case resulting in settlement as indicia of fairness); *Roberts v. Apple Sauce,*

*Inc.,* No. 12-CV-830, 2014 WL 4804252 (N.D. Ind. Sept. 25, 2014) ("The reviewing Court normally approves a settlement where it is based on 'contentious arm's-length negotiations, which were undertaken in good faith by counsel' and where 'serious questions of law and fact exist such that the value of an immediate recovery outweighs the mere possibility of further relief after protracted and expensive litigation.'" (internal citations omitted)).[5]

Moreover, consideration of several additional relevant factors, including the following, confirms that the proposed settlement is fair and reasonable.

### (i)    The Settlement Was Negotiated At Arm's Length

The proposed Settlement Agreement was fairly and honestly negotiated through the Parties' respective counsel. It is not illegal, a product of collusion, or against the public interest. Rather, the Parties' Settlement Agreement is the product of arms-length negotiations that occurred after six years of vigorous litigation. The Parties completed written, oral, and expert discovery and attended multiple mediation sessions. This qualifies as an arm's-length negotiation and Settlement. *See Lucas v. Vee Pak, Inc.,* No. 12-CV-09672, 2017 WL 6733688, at *12 (N.D. Ill. Dec. 20, 2017) (settlement was result of arm's-length negotiations even absent formal discovery when the parties reached agreement after attending mediation). Courts often rely on the adversarial nature of a litigated case as an indicia of fairness in the context of an FLSA settlement. *See Lynn's Food Stores,* 679 F.2d at 1354.

---

[5] Courts adhere to "an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." *Newberg on Class Actions* § 11.41; *see also Great Neck Capital Appreciation Inv. P'Ship., LLP v. PriceWaterhouseCoopers, LLP*, 212 F.R.D. 400, 410 (E.D. Wis. 2002) ("A strong presumption of fairness attaches to a settlement agreement when it is the result of this type of negotiation.").

**(ii)** **The Members Of The Conditionally Certified Collective Action Were Adequately Represented By Collective Action Lead Counsel And Plaintiffs**

Collective Action Lead Counsel are competent attorneys with significant experience handling matters similar to the instant litigation. Based on their knowledge of the facts and the applicable law, as well as their experience in similar actions, Collective Action Lead Counsel believe the settlement is a fair and reasonable compromise of this *bona fide* dispute. "Although the Court is not bound by the counsel's opinion, their opinion is nonetheless entitled to great weight." *In Re BankAmerica Corp. Sec. Litig.,* 210 F.R.D. 694, 702 (E.D. Mo. 2002). Here, Plaintiffs and the members of the conditionally certified collective action were all represented by counsel with significant experience in litigating misclassification and overtime claims under the FLSA and have agreed to settle their respective wage claims in accordance with the terms of the negotiated Settlement Agreement. Because the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement. *See Briggs v. PNC Fin. Servs. Grp., Inc.,* No. 1:15-CV-10447, 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (citing *Lynn's Food Stores*, 679 F.2d at 1354).

Collective Action Lead Counsel have discussed the proposed Settlement Agreement with Plaintiffs, including Andrew Rogers, who was designated as one of the Corporate Opt-Ins to act as the Named Plaintiff for the conditionally certified collective action of Corporate Opt-Ins, and to act as their agent and to make decisions on their behalf about the consolidated lawsuits, including with respect to settlement. (*See* ECF No. 656.) Plaintiffs and Collective Action Lead Counsel have executed the proposed Settlement Agreement on behalf of themselves and all members of the conditionally certified collective action, indicating their approval of the settlement. In light of the risks of moving forward with the Litigation, the complexity of this case, the defenses the Jimmy John's Defendants have raised, and the costs of proceeding to trial

15

and/or appeal, they have determined that the proposed terms of the settlement are fair and reasonable. The Settlement Agreement would provide Plaintiffs and all members of the conditionally certified collective action with meaningful monetary relief – which is set forth in detail in the Settlement Agreement documents – without the risk, delay, and expense of trial and post-trial proceedings, including appeal. In light of the risks of recovering nothing, this is a fair and reasonable Settlement.

### (iii) The Settlement Would Provide Adequate Relief To The Plaintiffs And The Settlement Collective Action Members

The Settlement Agreement provides that the 66 Corporate Opt-Ins will receive a *pro rata* share of the $272,500 Corporate Opt-In Fund, which is the portion of the Gross Settlement Fund that has been designated to make Settlement Payments to the Corporate Opt-Ins. Although that amount can be adjusted upward pursuant to the terms of the Settlement Agreement, in no event shall that amount be adjusted downward. Corporate Opt-Ins will be entitled to a share of the Corporate Opt-In Fund based on the number of weeks they worked for the Jimmy John's Defendants using a formula that takes account of each Corporate Opt-Ins' Eligible Workweeks as compared to the total number of Eligible Workweeks for all Corporate Opt-Ins. Under this formula, the average amount paid to each Corporate Opt-In would be approximately $4,128.79.

Unlike the Corporate Opt-Ins, the Franchise Opt-Ins were never employed by the Jimmy John's Defendants and their claims have been effectively negated by the Court's Joint Employer Decision. Nevertheless, the Settlement Agreement provides that each Franchise Opt-In will be entitled to receive three transferable Gift Card in the amount of $100 each (for a total value of $300 each) in exchange for their agreement to finally settle their claims. This is fair consideration in light of the Court's ruling that the Jimmy John's Defendants cannot be held liable to the Franchise Opt-Ins under a joint-employer theory.

The Seventh Circuit has identified due process concerns with certain forms of "coupon settlements," where those settlements offer coupons of modest value compared to new purchases, when they expire soon, and when they are not transferable and cannot be aggregated, among other things. *See In Re Southwest Airlines Voucher Litig.,* 799 F.3d 701, 705-06 (7th Cir. 2015). The terms of the Gift Cards provided for in the Settlement Agreement avoid those concerns because $300 is a high value when compared to the average price of a sandwich or full meal at a Jimmy John's-branded restaurant. Accordingly, Franchise Opt-Ins would in all likelihood be able to use those Gift Cards many times over without having to expend any additional money to realize their value. The Gift Cards are also subject to a number of terms and conditions that make them more valuable to the Franchise Opt-Ins and avoid the issues that the Seventh Circuit has found problematic:

      a. They will be redeemable and usable like cash at any Jimmy John's location in the United States (including franchise locations), without being subject to any "blackout" periods during which they cannot be used.

      b. There will be no requirement for the recipients to make any additional purchases in order to use their Gift Cards.

      c. They will be freely transferrable and may be sold to third parties for cash. Jimmy John's will not oppose Franchise Opt-Ins being notified of an option and mechanism, pre-arranged by Collective Action Lead Counsel, to sell their Gift Cards to a third-party for cash and Collective Action Lead Counsel have been working with AB Data, Ltd. to provide such a market.

      d. They will be "stackable," meaning that they are not limited to one per recipient and are usable in conjunction with other promotional items.

      e. They can be used multiple times until their credit is exhausted.

      f. They can be used without the Franchise Opt-Ins having to identify themselves or demonstrate that they were entitled to the Gift Cards in connection with this Litigation.

(Exhibit 1, Settlement Agreement, ¶ 57.) Altogether, this provides fair value to these individuals' claims which were brought on a novel theory of "joint employer" liability but which were, in

fact, dismissed on their merits after full discovery and briefing on a motion for summary judgment.[6]

In addition to fair monetary value, the Settlement Agreement also proposes a fair method of distributing and processing Settlement Payments to the Corporate Opt-Ins and the Franchise Opt-Ins. Pursuant to the Settlement Agreement, Notice will be sent to each member of the conditionally certified collective action at their last known address. (Ex. 1, ¶ 61.) (The Notice forms are slightly different for Corporate Opt-Ins and Franchise Opt-Ins, *see* Exhibit 1-E). The addresses of Corporate Opt-Ins will be provided by the Jimmy John's Defendants from those Opt-Ins' employment records. (*Id.* ¶ 59.) The addresses of Franchise Opt-Ins will be provided by Collective Action Lead Counsel based on the addresses provided by Franchise Opt-Ins on their opt-in consent forms. (*Id.* ¶ 60.) The Settlement Administrator is allowed to use reasonable

---

[6] See, *e.g., In re Toys "R" Us-Del., Inc.-Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 444, 467 (C.D. Cal. 2014) ("Compromise is an inherent part of the settlement process, and the fact that the settlement provides a voucher rather than cash does not reflect a poor outcome for the class, especially given the fact that class members risked recovering no damages if the case had proceeded and the class had been unable to prove willfulness."); *Shames v. Hertz Corp.*, No. 07-CV-2174, 2012 WL 5392159, at *3, *7 (S.D. Cal. Nov. 5, 2012) (noting that voucher for one free rental day (time and mileage) on any class of car up to full size, value of which could range from $40 to more than $100, represented minimum of 1,333% value above actual damages); *Fernandez v. Victoria Secret Stores, LLC*, No. 08-CV-04149, 2008 WL 8150856, at *1-2, *6-7, *16 (C.D. Cal. July 21, 2008) (noting $67.50 gift cards compared to approximately $7 in allegedly unpaid wages per class member as giving each class member "significantly more than she would have earned had Victoria's Secret paid her for her work"). *See also Johnson v. Ashley Furniture Indus.*, No. 13-CV-2445, 2016 WL 866957, at *4 (S.D. Cal. Mar. 7, 2016) (approving settlement where vouchers would be useful to the class, noting that a survey of putative class members indicated that a "large percentage of these customers engaged in two or more purchase transactions during the class period");.*Torres v. Pet Extreme*, No. 1:13-CV-01778, 2015 WL 224752, at *6-7, *15 (E.D. Cal. Jan. 15, 2015) (approving settlement where $45 gift cards were transferrable and would not expire); *Young v. Polo Retail, LLC*, No. 02-CV-4546, 2007 WL 951821, at *1, *4 (N.D. Cal. Mar. 28, 2007) (while noting that the "primary downside of the proposed settlement is the use of product vouchers in the settlement award," also noting as "compelling" that gift cards were transferrable, as that would "enable[] class members to obtain cash – something all class members will find useful").

efforts to locate a current address for any Opt-In whose Settlement Payment is returned as undeliverable. (*Id.*, ¶¶ 70, 72.) Settlement Collective Action Members will not have to return claim forms in order to receive their Settlement Payments. The Settlement Administrator will mail checks to all Settlement Collective Action Members who do not timely exclude themselves from the Settlement. This is an efficient and effective method of distributing the Settlement Payments to Settlement Collective Action Members.

<strong>(iv)    Substantial Obstacles Exist If The Litigation Continues, And The Settlement Offers Substantial, Immediate Relief</strong>

As noted above, this case has already proceeded through a dispositive motion, an appeal looms, and the parties otherwise disagree about the merits of Plaintiffs' claims and the viability of Defendants' various defenses. If the litigation had continued, Plaintiffs would have faced many obstacles and uncertainties, including the outcome of an appeal to the Seventh Circuit, summary judgment and/or decertification with respect to the Corporate Opt-Ins, and potentially a trial. Furthermore, even if Plaintiffs ultimately prevailed on the issue of liability, Plaintiffs would need to prove the amount of damages suffered.

The Settlement compensates all the Collective Action Members (who do not seek to opt-out) and eliminates the possibility of a dismissal, decertification, loss at trial, or loss on appeal. Consequently, this Settlement brings value now, as opposed to years from now, and provides a certainty of result, which is, as noted, of particular value during the Covid pandemic. The substantial benefit that Settlement Class members will immediately receive is a significant factor weighing in favor of the Court's approval of the proposed Settlement. In addition, Collective Action Members may elect not to participate in the Settlement and therefore not release their individual overtime wage claims.

19

## IV.  NAMED PLAINTIFFS WERE CRITICAL TO THE RESOLUTION OF THE CLAIMS AND ARE ENTITLED TO MODEST SERVICE AWARDS

The Settlement Agreement provides for Service Payments to the Five Named Plaintiffs, Bailey, Turowski, Whiton, Watson, and Rogers in the amount of $2,500 each. These payments are in addition to any payment that they receive in the form of Gift Cards or, for Rogers, as the *pro rata* share of the Corporate Opt-In Fund. (*Id.* ¶¶ 77-78.) Named plaintiffs in collective or class action lawsuits play a crucial role in helping to bring claims that might otherwise not be pursued. "Because a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998); *Zolkos v. Scriptfleet, Inc.,* No. 12-CV-8230, 2015 WL 4275540, at *3 (N.D. Ill. July 13, 2015) (awarding $10,000 each as service awards to six named plaintiffs in a wage action).

The amount of the requested payments are also consistent with service payments recently awarded in other FLSA actions. *See, e.g., Briggs,* 2016 WL 7018566, at * 3 (approving $12,500 service award each to two plaintiffs in FLSA settlement); *Castillo*, 2016 WL 7451626, at *6-8 (approving $10,000 service award each for four named plaintiffs in FLSA wage action).[7] The

---

[7] *See also*, *Koszyk v. Country Fin.*, No. 16-CV-3571, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in a FLSA collective action); see also *Lukas v. Advocate*, No. 1:14-CV-2740, D.E. 150 (N.D. Ill. June 29, 2016) (approving $15,000 service award to named plaintiff in FLSA wage action); *Hart v. RCI Hosp. Holdings, Inc*., No. 09-CV-3043 PAE, 2015 WL 5577713, at *19 (S.D.N.Y. Sept. 22, 2015) (approving $15,000 service payments for each of two named plaintiffs in state and federal wage action); *Puglisi v. TD Bank, N.A.*, No. 13-CV-637 GRB, 2015 WL 4608655, at *1 (E.D.N.Y. July 30, 2015) (approving $15,000 service payments to two class representatives in combined Rule 23 class action and FLSA collective action); *see also* 4 Newberg on Class Actions § 11.38, at 11- 80 (citing empirical study from 2006 that found average award per class representative to be $16,000) *See Soto v. Wings R Us Romeoville, Inc.,* No. 15-CV-10127, 2018 WL 1875296, at *3 (N.D. Ill. Apr. 16, 2018) (in FLSA settlement, approving service award of $7,500 to the named plaintiff, $1,000 each to 8 opt-in plaintiffs who gave deposition testimony, and $500 to an Opt-in Plaintiff who gave a declaration but did not sit for a deposition); *Knox v. The Jones Group*, No. 15-CV-1738 SEB-TAB, 2017 WL 3834929, at *3 (S.D. Ind. Aug. 31, 2017) (in

requested Service Awards in the total amount of $12,500 also represent only .006% of the Gross

Settlement Fund, which is a reasonable percentage. *Parker v. Jekyll & Hyde Entm't Holdings,*

*L.L.C.*, No. 08-CV-7670, 2010 WL 532960, at *2 (S.D.N.Y. Feb 9, 2010) (finding that service

awards totaling approximately 11% of total recovery are reasonable); *Reyes v. Buddha-Bar*

*NYC,* No. 08-CV-2494, 2009 WL 5841177, at *8, *13 (S.D.N.Y. May 28, 2009) (awards of

$7,500 each to three named plaintiffs, representing approximately 3 percent of the total

$710,000 settlement amount, was reasonable).

## V.    COLLECTIVE ACTION LEAD COUNSEL'S DISCOUNTED ATTORNEY'S FEES AND COSTS SHOULD BE APPROVED

The Settlement Agreement provides for the establishment of a Fee Fund, which is the

$1.39 million of the Gross Settlement Fund that is set aside to pay Collective Action Lead

Counsel's fees and costs, Service awards to the Named Plaintiffs, and Administration Costs. (Ex.

1 ¶ 10.)

The Fee Fund will compensate Plaintiffs' Counsel for but a fraction of time and expense

that they put into the case. Plaintiffs' Counsel's current lodestar is in excess of $5.9 million and

their reasonably incurred costs exceed $800,000.[8] After costs and fees of the independent third-

party administrator and Service Payments, which are estimated to be $27,500 are deducted from

the $1.39 million Fee Fund, the net amount available to Plaintiffs' Counsel is estimated to be

$1,362,500, which is therefore but 20% of their combined lodestar and costs incurred in the

litigation. Indeed, given that Plaintiffs' expenses alone were $800,000, the amount of fee of

FLSA settlement, approving service awards of $7,500 each to two Named Plaintiffs, $1,000 each
to 22 opt-in plaintiffs who gave deposition testimony, and $250 each to eight opt-in plaintiffs
who gave declarations).

[8] Counsel can represent to the Court these numbers which, we submit, should obviate the need
for an extensive demonstration of the time and effort put into the case. But should the Court
desire further detail of any sort and extent, it can be made available.

approximately $560,000 will mean that Plaintiffs' Counsel will get less than 10% of their time. Further, this steeply discounted recovery against the time an expenses Plaintiffs' Counsel put in does not take into consideration the future time and costs Collective Action Lead Counsel will spend fulfilling their obligations in the Settlement Agreement, obtaining this preliminary approval and final approval, conferring with the Settlement Administrator, monitoring the administration of the Settlement, and responding to the Opt-in Plaintiffs' inquiries. If approved by the Court, the award of attorneys' fees and costs will be paid by the Settlement Administrator from the Gross Settlement Fund to Collective Action Lead Counsel within thirty-five days after the Effective Date of the Settlement.[9]

## CONCLUSION

For all the foregoing reasons, the Parties respectfully request that this Court grant their Joint Motion for Approval of Collective Action Settlement Agreement and issue an Order in the form of the proposed Preliminary Approval Order, which is attached hereto as Exhibit 1-C.

DATED: February 15, 2021                    Respectfully submitted,


DEFENDANTS JIMMY JOHN'S LLC, JIMMY        PLAINTIFFS
JOHN'S ENTERPRISES, LLC, AND JIMMY
JOHN'S FRANCHISE, LLC                       By their attorneys,

By their attorneys,


/s/ Gerald L. Maatman, Jr.                 /s/ Seth R. Lesser
    Gerald L. Maatman, Jr.                     Seth R. Lesser
    Matthew J. Gagnon                          Fran L. Rudich
    Seyfarth Shaw LLP                          KLAFTER OLSEN & LESSER LLP
                                               Two International Drive, Suite 350

---

[9] (Ex. 1, ¶ 75.) The Jimmy John's Defendants have agreed not to oppose Collective Action Lead Counsel's petition for those amounts as attorneys' fees and reimbursement of litigation expenses, to the extent consistent with existing, applicable precedent in the U.S. Court of Appeals for the Seventh Circuit. (*Id.* ¶ 85.)

233 S. Wacker Drive, Suite 8000
Chicago, IL 60606-6448
Telephone: (312) 460-5000
Facsimile: (312) 460-7000

*Attorneys For Defendants Jimmy John's LLC,*
*Jimmy John's Enterprises, LLC, and Jimmy*
*John's Franchise, LLC*

Rye Brook, NY 10573
914-934-9200
914-934-9220 (fax)
slesser@klafterolsen.com
fran@klafterolsen.com

Kathleen Currie Chavez
Kevin Paul Noll
Peter Lawrence Currie
Robert M. Foote
FOOTE, MIELKE, CHAVEZ & O'NIEL,
LLC
10 West State St., Suite #200
Geneva, IL 60134

Justin M. Swartz
Michael N. Litrownik
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
T. (212) 245-1000
F. (646) 509-2060
JMS@outtengolden.com
mlitrownik@outtengolden.com

Alan L. Quiles
Gregg I. Shavitz
SHAVITZ LAW GROUP, P.A.
1515 S. Federal Highway
Suite 404
Boca Raton, FL 33432
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
561-447-8831 (fax)
aquiles@shavitzlaw.com
gshavitz@shavitzlaw.com

MYRON M. CHERRY & ASSOCIATES,
LLC
Myron M. Cherry
30 North LaSalle Street, Suite 2300
Chicago, IL 60602
Tel: (630) 232-7450

Douglas M. Werman
Maureen Ann Salas
WERMAN SALAS P.C.

77 West Washington
Suite 1402
Chicago, IL 60602
312-419-1008
312-419-1025 (fax)
dwerman@flsalaw.com
msalas@flsalaw.com

Drew Legando
Jack Landskroner
LANDSKRONER GRIECO MERRIMAN
LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-900
F. (216) 522-9007
drew@lgmlegal.com
jack@lgmlegal.com

*Attorneys for the Corporate Opt-In
Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of February, 2021, I electronically filed the

foregoing document with the Clerk of Court by using the CM/ECF system, which will send a

notice of electronic filing to all counsel of record, including the following:

Kathleen Currie Chavez
Kevin Paul Noll
Peter Lawrence Currie
Robert M. Foote
Foote, Mielke, Chavez & O'Niel, LLC
10 West State St., Suite #200
Geneva, IL 60134

Mary-Christine Sungaila
Snell & Wilmer LLP
600 Anton Blvd., Suite 1400
Costa Mesa, CA 92626
Myron Milton Cherry
Jacie C. Zolna
Myron M. Cherry & Associates
30 North LaSalle Street
Suite 2300
Chicago, IL 60602
(312) 372-2100

Drew Legando
Jack Landskroner
Landskroner Grieco Merriman LLC
1360 West 9th Street, Suite 200
Cleveland, Ohio 44113
T. (216) 522-900
F. (216) 522-9007
drew@lgmlegal.com
jack@lgmlegal.com

Alan L. Quiles
Gregg I. Shavitz
Shavitz Law Group, P.A.
1515 S. Federal Highway
Suite 404

Andrew Kopon , Jr.
Colette Lynn Kopon
Eleonora Paloma Khazanova
Kopon Airdo, LLC
233 S. Wacker Drive
Suite 4450
Chicago, IL 60606

Matthew Scott Disbrow
Honigman Miller Schwartz and Cohn LLP
2290 First National Building
Detroit, MI 48226

Anand C. Mathew
Honigman Miller Schwartz and Cohn LLP
One South Wacker Dr., 28th Floor
Chicago, IL 60606

Justin M. Swartz
Michael N. Litrownik
Outten & Golden LLP
3 Park Avenue, 29th Floor
New York, NY 10016
T. (212) 245-1000
F. (646) 509-2060
JMS@outtengolden.com
mlitrownik@outtengolden.com

Seth R. Lesser
Fran L. Rudich
Klafter Olsen & Lesser LLP
Two International Drive, Suite 350
Rye Brook, NY 10573

Boca Raton, FL 33432
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
561-447-8831 (fax)
aquiles@shavitzlaw.com
gshavitz@shavitzlaw.com

Douglas M. Werman
Maureen A. Salas
Werman Salas P.C.
77 West Washington
Suite 1402
Chicago, IL 60602
312-419-1008
312-419-1025 (fax)
dwerman@flsalaw.com
msalas@flsalaw.com

914-934-9200
914-934-9220 (fax)
slesser@klafterolsen.com
fran@klafterolsen.com

/s/ Gerald L. Maatman, Jr.
Gerald L. Maatman, Jr.

68052263v.3